# Exhibit 1

Dec 13th 2003   Saturday Overtime

FOREMAN: Gary Gephardt *Pat Camp
(former union steward)

Machine: Working 600+4

I was preparing to shutdown the machine for dinner time (6:55pm). I was skimming the pot of metal and I felt tingling in my hands. I didn't realize I was being shocked at the time, so I continued. Sparks then flew and a heard a popping sound. I got zapped! I threw the pot skimmer and I reported this to both supervisors who were about 10 yds AWAY. They acted as if they didn't believe me and they proceeded to check it out themselves. Gary skimmed the pot and the same result (shock). He didn't get the full effect as myself but he felt it also. I told them that I was not running the machine after lunch, because it was unsafe. (Witness John Garfiel (600+2) I looked for a 1st responder to do a medical report on my injury, none was available. At 7:30 I went to my machine to report to Pat & Gary and advise them that I couldn't find a 1st responder and my hands and arms were numb. They started up the machine anyway and told me that I could handle it. I told him that I was not going to work injured, he just sighed as if "whatever." He continued to run the machine and I stood until Pete Lindsley arrived. (Union Steward)

Pete did the Medical Eval. and I explained to him that my arms and hands hurt pretty bad & I couldn't work at that time.

When we went back out on the floor they (foreman) already had another machine up & running for me to work on. I told them that this was "bullshit". With no regard to how I'm feeling or my injuries they just wanted production.

(Bruce Zeigler witness) Came up to me afterwards MAINTENANCE ) And told me that Pat Camp was "bitching" and ranting raving that I was taking to damn long in getting medical treatment.

** The pot was not grounding at all to anything. I was being shocked by 440 volts.

Maintenance: Bill Diehl, Bruce Zeigler

**** I went to the hospital on Monday because the pained continued throughout the weekend. I was given permission by Ron Sayers. I was docked pay and not reimbursed

Friday April 23ed

* I was approached by Jim Henry    1st shift utility

He told me that while I was on leave A threat was made regarding me. He said he was inquiring about A hole that was being

dog in the new Tool Room. He asked why was it so big and what was going in it. The reply from Bill Darnell (Maint. Superv, was that "he would like to put me in it." Jim said, he reported this immediately to Jay Smith (Union Stew.). Nothing was ever done about this incident until I call Mr Smith on April 26th about 10 AM. Mr. Smith said that he didn't take the comment too seriously and that I shouldn't. I told him under the circumstances everything said about me is taken seriously considering all that I'm going through. He said he'd report it to Human resources & he did.

Need to Establish — no retaliation — for lawsuit based on Race.

→ Get the affidavit.

→ When (incident) made to wash monitors — Demeaning. Assault on pride —

# Exhibit 2

ECHRC can investigate complaints of discrimination based upon race, color, religion, ancestry, age (40 and above), sex, sexual orientation, national origin, non-job related handicap or disability, known association with a handicapped or disabled individual, possession of a diploma based on passing a general education development test, or willingness or refusal to participate in abortion or sterilization.

## IN-15 FORM    HARASSMENT QUESTIONNAIRE
Questionnaire on the incident you are complaining about.

To avoid rewriting your answers, please read this short questionnaire from beginning to end before filling out your answers to individual question. Please answer every applicable question as fully as possible, and to the best of your present knowledge, information and belief. If you are unsure of your answer, please say so. It is your responsibility to notify this Agency of a change of address or times of unavailability. Failure to notify this Agency may result in dismissal of the matter.

Name _Cari M. Goodwine_

Address _2905 Pennsylvania Ave._

City _Erie_                     State _Pa_     Zip Code _16504_

County _Erie_          Telephone No. H _(814) 454-5049_     W _(814) 474-5511_

May we call you at work?     Yes_____     No ____✓____

**Caution:**    Failure to correctly identify the name of the legal entity you are complaining about will hinder the processing of you complaint. Bring pay stubs, W-2 forms, contracts, etc. to aid in verification of the name and address.

Name of Organization your complaint is against:

Name _P.H.B. DieCastings, Inc._

Address _7900 West Ridge Rd._

City _Fairview_                     State _Pa_     Zip Code _16415_

Type of
Business _Metal Shop / Aluminum - Zinc_

County _Erie_          Telephone No. _814-474-5511_

Number of employees who work at the organization named above. Please check one.

Less than 4 _____     15 to 100 _____     201 to 500 _____     Unknown_____

4 to 14 _____     101 to 200 _____     501 plus ___✗___

**RECEIVED**

MAR 1 1 2003

ERIE COUNTY HUMAN
RELATIONS COMMISSION

**IN -15 FORM**                    **Harassment Questionnaire**                    **(page 2)**

Name and address of person who will know how to contact you and who does not reside in your home.

Name _Patricia Goodwine_

Address _2127 Woodlawn Ave_

City _Erie_                    State _Pa_          Zip Code _16510_

Telephone No. H( )_898-2959_          W( )_____

In this Questionnaire, you will see the word class mentioned. **Class means the person=s race, sex, age, ancestry, religion and so on.** Depending on the issues in the complaint, you may belong to two or more classes. For example, a Black female could belong to two classes: race/Black and sex/female. A White male could belong to race/White and sex/male. All persons named in the complaint or questionnaire should be identified by their class as follows: John Doe (White male), John Doe (under age 40), Jane Doe (Black female). For example, if your complaint is based on race, include the race of all persons named. If it is a sex complaint, mention the sex of all persons mentioned.

1.    **Discrimination means difference of treatment.** Please explain what happened to you and why you feel you were treated differently. In other words, what happened to persons of a <u>different</u> <u>class</u> that makes you feel they received more favorable treatment than you.

_My foreman made a comment to another co-worker_
_(white male) that, "We have to make it hard on_
_them". Refering to us, white men (we) and_
_them meaning black males._

2.    If you believe the organization treated you this way because of one or more of the reasons listed below, please check those reasons. If you believe the employer treated you this way for a reason which is not listed, explain what you believe to be the reason.

| | | |
|---|---|---|
| ___Sex | ___Ancestry | ___Age (40+) Date of Birth_____ |
| _X_ Race | ___National Origin | ___Use of guide dog or support animal |
| _X_ Color | ___GED | ___Participation in/or refusal to participate in |
| ___Religious Creed | ___Sexual Orientation | ___Abortion/Sterilization |
| ___Retaliation | ___Non-job related handicap/disability | |
| | Identify your disability_____ | |

3.    Who is harassing you?

Name _Gary Gephart_          CLASS _White, male_

Job Title/Dept _Aluminum Foreman_

4.    How is this person harassing you? Please explain.

_Since the incident frequently walking by me_
_making comments to other foreman._

**IN-15 FORM**                    **Harassment Questionnaire**                    **(page 3)**

5. How do the actions taken by the harasser against you differ from the actions your employer or your co-workers normally would have taken in similar circumstances?

*They differ because he singled me out because of my race, using the terms "we" and "them". He's also using his authority as a foreman to get away with his actions*

6. Did you complain to management about the harassment?

Yes _X_    No _____

If yes, who was this person?

Name _Benjamin Hancock_ CLASS _White male_

Title/Dept. _Human Resources Director_

6a. What action was taken by management?

*None. I've personally had problems with Mr. Hancock since being hired concerning, unemployment issues and pay issues*

6b. As a result of going to management with your complaint, did your work situation improve or get worse?

Better _____    Worse _X_

Please explain. *Other foreman have shown lack of help, given dirty looks, and lack of communication*

7. Are you a union member?

Yes _✓_    No _____

If yes, what is the name of your union? _United Steel Workers of America_

Address _7900 W Ridge Rd. Fairview or_
_703 French St._

Telephone Number _(814) 474-5706_ (FAIRVIEW)    Business Agent _Greg Bible (Fairview)_
_455-1337_
_(ERIE)_

**IN-15 FORM**                **Harassment Questionnaire**                **(page 4)**

8.    Did you file a grievance regarding the above problem?

Yes _____        No ___X___

If so, attach a copy of the grievance.  Explain what step your grievance is in now.  Give both step number and letter, and the name and title of the union official dealing with your grievance.

_____

_____

_____

_____

9.    Are you a civil service employee?

Yes _____        No ___X___

Did you file a civil service complaint regarding the above problem?

Yes _____        No ___X___

What is/was the status of your civil service complaint, if applicable?

_____

10.    Have you filed a complaint about this matter with any other commission or agency?

Yes _____        No ___X___

If so, please specify the commission or agency and the date you filed, to the best of your recollection.

Commission or Agency _____

Date Complaint Filed _____

Docket Number, If Known _____

11.    Have you taken any court action regarding this matter?

Yes _____        No ___X___

If so, please specify in what court and the date you filed, to the best of your recollection.

Name of Court _____

Date Action Filed _____

City _____ County _____

If there are other facts you feel should be considered, record these on the last page of the questionnaire (Continuation Page).

**IN-15 FORM**                    **Harassment Questionnaire**                    **(page 5)**

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 PA.C.S. Section 4904, relating to unsworn falsification to authorities.

_Cari M Goodwine)_      _3-8-03_
Signature                   Date

_2905 Pennsylvania Ave._
Address

_Erie, Pa  16504_      _(814) 454-5049_
City, State and ZIP Code           Telephone Number

_(before 1:30 PM_
_work 2nd shift)_

**- NOTICE -**
For Equal Employment Opportunities Commission@ Filing
The Erie County Human Relations Commission does not cross-file complaints with the EEOC.
To further protect your rights, we urge that you contact the EEOC at (412) 644-3444.

# Exhibit 3

# Affidavit

My name is **Clarence G. Oliver.** My race is **Black**. I reside at **453 E. 28th Street, Erie, PA 16504.**

I have been a die cast production operator for PHB for 16 years. My supervisor is Gordy Phillips. I am currently on a medical leave of absence. I was on a medical leave of absence from January 2002 through February 16, 2003. I worked for about a month through March 13, 2003. I aggravated my injury during that time and have been off work up to the present time. I do not know when I will be able to return to work.

I often feel that I get assigned the more difficult jobs. These are the heavier jobs with big castings that have to be lifted out and moved around. I feel that I may be assigned to these jobs because I am a strong person and can handle the heavy work. I do not know if I will be able to continue to do that due to my injury.

The company has a policy that after being assigned to a difficult job for a week, you can ask to be taken off that job. I have done it and have been removed from hard jobs.

Several years ago, Supervisor, Gary Gebhart, called me "Buckwheat" when he was doing some computer work. I did not like that but did not complain to anyone about it. I complained to Bob Stranizar several years ago, that I believed that Gary Gebhart was riding me and calling me names. He got me irritated and I responded by calling him a fat slob on one occasion. After my complaints Gary Backed off me a little bit. I also switched to the third shift for personal reasons. When I complained about Gary I did not state that I believed the treatment I received was related

to my race.

I was told by a white friend, Glenn Zambach, that Gary made an offensive remark to Zambach. Zambach had a camp in the same place as Gebhart. Zamback invited me to go there over the weekend. He told Gary that I was coming and that we might stop by to see him. Gary told Zambach that he didn't want my "kind" out by his camp. I believe this occurred in 2001.

GARY HARDIK - another Line Foreman (Different Department)
Many years ago, ~~Gary Gebhart~~, asked me "What is with you guys?" He was talking about Black
C.L.O.
people in reference to a TV show about America's Most Wanted. He noted that most of the 10 most wanted individuals were black.

I have never observed a KKK sign or burning cross scribbled on the walls in any of the restrooms. I have never witnessed or heard about people spitting chewed up sunflower seeds in the drinks of black employees or smashing their snacks.

I have also complained about Mike Wieder, a foreman in the zinc die case department. I complained that he was uncommunicative and did not assign me to work the newer machines. Instead he was giving those assignments to employees with less seniority than me. I have discussed this matter with Ben Hancock, HR Manager, Chet Kimpinski, CEO, Stratizar, Greg Bible, Union President, and Ron Stairs. I did not stated that I believed I was treated this way because of my race.

When a machine breaks down, it is generally the practice to assign the same operator back to the

machine when it is fixed.

It is the company's practice to require operators to write an explanation when a part breaks or production is halted. It is not usually required for small things like drill bits. However, it would depend on how the drill bit was broken.

There are a lot of employees who live out in the country who work for PHB. I feel that the company would benefit by providing diversity training to its employees and foremen. I feel there is a lot of favoritism there. I talked to Mr. Hancock about hiring minorities. I referred three black employees and they were hired, but all screwed up and are no longer with the company.

I have never received an employee handbook or received any instruction on the Company's anti-harassment policy. _C.C.O_

I have been given an opportunity to read and correct this affidavit consisting of 3 pages.

x _Aug. 15th, 03_
Date

x _Clarence L. Oliver_
Signature

3

## Affidavit

My name is **Albert L. Cropek, Jr.** and my race is **white.** I reside at **4152 Fisher Road, Conneautville, PA 16406.** I solemnly affirm the following:

I have been employed by PHB Die Casting for 5.5 years as a Die Cast Punch Press Operator. I work the second shift and all shifts occasionally. I work with Dayved Woodard. Over the years I have heard various comments by supervisors and coworkers that I felt indicated a bias against the black employees who worked for the company. For example I have heard supervisors say that "I'd like to clear them Browns" referring to Black employees. This was said by _____ _____ . I did not tell Dayved Woodard about this comment.

Several years ago, I was told by other employees that supervisor, Tom Thompson, said that he did not like a Budwiser Commercial and called it a "nigger" commercial. I did not directly witness this comment and did not tell Dayved Woodard about it.

I have never heard other supervisors use the word "nigger" in any conversations.

Gary Gebhart was a supervisor who made me feel very uncomfortable about his attitude regarding the black employees. I heard him say that he did not watch much football because there were too many black players who were paid too much money. This comment was made a while ago, possibly one to three years ago.

David had told me that he felt the shop was kind of racist. We talked about it and I mentioned

Gary Gebhart's comment about football to him.

Over the years there have been several comments made which made me uncomfortable. For example, shortly after I began my employment I heard an operator, Jay Lewis, say that if the extractor arm swings and hits the black employees he was not going to stop it. He said if he had his choice, he would put all the "~~niggers~~" monkeys on a boat to Africa and sink it. I also heard him say that it "ain't going to matter" much to him what happens to the black employees because they are "just monkeys to him."  I never reported these comments to anyone.

When the black employees first started working at PHB, they sat at a table by themselves when they ate lunch. I did not think that was right so I started sitting with them. A coworker, Chris Shaffer asked me why I was sitting with them. I felt as though <u>my co-workers did not approve of the fact that I was sitting with them.</u>

Ron Sayers, shift supervisor, does not like Dayved. I cannot say that this is necessarily because of race. However, I believe that Dave gets more of the difficult jobs than some of the other employees. I have also have my share of the difficult jobs. Sometimes it seems that employees who are good workers get put on the difficult jobs more often because they can handle the jobs.

About 9 months ago, if an employee worked a difficult job for 4 hours, he could ask to switch. That does not happen so much now because there is less work to do.

When a machine goes down, 95% of the time the operator of that machine is the one who is put

back on it when it is up and running again.

PHB is in general not a comfortable place to work. There is a lot of favoritism, politics and back stabbing. Certain people are treated better than others because they are friends of supervisors etc. For example, Jay Lewis never gets a bad job. ~~The majority, though, get the difficult and hard jobs like I do.~~

As long as I have worked for the company, I have never received diversity training or any other anti-harassment training.

I saw a KKK sign and a burning cross in the small men's rest room off the aluminum die cast area. Dave had asked me if I had seen it. When I found it and saw it, I scribbled it out with a magic marker

I have never seen any employees spit chewed up sunflower seeds in a black employee's drink or seen anyone smash the snacks of black employees at their work stations. I have not heard other employees talking about this.

There was a situation a fairly recently where guys would not relieve Jamal Shields, a black employee, for his breaks. They were just playing a game with him and I believe the matter was resolved. I believe this was because of his race.

We all have to write letters of explanation when a part breaks or production stops. However,

those letters are not usually required for minor parts such as drill bits.


I have been given an opportunity to read and correct the 4 pages of this statement.


8-9-03

Date

_albert 2 Clark 2_

Signature

RECEIVED
03 AUG 12 AM 10: 00
EEOC PITTSBURGH, PA
AREA OFFICE

# AFFIDAVIT

My name is **Roy A. Hinton, Sr.** and my race is **Black.** My address is **629 Pin Oak Dr., Erie, PA 16504.**

I have been employed by PHB as a Die Cast Production Operator for 15 years. I have always worked the first shift. Mark Nine is my supervisor.

*I worked Third shift For 10 yrs First 4 yrs*

I have felt that I have been treated less fairly than white employees on several occasions. Several years ago, I put in a bid for a set up job. Supervisors, Tom Berger and Tom Thompson went to the front office and said they didn't appreciate that I put in a bid for that job. I think they just did not want a black man in that position. They said they did not want me in the position because they could not get along with me. We met with Gary Porche to discuss this. He said to them that it seemed as though they did not want to give me the job because I was black. I ended up getting the job. I held it for about 3 years. During that time I had some problems and got bad evaluations. I ended up going back to being a die cast production operator.

I was dismissed from my job over allegations of sexual harassment. I filed a charge with the Erie Commission on Human Rights and had a fact finding conference. I thought the fact finding conference showed that the company was in the wrong and was surprised when I found out that the Erie Commission did not feel there was discrimination. Because of that experience I do not have any faith in this EEOC investigation. I ended up getting my job back through Union arbitration.

A few weeks ago, Charley Park told me that I was not doing my job right. He did not use any offensive racial epithets. We had a meeting over this but it did not accomplish anything. On another occasion John Yakabasik, started hollering and screaming at me. Butch Smith, Die Cast Manager, came out to see what all the hollering was about. Butch told me we would have a meeting to discuss that situation but it never happened.

I did not see a KKK sign or burning cross drawn on the rest room walls near the aluminum die cast section. I have not worked in Aluminum for a long while. I have seen the word "nigger" written on the walls of the large men's rest room in the past. I have not seen much lately. If the Janitor sees something he will spray paint over it right away. He does this on an almost daily basis.

I feel that assignments are given out unfairly. In my case it seems that I do not get a lot of down time. For example, if my machine goes down, I am put on another one right away. Other guys are allowed to wait with nothing to do while their machine is fixed.

I worked a lot of years on the third shift with Fred Jackson. It seems that whenever supervisors would see me talking with him they would come by and tell us to get back to work. It almost got to the point where we could not talk to each other at all.

I became a Die Cast Production Operator in 1989 or 90. Shortly after that happened, I recall an incident where Tom Berger, foreman on the Aluminum side paged me to come to from the zinc side to sweep up some oil. I came all the way over from the zinc side. He told me to clean up a

big pile of absorb all. The floor sweeper was standing right there and he made me come over and

sweep it up. Instead of doing this task, I punched out and went home.

Ron Sayer once wrote me up for smoking a cigarette. I was walking with other white guys who

were also smoking but I was the only one written up. ~~This was resolved through a union~~

~~grievance.~~ *I was WROTE up for smoking - my JOB was*
*not at risk. I was The FIRST perlson To Be a*
*WROTE up FOR smoking*

I don't know much about the attendance control problem. I usually have perfect attendance. I

also work a lot of overtime.

It is company practice to require an employee who mislocates a drill or smashes a part to write a

letter explaining how the problem occurred. Often the friends or favorites of the supervisors

don't have to write a letter when something like that happens. I would say that drill taps are a

relatively minor part and letters of explanation should not be required for something like that

~~I do not recall receiving an employee handbook.~~
*I Have a UNION BOOK*

I have had an opportunity to review and correct this 3 page affidavit.

x *9-29-03*
Date

x *Roy H Hinton*
Signature

*3*

EECO - Pittsburgh

Employee Reagleman second shift worker was accused of sexual harrassment. Nothing was ever done on this issue.

(Jim Brandon) was founded by the City of Erie, placed on the local news. When camera's were taken into his residence. Company lights, boxes, and scales belonging to PHB. With their name plastered all over the equipment was shown on the local news. Absolutely nothing happened. No repercions were taken against this employee. No disapline. Another Employee that involved with the same issue. Was later premoted, Quit, and rehired recently as a D C PO.

Roby A. Hinton Sh.

Memo to the file

Testimony of Harland R. Tolhurst, III, metal man

Date: 7/30/03

Re: EEOC Charge No.: 172-2003-00954 and 172-2003-00962
    Woodard and Goodwine (respectively) v. PHB

He has been a metal man since October 1995. His job is to deliver molten metal to the machines. Witness works second shift and became friendly with Goodwine, Woodard and Shields, black employees. He sat with them at lunch.

One day, Cari Goodwine was working as a floor guy/metal man. Gary Gebhart, supervisor asked Goodwine to prepare the pot for a particular machine. Goodwine had not done this before. Goodwine told this to Gebhart. Witness came up to Gebhart and informed him that Goodwine was working as a floor guy that day and the floor guy no longer has to prepare the pot. There was someone else that was supposed to do that. When Goodwine drove away, Gebhart told witness that "We have to make them work harder."

Witness was offended by this he felt as if Gebhart thought he was talking a kindred Klansman or something. Witness felt that Gebhart's comment was in reference to Goodwine's race. Witness believed that Gebhart was saying that whites have to make blacks work harder.

Witness told Jamal Shields about it because he was the black employee closest to that hopper. Later at lunch it was discussed with Goodwine, Shields, Woodard and Al Cropek (white) at lunch. Goodwine was upset about it and wanted to know what Gebhart meant.

The Union Steward was brought in and a meeting was held with Witness, Goodwine, Pete Linsley (Union), Ron Sayers, Gary Gebhart. Witness said what he thought Gebhart meant by that comment. Gebhart denied that that was the case. He said he was talking about all DCPOs. Gary apologized if he said anything that was misconstrued by Goodwine or witness. Gebhart extended his hand to Goodwine but Goodwine refused to take it.

Witness has never heard Gebhart use the word "niggerr" in conversations. However, when this matter was occurring, some other employees who witness declined to identify indicated to him that Witness had indeed interpreted Gebhart's comment correctly.

Witness did not think this would turn into such a big deal. He simply said how he felt about the comment.

Witness has never seen a KKK sign or burning cross drawn on any restroom wall in the facility. He was never told that it existed by any of the black employees.

1 I currently hold the position of Die Cast Punch Operator (DCPO). I have been subjected to harassment and disparate treatment by my Supervisor Gary Stephant and the Human Resources Director Benjamin Hancock both white males. When I questioned an assignment that included in my position description Mr. Stephan commented to a co-worker we have to make it hard on them, (meaning black employees). And I received more Feb 20, 2003 difficult and low desirable job to them similarly situated white employees. Mr Hancock Treated me an discriminatory manner with respect to my medical leave, use of sick leave, and vacation leave by requiring actions and requirements that were different then those applied to similarly

①

Interview with Carl Goodwine  5/7/03
2/20/2003  Statement

Make it hard on them. Told
CP to do something he was not
told to do but supervisor Gary
Gephardt

Die Cast Operation — told to get a
metal part, pour the metal
but not in his job descriptions.

Foreman, Tom Thompson — take that nigger
shut off — talking to a white
employee — Budweiser pin — Flag Black
white up — Black athletes —
Human Resources director — did nothing
Union President — sympathetic
Greg Bible. he wrote letter to management

About 5 or 6 blacks - 3 shifts
about ≤ 00 employees

Questioning of CP about doctors excuses
harassment about medical leaves
Bad boy list — but whites treated better
had more points than CP — but CP had
doctors excuse — vacation payment not honored
like whites.

situations affecting white employees
I complained about these matters to
Benjamin Hancock but ~~no~~ little or no corrective action
was taken to resolve these issues

2 ~~Substantially~~

3 .... Similarly situated white employees were
~~treated as a manner~~ were not subject
to ~~similarly to~~ treatment accorded to me.

Sue, contact CP to verify his
complaints. Modify charges as necessary
complete paragraph 2 and 3 based on
information you receive from CP

# Exhibit 4
## Incorporated as part of Exhibits 3, 32 and34

# Exhibit 5

## Monthly Report Form 3
## Cases Disapproved Under
## Regional Attorney's Delegated Authority

Case name        :    Cari M. Goodwine v. PHB Die Casting
Charge number :    172-2003-00-962
Category         :    A-2

For cases disapproved for litigation under the RA's delegated authority, provide the following:

(a)     date the case was disapproved:   2/25/2004

(b)     reason(s) for the decision (one or two paragraphs addressing such things as the merits, relation to NEP/LEP priorities, availability of private counsel, etc.): CP contends that he was subjected to a racially hostile work environment; that he was subjected to disparate treatment on the basis of race in the terms and conditions of his employment (work assignments and enforcement of time and attendance rules); and that Respondent retaliated against him for complaining of racial harassment. The Commission's determination found reasonable cause to believe that CP had been subjected to a racially hostile work environment, but found no reasonable cause to believe that he had been subjected to disparate treatment or retaliation.

This is not a good litigation vehicle for several reasons: (1) Charging Party was not actually working during most of the relevant time frame; the finding of a hostile work environment depends on events which allegedly occurred clearly outside the relevant time period; the event which allegedly occurred within the relevant time period is barely sufficient to support a finding of a hostile work environment. (2) Charging Party has a terrible attendance record. Subsequent to the investigation, Respondent has (1) conducted discrimination training for all supervisors and managers and employees; (2) discharged the supervisor who made the derogatory comments; and (3) investigated and handled subsequent allegations of racial hostility. Finally, because the Commission issued a mixed cause finding, it could not completely represent Charging Party's full interests.

(c)     for cases in which the decision not to litigate was made more than 60 days after receipt of the case in the legal unit, state the reason(s) for the delay:   N/A

(d)     if this is the first time in which this case has been listed under this new format, provide the information requested under 1 (attached a Form 1)

I concur   [x]                              I do not concur  [ ]

Jacqueline H. McNair                    2/25/04
Regional Attorney                        Date

Prepared by M. Jean Clickner, Trial Attorney
Date: 02.25/04

# Exhibit 6



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Pittsburgh Area Office

Liberty Center
1001 Liberty Avenue, Suite 300
Pittsburgh, PA 15222-4187
(412) 644-3444
TTY (412) 644-2720
FAX (412) 644-2664

Mr. Cari M. Goodwine
2905 Pennsylvania Avenue
Erie, PA 16504

      Charging Party,

CHARGE NO.:172A300962

PHB Die Casting
7900 West Ridge Road
Fairview, PA 16415-1899

      Respondent

## DETERMINATION

Under the authority vested in me by the Commission, I issue the following determination as to the merits of the above cited charge.

All requirements for coverage have been met. Charging Party alleged that Respondent discriminated against him, because of his race black and in retaliation for complaining of harassment in violation of Title VII of the Civil Rights Act of 1964, as amended. He contends that he was harassed by the Respondent and subjected to different terms and conditions of employment than his white coworkers. He believes that he is assigned to the more difficult machines more often than his white coworkers. Charging Party was placed on the "bad boy" list for attendance reasons in January 2003. In February 2003, supervisor Gary Gebhart, attempted to have him do work that he was not trained to do. When a white coworker came to the Charging Party's defense, Gebhart rebuked the white employee stating that "we have to make it harder on them." A supervisor, Gordy Phillips, did not follow safety procedures and attempted a joke that could have injured the Charging Party. That same supervisor is slow to answer Charging Party's pages for relief. Finally, the Charging Party alleges that Supervisor, Gary Gebhart, continues to scrutinize the Charging Party's work even though the Charging Party no longer works in his area.

Respondent denies that the Charging Party has been harassed at any time by any supervisor or manager or by any other employee. Respondent denies that the Charging Party has been subjected to different terms and conditions of employment. Respondent asserts that the Charging Party was placed on an attendance improvement plan like 14 other white employees and 2 other black employees because of a poor attendance record. Respondent denies that the Charging Party was assigned to more difficult assignments than white employees. Respondent denies that Gary Gebhart made a discriminatory comment about the Charging Party

and/or black people in general. Respondent states the incident during which the comment was made was misunderstood by the Charging Party. Supervisor Gordy Phillips did not try to play a joke on the Charging Party, rather Mr. Phillips got sprayed when a machine was started up. Supervisor Phillips does not ignore or delay in answering pages for relief from the Charging Party. Finally, Mr. Gebhart is a supervisor who shares supervisory duty with Mr. Phillips and as such is responsible for supervising the Charging Party's work and being in that area.

EEOC interviews with a Respondent employee who was present when Gary Gebhart said "we have to make it harder on them" attested to the fact that he construed this to be a racial remark. Charging Party complained about this remark to Human Resources and a meeting was held with witnesses, union representation, Mr. Gebhart, and the Director of Human Resources. After this meeting Respondent scheduled Gebhart for diversity training at a local University because it was not satisfied that Mr. Gebhart's general attitude was appropriate or consistent with company expectations of its supervisors. However, the class was cancelled and no alternative training was ever provided to him.

Witnesses corroborated that Mr. Gebhart has made several offensive comments about black employees in recent years, calling them "fuckers" and stating he did not want to associate with "them." No effective action by the Respondent was taken to eliminate this harassment. Other employees have complained to Respondent officials of offensive racial slurs and comments made by supervisors and coworkers. The comments were offensive to both black and white employees. EEOC's investigation found witness corroboration of offensive racial graffiti in the form of a KKK and burning cross written on the rest room walls.

Based on this analysis, I have determined that the evidence obtained during the investigation establishes a violation of Title VII with respect to hostile environment.

Investigation did not establish a violation of Title VII with respect to the other issues cited by the Charging Party. Charging Party was placed on the "bad boy" list with 14 other white employees. Many of them had similar attendance records. A review of the Charging Party's attendance record shows that he had missed many days of work in the year prior to January 2003. His record was as bad or worse than many similarly situated employees who were also placed on the list.

Since Charging Party did not complain about Mr. Gebhart until approximately February 2003 and was placed on the bad boy list in January 2003 it is chronologically impossible to show that placement on the list was retaliatory. Evidence did not establish that the Charging Party was assigned to work differently than white employees. Many factors are considered when making assignments. In addition, there is no universal opinion as to what is a difficult assignment. In many cases the difficulty of a particular job is related to individual preferences.

Evidence did not establish that a joke or trick was played on the Charging Party because of his race. Finally, investigation did not support that delays in responding to the Charging Party's pages by Supervisors occurred because of the Charging Party's race or in retaliation for complaining of matters protected by statutes enforced by the EEOC.

Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter.

The confidentiality provisions of Title VII and Commission Regulations apply to information obtained during conciliation.

If the Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the office Director is not obtained, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission.

A Commission representative will contact each party in the near future to begin conciliation.

The Commission is seeking an amount inclusive of the applicable cap to your organization for compensatory and punitive damages; appropriate lost wages and actual monetary costs incurred by the Charging Party. In this regard, a Commission representative will prepare and monitor an actual dollar amount to include accruing lost wages, if any, and attendant benefits, with interest to date; any appropriate attorney fees and costs which have accrued to date. Again, the Commission is postured to consider any reasonable offer during this period.

Respondent may contact investigator, Susan M. Kelly at 412-644-2921, if there are any questions or concerns about conciliation.

On Behalf of the Commission,

_____12/8/03_____

Date

Eugene M. Reid for

Marie M. Tomasso
Philadelphia District Director

# Exhibit 7

**Introduction to Spreadsheets and Graphing** - March 26, 1-3 pm
Skills to be covered: terminology (rows, columns, etc.); formatting and entering data; adding simple formulas; creating graphs.

**Introduction to Database** - April 9, 1-3 pm
Skills to be covered: setting tables; defining fields; sorting.

**Introduction to PowerPoint** - April 30, 1-3 pm
Skills to be covered: setting up tables; defining fields; sorting.

*Intermediate Technology Proficiency Level*

**Mastering Word Processing** - March 20, 1-3 pm
Skills to be covered: bullets and numbering; headers and footers; shortcuts; using WordArt or draw/paint tools; mail merge.

**Intermediate Spreadsheet** - March 27, 1-3 pm
Skills to be covered: using more advanced formulas; creating more complex layouts and graphs.

**Intermediate Database** - April 10, 1-3 pm
Skills to be covered: creating more complex tables; formulating queries.

**The Power of PowerPoint** - May 1, 1-3 pm
Skills to be covered: incorporating sound, video, graphics, animation, and hyperlinks into multimedia presentations.

**Introduction to Webpage Design** - April 24, 1-3 pm
Skills to be covered: introduction to webpage design; copyright issues.

*Advanced Technology Proficiency Level*

**Mastering a Spreadsheet** - March 28, 1-3 pm
Skills to be covered: creating advanced formulas, layouts and graphs.

**Mastering a Database Program** - April 11, 1-3 pm
Skills to be covered: creating advanced reports, queries, and tables; modifying forms.

**Using a Webpage Authoring Program** - April 25, 1-3 pm
Skills to be covered: designing a Homepage; creating links; inserting tables and graphics.

**Converting Documents with Adobe Acrobat** - April 23, 1-3 pm
Skills to be covered: what is pdf?; converting, navigating and editing a document.

## Microsoft PowerPoint

Want to really get your message across, organize your thoughts or just razzle and dazzle? Try a PowerPoint presentation. Learn the elements every good presentation should contain, like the tools to create slides and/or handouts and transparencies, inserting graphics and text, animating the slide, inserting bullets and numbering, and moving and copying text. You will also learn how to deliver an electronic slide show by using manual or automatic timing, speaker notes and other automated tools. A must have class for those who need help presenting. This course in presentation software covers the basics you need to create, edit, format, store, and print slides.

Tuesday, May 6, and Thursday, May 8, 1:00-5:00 pm.
Edinboro University in Erie – The Porreco Center
Instructor: Jean McGowan, Jamestown Community College
$189

## Microsoft Publisher

Learn desktop publishing tricks that get your posters, brochures, and newsletters noticed. Learn to use the package features as well as fundamental graphic design skills and techniques you can use with any desktop publishing system.

Tuesday, April 22, and Thursday, April 24, 1:00-5:00 pm.
Edinboro University in Erie – The Porreco Center
Instructor: Jean McGowan, Jamestown Community College
$189

## Customized Computer Training

Let Edinboro University provide a customized computer training session for your company in Microsoft Word, Excel, Access or PowerPoint. Let us teach your employees how to navigate the Internet, design databases or get them started in basic computer orientation. Please call for more information.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## General Classes:

### Cultural Diversity

Students will understand, appreciate and accept cultural differences. This class will include lectures, interactive exercises and library research on culturally relevant projects.

Tuesdays, April 8 & 15, 5:00-7:00 pm (2 classes)
Edinboro University in Erie – The Porreco Center
Instructor: Dr. Elizabeth Pierce-Stewart, Retired Edinboro University Professor, Social Work
$39

### Open House for Carpentry 101

Mark your calendar and plan to attend an open house for Edinboro University's Carpentry 101 class. This 2-hour program will cover an introduction to its 4-week Carpentry 101 program so that you can see if this course interests you. The instructor will schedule Carpentry 101 to fit the needs of the students with dates suitable to the majority of the open house participants. Come see if this is the class for you and pick up some valuable pointers too!

Open House: Thursday, April 10, 6-8 pm
Edinboro University Campus
Instructor: Duane Ford, self-employed for 30+ years in the construction field
Free

### Current Affairs and Social Problems

This class takes a look at current events in the light of often long-standing social problems. Brief historical references will be included. The class sessions will be a combination of lecture and discussion and sources of additional information will regularly be suggested.

Instructor: Dr. Eugene Antley, Retired Edinboro University Professor, Social Work
Wednesdays, April 2-May 7, 6-7:00 pm (6 classes)
Edinboro University Campus
$45



EXHIBIT
2

EDINBORO UNIVERSITY
PENNSYLVANIA
IN ERIE
PORRECO CENTER

THE PORRECO CENTER

# Exhibit 8

```
                        P H B   D I E   C A S T I N G                    SPS31
                          DAILY ABSENTEE REPORT

CLOCK#:  01731    NAME:   GOODWINE                          CARI       M
   CODE:                  #################################
ABSENTEE DATE     CODE              TEXT OF REASON
  04-29-2003      SX
  04-30-2003      SX
  05-01-2003      SX
  05-02-2003      SX
  05-05-2003      SX
  05-06-2003      SX
  05-07-2003      SX
  05-08-2003      SX
  05-09-2003      SX
  05-12-2003      VLO
  05-13-2003      VLO
  05-14-2003      VLO
  05-15-2003      VLO
  05-16-2003      VLO
  05-19-2003      VLO


4-©              1 Sess-1    192.168.1.1                              5/11
```

```
             P H B   D I E   C A S T I N G                    SPS31
                   DAILY ABSENTEE REPORT

CLOCK#:  01731    NAME:   GOODWINE                   CARI        M
  CODE:                   #################################
ABSENTEE DATE    CODE              TEXT OF REASON
  05-20-2003     VLO
  05-21-2003     VLO
  05-22-2003     VLO
  05-23-2003     VLO
  05-26-2003     VLO
  05-27-2003     VLO
  05-28-2003     VLO
  05-29-2003     VLO
  05-30-2003     VLO
  06-02-2003     VLO
  06-03-2003     VLO
  06-04-2003     VLO
  06-05-2003     VLO
  06-06-2003     VLO
  06-09-2003     SX       PER D.C.
```

```
                              P H B   D I E   C A S T I N G              SPS31
                                DAILY ABSENTEE REPORT

CLOCK#:   01731    NAME:   GOODWINE                              CARI      M
   CODE:                   ###################################
 ABSENTEE DATE    CODE              TEXT OF REASON
  06-10-2003      SX
  06-11-2003      SW
  06-12-2003      SX
  06-13-2003      SX
  06-16-2003      SX      PER PCP
  06-17-2003      SX
  06-18-2003      SX
  06-19-2003      SX
  06-20-2003      SX
  06-23-2003      SX
  06-25-2003      SX
  06-26-2003      SX
  06-27-2003      SX
  06-30-2003      SX
  07-01-2003      SX
```

```
        P H B   D I E   C A S T I N G                      SPS31
              DAILY ABSENTEE REPORT

CLOCK#:  01731    NAME:  GOODWINE                    CARI       M
  CODE:                  ###################################
ABSENTEE DATE     CODE                 TEXT OF REASON
  07-02-2003      SX
  07-03-2003      SX
  07-04-2003      SX
  07-07-2003      SX
  07-08-2003      SX
  07-09-2003      SX
  07-10-2003      SX
  07-11-2003      TSX
  07-14-2003      TSX
  07-15-2003      SX       PER CHN JFK CTR
  07-16-2003      SX
  07-17-2003      SX
  07-18-2003      SX
  07-21-2003      SX
  07-22-2003      SX
```

4-©              1 Sess-1    192.168.1.1                      5/11

```
                                        PHB  DIE  CASTING              PS-L12  BTPPSCR
                               INDIVIDUAL ABSENTEE REPORT              RUN DATE: 01/28/02
                               01-28-2001 THRU 01-28-2002             RUN TIME: 12:10
                                     WITH ROLLBACK
```

01731
CARI                M  GOODMINE

| DATE ABSENT | ABSENTEE CODE | ABSENTEE DESCRIPTION | POINTS | |
|---|---|---|---|---|
| 03-16-2001 | LT2 | LOST TIME 2 HRS TO 4 HRS | 0.00 | |
| 03-11-2001 | LT1 | LOST TIME OVER 4 HOURS | 0.66 | |
| 04-19-2001 | LT1 | LOST TIME OVER 4 HOURS | 1.00 | |
| 04-19-2001 | NOT | STEP 1 - SUPERVISOR REMINDER | | SUPERVISOR ORAL REMINDER |
| 07-11-2001 | LT2 | LOST TIME 2 HRS TO 4 HRS      3.00 | | |
| 07-19-2001 | LT2 | LOST TIME 2 HRS TO 4 HRS | 0.66 | |
| 07-20-2001 | LT3 | LOST TIME OVER 4 HOURS | 1.00 | |
| 08-03-2001 | NOT | STEP 2 - SUPER & STEWARD REMINDER   4.67 | | SUPERVISOR ORAL REMINDER |
| 11-04-2001 | LT1 | LOST TIME 1 MINUTE TO 2 HRS | 0.33 | SUPERVISOR ORAL REMINDER |
| 11-09-2001 | LT3 | LOST TIME OVER 4 HOURS | 1.00 | SUPERVISOR & STEWARD ORAL REMINDER |

TOTAL POINTS:  4.67

NOTICE RECEIVED: _Carl Goodmine_ _Rick Ross_
                   employee              supervisor

DATE OF NOTICE: _____1-3-02_____

please sign, date, & return



PHD  DIE  CASTING
INDIVIDUAL ABSENTEE REPORT
08-02-2001 THRU 08-01-2001
WITH ROLLBACK

PS-12 BIPPSEBR
RUN DATE: 08/02/01

RUN TIME: 12:09

CLOCK #: 21731
NAME: CARL?

GOODWINE  M

| DATE ABSENT | CODE | ABSENTEE DESCRIPTION | POINTS | |
|---|---|---|---|---|
| 03-16-2001 | LT2 | LOST TIME 2 HRS TO 4 HRS | 0.66 | |
| 03-23-2001 | LT3 | LOST TIME OVER 4 HOURS | 1.00 | |
| 04-16-2001 | LT3 | LOST TIME OVER 4 HOURS | 1.00 | |
| 04-19-2001 | NOT | STEP - SUPERVISOR REMINDER | | |
| 05-09-2001 | LT1 | LOST TIME 1 MINUTE TO 2 HRS | 0.33 | SUPERVISOR ORAL REMINDER |
| 05-11-2001 | NOT | STEP 1 - SUPERVISOR REMINDER | 3.00 | |
| 07-19-2001 | LT2 | LOST TIME 2 HRS TO 4 HRS | 0.66 | SUPERVISOR ORAL REMINDER |
| 07-20-2001 | LT3 | LOST TIME OVER 4 HOURS | 1.00 | SUPERVISOR & STEWARD ORAL REMINDER |

TOTAL POINTS: 4.67

NOTICE RECEIVED: _____

DATE OF NOTICE: _____

8-3-01

PLEASE SIGN & RETURN

```
PHB  DIE  CASTING                          PS-12 BTPPSER
INDIVIDUAL ABSENTEE REPORT                 RUN DATE: 05/10/01
05-10-2000 THRU 05-09-2001                 RUN TIME: 12:11
           WITH ROLLBACK
```

```
CLOCK:    01731
NAME:     CARL   M. GOODWINE
```

| ABSENT DATE | ABSENTEE CODE | ABSENTEE DESCRIPTION | POINTS |
|---|---|---|---|
| 07-20-2000 | LT2 | LOST TIME 2 HRS TO 4 HRS | 0.00 |
| 03-16-2001 | LT2 | LOST TIME 2 HRS TO 4 HRS | 0.66 |
| 03-26-2001 | LT3 | LOST TIME OVER 4 HOURS | 1.00 |
| 04-03-2001 | LT3 | LOST TIME OVER 4 HOURS | 1.00 |
| 04-19-2001 | NOT | STEP 1 SUPERVISOR REMINDER | 3.00 |
| 05-09-2001 | LT1 | LOST TIME 1 MINUTE TO 2 HRS | 0.33 |

```
                                           TOTAL POINTS:  3.00    SUPERVISOR ORAL REMINDER
```

NOTICE RECEIVED: *Carl M Goodwine*
                 Employee

*Robert J Bowes*
Supervisor

DATE OF NOTICE: 5-1-01

*Please sign, date & return.*



PH8     DIE CASTING
INDIVIDUAL ABSENTEE REPORT
04-17-2000 THRU 04-16-2001
WITH ROLLBACK

PS-12 BIPPSER
RUN DATE: 04/17/01
RUN TIME: 12:11

CLOCK: 01731
NAME: CARI

H GOODWINE

| DATE | CODE | ABSENTEE DESCRIPTION | POINTS |
|------|------|---------------------|--------|
| 07-20-2000 | | | 0.00 |
| 03-25-2001 | LT2 | LOST TIME 2 HRS. TO 4 HRS. | 0.66 |
| 04-09-2001 | LT3 | LOST TIME OVER 4 HOURS | 1.00 |
| 04-16-2001 | LT1 | LOST TIME 1 MINUTE TO 2 HRS | 0.33 |
| | LT3 | LOST TIME OVER 4 HOURS. | 1.00 |

TOTAL POINTS: 3.00

SUPERVISOR ORAL REMINDER

NOTICE RECEIVED: _____ Ronald Engle

DATE OF NOTICE: 4-19-01

Please sign, date & return

# Exhibit 9

File

Call Goodwine

— 9/22/01 Back injury —

Call Goodwine — Metal Man
situation with Gebhardt
Mfg w. Tolhurst, Goodwine, Gebhardt,
Sayes

Pete Lindsley

250 T3
Helper Pot

"Come on we have to make it hard on them"
Gary Gebhardt (Rob Tolhurst)

We need to get them to work with us.
(Gary Gebhardt)

( FILLING IN AS A METALMAN (FLOOR DUTIES)

25073

Scott Getty NEEDED Shop boxes

GG "Pot NEEDED to be READY"
Pot  "    " "  MANTADED

C.G. NoT CLEANED

GG GET WITH RoB TICHURST to show you what to do.

Guy doing B METAL WAS to do HELP ER PoT



7900 WEST RIDGE ROAD
FAIRVIEW, PENNSYLVANIA 16415
Phone: 814/474-5511
Fax: 814/474-2063
website: www.phbcorp.com

3/30                    20  03

TO: _File – Carl Goodwine_

RE: _Conversation with Butch Smith_

① Relief is now handled
thru Ron & Rex

② Travelse – Can get anytime

③ Gary Gebhardt – told to help
other fireman when not
busy with his machines

---

PHB Die Casting   •   PHB Tool & Die Division
PHB Machining Division   •   PHB Molding Division
PHB # 01-980-0218





7900 WEST RIDGE ROAD
FAIRVIEW, PENNSYLVANIA 16415
Phone: 814/474-5511
Fax: 814/474-2063
website: www.phbcorp.com

20

TO: FILE - CALL Goodunh

RE: Conversation with Chri Goodunh

① Call for Relief - Don't get it -
Call for Carnecels
Row Shape & Joy down, 6. Pneum
Values on machine
Let's open until Values
And see how t_ing fast
he really is
"Row Snyders is aware of
this"
Another foleman - Goldie Phelps

Goldie acting different





7900 WEST RIDGE ROAD
FAIRVIEW, PENNSYLVANIA 16415
Phone: 814/474-5511
Fax: 814/474-2063
website: www.phbcorp.com

_____ 20 _____

TO: _____

RE: _____

as to 1hr to get relet

not speaking to him

Don't sit with him
at lunch

PHB DIE CASTING  •  PHB TOOL & DIE DIVISION
PHB MACHINING DIVISION  •  PHB MOLDING DIVISION
PHB # 01-980-0218



# Exhibit 10

EMPLOYEE RATING FORM

(Hire/Recl. Tran. Date: 3/6/00   Expired Days

Name: Chin M. Goodwine   Clock #: 01731   Dept.: ADC   Job: DCPO

A = Excellent
B = Good
C = Fair/Average
D = Poor
F = Failing
NA = Not Applicable
NR = Not Enough Info To Rate This Week

## 60 DAY EVALUATION

| | Eval. Date: | 3-10-0 (1) | 3-17 (2) | 3-24 (3) | 3-31 (4) | 4-7 (5) | 4-14 (6) | 4-21 (7) | 4-28 (8) | 5-5 (9) | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ATTITUDE | Paying Attention; Following Instructions; Questioning Assignments That Are Not Understood | ✓ | C | C | B | | | | | | | | | |
| | Cooperating With Supervisors & Co-Workers | ✓ | C | C | B | | | | | | | | | |
| | Communicating With Co-Workers/Inspectors As To How The Job Ran On The Previous Shift | ✓ | C | C | B | | | | | | | | | |
| | Effort | ✓ | B | B | B | | | | | | | | | |
| | Willingness To Learn | ✓ | B | B | B | | | | | | | | | |
| | Avoiding Idleness (Working Steady On Designated; Trying To Learn From Those Working On His/Her Machine; Pitching In; Cleaning Up) | ✓ | C | C | B | | | | | | | | | |
| | Being Alert (Concentrating On Work And Machinery; Catching Broken Tools; Noticing Strange Noises) | ✓ | C | C | B | WEEK | | | | | | | | |
| | Accepting Correction And Constructive Criticism As Learning Opportunities | ✓ | C | C | B | ALL | (2) DAYS | | | | | | | |
| | Admitting Mistakes (Not Trying To Hide Errors Which May Cause Problems For Others; Giving Precise, Not Evasive Answers To Why The Job Is Down) | ✓ | C | C | B | | | | | | | | | |
| | Having A Positive Attitude (Offering Improvement Ideas; Not Habitually Complaining) | ✓ | C | C | B | DUTY | DUTY | | | | | | | |
| | Maturity Level (Not Engaging In Pranks; Not Acting Before Thinking) | ✓ | B | B | B | | | | | | | | | |
| | Overall Dependability | ✓ | B | B | B | | | | | | | | | |
| PRODUCTION AND EFFICIENCY | Weekly Percentage/Productivity | NR | — | — | — | | | | | | | | | |
| | Hand/Body/Eye Coordination | ✓ | C | C | B | LIGHT | LIGHT | | | | | | | |
| | Limiting Occurrences Of Downtime Due To Error Or Carelessness | ✓ | C | C | B | | | | | | | | | |
| | Using Routing Tickets Or Travelers Properly (Signing Them; Placing Them Where They Won't Fall Through To The Bottom Of Box/Truck) | ✓ | C | C | B | ON | ON | | | | | | | |
| | Having The Physical Strength Necessary To Do The Job | ✓ | C | C | B | | | | | | | | | |
| KNOWLEDGE/METHODS | Technical "Know-How"/Mechanical Ability | NR | — | — | — | | | | | | | | | |
| | Repairing Equipment And Machinery | NR | — | — | — | | | | | | | | | |
| | Machine Setup | NR | — | — | — | | | | | | | | | |
| | Punching In And Out Properly | NR | B | B | B | | | | | | | | | |
| | Following Method Sheets/Gaging Procedures | ✓ | C | C | B | | | | | | | | | |
| | Lubricating The Die/Tooling/Casting Properly (Oil Dip Or Spray) | ✓ | C | C | B | | | | | | | | | |
| | Placing Parts And Metal Scrap In The Proper Bins/Boxes/Trucks/Barrels | ✓ | C | C | B | | | | | | | | | |

On-the-job orientation and/or training conducted.

| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| QUALITY | Maintaining A Low Scrap Rate; Needing Minimal Rework On His/Her Parts | ✓ | C | C | B | 7 | | | | | | | | |
| | Concern For Quality (Not Sacrificing Quality For Speed) | ✓ | C | C | B | | | | | | | | | |
| | Handling Castings (Not Throwing Or Handling Castings In Such A Way That Damage Might Occur) | ✓ | C | C | B | | | | | | | | | |
| HOUSEKEEPING AND SAFETY | Maintaining A Clean Workplace, Free Of Tripping And Other Safety Hazards | ✓ | C | C | B | | | | | | | | | |
| | Displaying Concern For Safety Of Self And Others (Remaining Alert To Forklift Horns, etc.) | ✓ | C | C | B | | | | | | | | | |
| | Reporting To Work In The Proper Attire (Safety Glasses; Hearing Protection; Hard Soled Shoes; Proper Length Sleeves; etc.) | X | A | A | A | | | | | | | | | |
| ATTEND-ANCE | Starting And Stopping Work At Proper Times At Shift Start/End And At Break | X | A | A | A | | | | | | | | | |
| | Overall Attendance Record | X | A | A | A | | | | | | | | | |

FOREMAN'S/SUPERVISORS INITIALS:  RH  RS  RS  CAH

EMPLOYEE'S INITIALS:(indicating he/she reviewed the form; not agreement with the rating)   CH CH CH CH

| COMMENTS | |
|---|---|
| Week 1: | O K |
| Week 2: | DOING GOOD |
| Week 3: | SEEMS TO PICK THINGS UP FAST |
| Week 4: | DOES GOOD |
| Week 5: | |
| Week 6: | |
| Week 7: | |
| Week 8: | |
| Week 9: | |
| Week 10: | |
| Week 11: | |
| Week 12: | |
| Week 13: | |

# Exhibit 11

Report Date: 8/11/03

Investigator: S. Kelly                 Supervisor: J. Hardiman III

Charge Number: 172-2003-00954 + / 172-2003-00962   Caption: Weekend  v  PHB + / Goodwine  v. PHB

Location where investigation was conducted: Union Hall - 703 French St.
+ 7900 West Ridge Rd - Erie PA

Date of on-site investigation: 7/29 + 7/30/03     Time: 10:00 a.m.

Reference to Investigative Plan:  Plan date: _____     Tab: _____

Respondent Attorney: Richard Zamboldi          Present: (Yes) or No
                                                        on 7/30 only

*Interviews/Reviews*

| Respondent Officials | Other Witnesses | Documents | Tour of Facility Yes / No |
|---|---|---|---|
| Gary Gebhart | Rodney Berry | | Yes |
| James B. Hancock | William Diehl | | |
| Wayne Phillips | Clarence Oliver | | |
| Rex Ryan | Roy Hinton | | |
| Ronald Sayers | Jamal Shields | | |
| Loren A. Smith | Harland Tolhurst III | | |
| Shelly Antolik | | | |

**Details to include summary and analysis of data, conclusion, follow-up required.  Individual interview notes or affidavits are to be attached.**

Interviews established that at least one supervisor
has made derogatory statements about block
employees on several occasions and has not
been disciplined. Investigation revealed that Company
was not aggressive in stopping the harassment.
Cause likely for hostile environment.

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 172-2003-00962 |

| Pennsylvania Human Relations Commission | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (Indicate Mr., Ms., Mrs.)<br>**Mr. Cari M. Goodwine** | Home Phone No. (Incl Area Code)<br>**(814) 454-5049** | Date of Birth<br>**07-19-1970** |
|---|---|---|

| Street Address     City, State and ZIP Code |
|---|
| **2905 Pennsylvania Ave. Erie, PA 16504** |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>**PHB DIE CASTINGS, INC.** | No. Employees, Members<br>**201 - 500** | Phone No. (Include Area Cod<br>**(814) 474-5511** |
|---|---|---|

| Street Address     City, State and ZIP Code |
|---|
| **7900 West Ridge Road   Fairview, PA 16415** |

| Name | No. Employees, Members | Phone No. (Include Area Cod |
|---|---|---|
| | | |

| Street Address     City, State and ZIP Code |
|---|
| |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| [X] RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN<br>[X] RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ OTHER (Specify below.) | Earliest      Latest<br>**02-01-2003**     **04-16-2003**<br>[X] CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

1. I was hired by the Respondent in 2000 as a Die Cast Punch Operator. During the course of my employment I have been harassed by my employer and subjected to different terms and conditions of employment with respect to my use of sick leave and vacation time. I have also been assigned to work the more difficult machines than my white coworkers, in that, although we rotate on all of the machines. I seem to get assigned to the more difficult machines three or four times more often than my white coworkers. Most recently the following has occurred:

a)    In January 2003 I was placed on a "bad boy" list for attendance problems. As a result of this action, I have lost my privileges for calling off to take a vacation day with little or no notice. Instead every time I want to take off, I must submit a written request and have it approved by my supervisor.

b)    In approximately February 2003, Mr. Gephart, supervisor, asked me to do something that I was not trained to do safely (prepare the aluminum pot). I called over Supervisor Ron Sayers and explained that I was not trained to perform this function but if he directed me to do so, I would do it. Mr. Sayers informed Mr. Gephart that preparing the pot was not something I was supposed to do. After Mr. Sayers left the area, Mr. Gephart informed a witness to the conversation that "we", meaning the white employees, were supposed to make it hard on "them" meaning black

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| I declare under penalty of perjury that the above is true and correct.<br><br>X 7-29-03    X _Cari Goodwine_<br>Date     Charging Party Signature | X _Cari Goodwine_<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 172-2003-00962 |

| Pennsylvania Human Relations Commission | and EEOC |
|---|---|
| State or local Agency, if any | |

THE PARTICULARS ARE *(Continued from previous page)*:

employees. I reported this incident to Mr. Ben Hancock in Human Resources. To my knowledge nothing was done about Mr. Gephart.

c)  I have recurring problems from an automobile accident which happened in 2000. Respondent has refused to pay my doctor and chiropractor bills for this accident.

*DOES NOT ASSIGN*

d)  Another foreman, ~~Gordy Phillips~~ has regularly assigned me to the hardest jobs more often than the white employees. Mr. Phillips is a friend of Mr. Gephart. Shortly after I complained about Mr. Gephart, Mr. Phillips was planning to breach safety procedures and not advise me to stand back when a valve to a malfunctioning machine was about to be turned on. I accidently discovered this when I was coming back from getting a drink of water and heard my name mentioned. I could have been burned or seriously injured if Mr. Phillips had carried through with this plan.

e)  In addition, since my complaints about Mr. Gephart, Mr. Phillips has been slow to answer my pages for help, making me page him three or four times before responding.

f)  Although, I was moved away from Mr. Gephart after I complained about him, he continues to come to my area and stand near my machine and watch me.

2.  Employees were placed on the "bad boy" attendance list for amassing 3 points by December 2002 for attendance reasons or if management detected a pattern of absences. I asked Mr. Hancock what was going to be done about Mr. Gephart on several occasions after the incident. Mr. Hancock's reply was always that the company was going to decide what to do. To my knowledge nothing has been done to date. I have informed Foreman Ron Sayers about the problems with my assignments and about Mr. Gephart and Mr. Phillips, harassing me by walking past my machine and watching me work. Nothing has been done about it.

3.  I believe that the Respondent discriminated against me because of my race, black, and in retaliation for complaining about a supervisor, Mr. Gephart, in that, I did not have 3 points for attendance related matters at the time I was placed on the "bad boy" attendance list. Furthermore, the Union has looked into the matter of this list and found approximately 30 employees with attendance records that were worse than mine. Those employees were not placed on the list. Respondent has failed to take action against supervisors in the past who make derogatory racial comments. Since my complaints about Mr. Gephart, another supervisor, Gordy Phillips, has ignored my pages for assistance and assigned me to the more difficult machines, more often than my white coworkers. I have learned from other coworkers that Mr. Gephart has threatened violence against black coworkers and those who associate with them.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br>X *[signature]* |
| X 7-29-03    X *[signature]*<br>Date            Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

| CHARGE DISCRIMINATION | | AGENCY | CHARGE NUMBER |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | | ☐ FEPA ☒ EEOC | 172A3C0962 |

PA Human Relations Commission _____ and EEOC
*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* | |
|---|---|---|
| Mr. Carl M. Goodwine | (814) 454-5049 | |
| STREET ADDRESS          CITY, STATE AND ZIP CODE | | DATE OF BIRTH |
| 2905 Pennsylvania Ave., Erie, PA 16504 | | 07/19/1970 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| PHB Die Castings, Inc. | Cat C (201-500) | (814) 474-5511 |
| STREET ADDRESS          CITY, STATE AND ZIP CODE | | COUNTY |
| 7900 West Ridge Road, Fairview, PA 16415-1899 | | 049 |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| | |
| STREET ADDRESS          CITY, STATE AND ZIP CODE | COUNTY |
| | |

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))* | DATE DISCRIMINATION TOOK PLACE | |
|---|---|---|
| ☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN | EARLIEST | LATEST |
| ☐ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ OTHER *(Specify)* | 02/01/2003 | 04/16/2003 |
| | ☒ CONTINUING ACTION | |

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

1. I am employed with the respondent as a Die Cast Punch Operator (DCPO). During the course of my employment, I have been subjected to racial comments and/or racial slurs in the workplace. One example of this was Gary Gephart, Aluminum Foreman (white), referring to black employees by making a comment to a white co-worker, that, "We have to make it hard on them." In addition, I am given more difficult and less desirable job assignments than similarly-situated white employees. Foreman have shown a lack of communication towards me. Foreman have given me dirty looks and provide me very little assistance.

2. I have complained to Benjamin Hancock, Human Resources Director (white), but little or no corrective action has been taken.

3. I believe that the respondent discriminated against me because of my race, black, in violation of Title VII of the Civil Rights Act of 1964, as amended, in that similarly-situated white employees have not been subjected to the treatment described above.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Month, day and year) |
| Date _____  Charging Party *(Signature)* | |

EEOC FORM 5 (Rev. 07/99)

**FILE COPY**

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

| | |
|---|---|
| | PERSON FILING CHARGE<br>Goodwine, Cari M |
| | THIS PERSON (check one)<br>[X] CLAIMS TO BE AGGRIEVED<br>[ ] IS FILING ON BEHALF OF ANOTHER |

Chief Executive Officer
PHB Die Castings, Inc.
7900 West Ridge Road
Fairview, PA 16415-1899

| DATE OF ALLEGED VIOLATION | |
|---|---|
| *Earliest* | *Most Recent* |
| 02/01/2003 | 04/16/2003 |

PLACE OF ALLEGED VIOLATION
Fairview, PA

CHARGE NUMBER
172A300962

## NOTICE OF CHARGE OF DISCRIMINATION
*(See EEOC "Rules and Regulations" before completing this Form)*

You are hereby notified that a charge of employment discrimination has been filed against your organization under:

[X] TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

[ ] THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967

[ ] THE AMERICANS WITH DISABILITIES ACT

[ ] THE EQUAL PAY ACT (29 U.S.C, SECT. 206(d)) investigation will be conducted concurrently with our investigation of this charge.

The boxes checked below apply to your organization:

1. [X] No action is required on your part at this time.

2. [ ] Please submit by _____ a statement of your position with respect to the allegation(s) contained in this charge, with copies of any supporting documentation. This material will be made a part of the file and will be considered at the time that we investigate this charge. Your prompt response to this request will make it easier to conduct and conclude our investigation of this charge.

3. [ ] Please respond fully by _____ to the attached request for information which pertains to the allegations contained in this charge. Such information will be made a part of the file and will be considered by the Commission during the course of its investigation of the charge.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

Pittsburgh Area Office
Liberty Center, Suite 300
1001 Liberty Avenue
Pittsburgh, PA 15222-4187

Ronald E. Dean, Supervisor
*(Commission Representative)*

(412) 644-3420
*(Telephone Number)*

[ ] Enclosure: Copy of Charge

| BASIS OF DISCRIMINATION | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| [X] RACE | [ ] COLOR | [ ] SEX | [ ] RELIGION | [ ] NAT. ORIGIN | [ ] AGE | [ ] DISABILITY | [ ] RETALIATION | [ ] OTHER |

CIRCUMSTANCES OF ALLEGED VIOLATION

| DATE | TYPED NAME/TITLE OF AUTHORIZED EEOC OFFICIAL | SIGNATURE |
|---|---|---|
| 04/16/2003 | Eugene V. Nelson<br>Director | |

EEOC  FORM 131  (Rev. 06/92)

**FILE COPY**

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 172-2003-00962 |

| Pennsylvania Human Relations Commission | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone No. *(Incl Area Code)* | Date of Birth |
|---|---|---|
| Mr. Cari M. Goodwine | (814) 454-5049 | 07-19-1970 |

| Street Address | City, State and ZIP Code |
|---|---|
| 2905 Pennsylvania Ave. Erie, PA 16504 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Cod)* |
|---|---|---|
| PHB DIE CASTINGS, INC. | 201 - 500 | (814) 474-5511 |

| Street Address | City, State and ZIP Code |
|---|---|
| 7900 West Ridge Road  Fairview, PA 16415 | |

| Name | No. Employees, Members | Phone No. *(Include Area Cod)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

[X] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[X] RETALIATION  [ ] AGE  [ ] DISABILITY  [ ] OTHER *(Specify below.)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **02-01-2003**   Latest: **04-16-2003**

[X] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

1. I was hired by the Respondent in 2000 as a Die Cast Punch Operator. During the course of my employment I have been harassed by my employer and subjected to different terms and conditions of employment with respect to my use of sick leave and vacation time. I have also been assigned to work the more difficult machines than my white coworkers, in that, although we rotate on all of the machines. I seem to get assigned to the more difficult machines three or four times more often than my white coworkers. Most recently the following has occurred:

a)    In January 2003 I was placed on a "bad boy" list for attendance problems. As a result of this action, I have lost my privileges for calling off to take a vacation day with little or no notice. Instead every time I want to take off, I must submit a written request and have it approved by my supervisor.

b)    In approximately February 2003, Mr. Gephart, supervisor, asked me to do something that I was not trained to do safely (prepare the aluminum pot). I called over Supervisor Ron Sayers and explained that I was not trained to perform this function but if he directed me to do so, I would do it. Mr. Sayers informed Mr. Gephart that preparing the pot was not something I was supposed to do. After Mr. Sayers left the area, Mr. Gephart informed a witness to the conversation that "we", meaning the white employees, were supposed to make it hard on "them" meaning black

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| X 7-29-03          X *Cari Goodwine*<br>Date          Charging Party Signature | |

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 172-2003-00962 |

**Pennsylvania Human Relations Commission** _____ and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE *(Continued from previous page):*

employees. I reported this incident to Mr. Ben Hancock in Human Resources. To my knowledge nothing was done about Mr. Gephart.

c) I have recurring problems from an automobile accident which happened in 2000. Respondent has refused to pay my doctor and chiropractor bills for this accident.

*DOES NOT ASSIGN*

d) Another foreman, ~~Gordy Phillips~~ has regularly assigned me to the hardest jobs more often than the white employees. Mr. Phillips is a friend of Mr. Gephart. Shortly after I complained about Mr. Gephart, Mr. Phillips was planning to breach safety procedures and not advise me to stand back when a valve to a malfunctioning machine was about to be turned on. I accidently discovered this when I was coming back from getting a drink of water and heard my name mentioned. I could have been burned or seriously injured if Mr. Phillips had carried through with this plan.

e) In addition, since my complaints about Mr. Gephart, Mr. Phillips has been slow to answer my pages for help, making me page him three or four times before responding.

f) Although, I was moved away from Mr. Gephart after I complained about him, he continues to come to my area and stand near my machine and watch me.

2. Employees were placed on the "bad boy" attendance list for amassing 3 points by December 2002 for attendance reasons or if management detected a pattern of absences. I asked Mr. Hancock what was going to be done about Mr. Gephart on several occasions after the incident. Mr. Hancock's reply was always that the company was going to decide what to do. To my knowledge nothing has been done to date. I have informed Foreman Ron Sayers about the problems with my assignments and about Mr. Gephart and Mr. Phillips, harassing me by walking past my machine and watching me work. Nothing has been done about it.

3. I believe that the Respondent discriminated against me because of my race, black, and in retaliation for complaining about a supervisor, Mr. Gephart, in that, I did not have 3 points for attendance related matters at the time I was placed on the "bad boy" attendance list. Furthermore, the Union has looked into the matter of this list and found approximately 30 employees with attendance records that were worse than mine. Those employees were not placed on the list. Respondent has failed to take action against supervisors in the past who make derogatory racial comments. Since my complaints about Mr. Gephart, another supervisor, Gordy Phillips, has ignored my pages for assistance and assigned me to the more difficult machines, more often than my white coworkers. I have learned from other coworkers that Mr. Gephart has threatened violence against black coworkers and those who associate with them.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT X _(signature)_ |
| X 7-29-03    X _(signature)_ | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| Date        Charging Party Signature | |

# Exhibit 12
## Incorporated as part of Exhibit 3

# Exhibit 13



**KNOX
McLAUGHLIN
GORNALL
& SENNETT**

*A Professional Corporation*

120 West Tenth Street
Erie, Pennsylvania 16501-1461
814-459-2800
Fax 814-453-4530
www.kmgslaw.com

Richard H. Zamboldi
Direct Dial Number
814-459-9886 Ext. 277

November 10, 2003

WILLIAM C. SENNETT
EDWIN L.R. McKEAN
RICHARD H. ZAMBOLDI
JACK M. GORNALL
HARRY K. THOMAS
MICHAEL A. FETZNER
JAMES T. MARNEN
DONALD E. WRIGHT, JR.
RICHARD W. PERHACS
ROBERT G. DWYER
R. PERRIN BAKER
MARK E. MIODUSZEWSKI
CARL N. MOORE
DAVID M. MOSIER
THOMAS A. TUPITZA
GUY C. FUSTINE
RICHARD E. BORDONARO
BRIAN GLOWACKI
JOHN O. DODICK
FRANCIS J. KLEMENSIC
TIMOTHY M. SENNETT
WILLIAM C. WAGNER
PATRICIA K. SMITH
MARK T. WASSELL
RICHARD A. LANZILLO
JOANNA K. BUDDE
PETER A. PENTZ
MARK G. CLAYPOOL
THOMAS C. HOFFMAN II
MARK J. KUHAR
CHRISTOPHER J. SINNOTT
TIMOTHY M. ZIEZULA
JENNIFER E. GORNALL-ROUCH
VASILIOS T. NACOPOULOS
MARK A. DENLINGER
JEROME C. WEGLEY
TRACEY D. JONES
CRAIG W. SNETHEN
JAMES M. NADZAM



Susan M. Kelly, Investigator
U.S. Equal Employment Opportunity Commission
Pittsburgh Area Office
1001 Liberty Avenue, Suite 300
Pittsburgh, PA 15222-4187

     **RE:**    **Woodard v. PHB, Inc.; EEOC Case No. 17FA362672**
               **Goodwine v. PHB, Inc.; EEOC Case No. 172A300962**

Dear Susan:

As we discussed by telephone, PHB, Inc. has adopted and published a comprehensive policy for the prevention of harassment and has conducted training programs for all supervisors and managers as well as for all affected employees.

Enclosed is a copy of the policy for your information. Also enclosed, you will find the schedule for the training sessions which were conducted on October 29 and 30, 2003, the bullet points used by Bill Hilbert, the owner and CEO of the Company, for introduction of the policy and training program at each session and outlines which I used for my presentation to the employees and for my presentation to the managers. In the presentation to the managers, each of them was given a copy of the outline to retain.

As well as being broadly published at the facility, the policy was distributed to every employee.

I believe that this action on the part of the Company represents a significant commitment and should serve to address any concerns which may have been raised in the course of your investigation of these charges. I am hopeful that we will be able to dispose of the charges in a prompt fashion.

Susan M. Kelly
November 10, 2003
Page 2

Thank you for your cooperation.

Very truly yours,

KNOX McLAUGHLIN GORNALL &
SENNETT, P.C.

Richard H. Zamboldi

RHZ/hm
Enclosures
# 521629

c:    Mr. Bill Hilbert

# Exhibit 14

# HARASSMENT TRAINING FOR EMPLOYEES

A Presentation for:
**PHB, Inc.**

By:
**Richard H. Zamboldi, Esq.**
**Labor & Employment Group**
**Knox McLaughlin Gornall & Sennett, P.C.**

October 29 and 30, 2003

---

1.  Review of the Policy.

    - Forms of Harassment

    - Sexual Harassment
        - Examples of Hostile Environment
            - Dirty jokes
            - Cute off-color remarks
            - Double meanings
            - Photos

    - Other Harassment
        - Examples of Hostile Environment
            - Name calling
            - Isolation
            - Jokes, pictures
            - Writing on bathroom walls

    - How to Report
        - Supervisor
        - Human Resources
        - Any Manager

    - Investigation and Response

2.  Note – This applies to <u>EVERY</u> employee.

3.  Supervisors and managers will be trained and will act if they see misconduct even if no complaint is made.

4.  Action will be appropriate to the misconduct.

    - Range from comment to employee or counseling to termination.

5.    Progressive discipline is <u>usual</u> case.

- Immediate suspension or discharge may occur in a first instance if the conduct is sufficiently serious.
- Naturally, the grievance procedure applies.
- Union supports this policy.

6.    If you are involved in an investigation:

- Be cooperative
- Be open and honest
- Be confidential
- Expect confidentiality as much as possible
- Be prepared to testify if necessary

# 519840

2

# Exhibit 15

## POLICY FOR THE PREVENTION OF HARASSMENT

PHB, Inc. is committed to providing a workplace that is free of discrimination or harassment of any type. We will treat every individual with dignity and respect and will insist upon such treatment by everyone associated with the Company. Harassment may take many forms. It includes actions, words, jokes, comments, gestures or other activities which are intended to offend or intimidate others or which have the effect of offending or intimidating others. It may be based on race, religion, gender, ethnic origin or ancestry, physical disability or other legally protected classification. Such conduct in any form will not be tolerated. Any violation of this policy will be handled promptly and firmly and will result in corrective disciplinary action or termination as appropriate.

Sexual harassment includes any unwelcome conduct of a sexual nature including sexual advances or requests for sexual favors or other inappropriate verbal or physical conduct of a sexual nature. It also includes any conduct of a sexual nature that creates an intimidating, offensive or hostile working environment. Unwelcome or inappropriate conduct of any nature is prohibited. Some examples of such inappropriate conduct are: comments about physical characteristics, sexual preferences or practices, obscene or sexually oriented stories, jokes, photographs or drawings, inappropriate gestures or body language and improper touching. Any employee who engages in such conduct will be subject to serious discipline.

Such conduct is particularly offensive when engaged in by any supervisor or person in authority. If any manager or supervisor conditions any hiring, promotion, scheduling, disciplinary or other job-related decision on submission to such advances or participation in such activities, he/she will be subject to immediate removal and to serious disciplinary action and possible discharge.

Other forms of harassment include such conduct as the use of racial, ethnic, religious, age or gender related, disability related or other slurs or epithets, jokes, stories, photographs, drawings or similar materials or any discriminatory or other inappropriate or exclusionary conduct. Any employee or any manager or supervisor who engages in such inappropriate behavior or any other behavior of a harassing nature will be subject to the same disciplinary responses as apply to sexual harassment.

If you are a victim of any inappropriate conduct or are aware of such conduct, you are encouraged to report it promptly to your Supervisor, the Director of Human Resources or any management representative. A prompt investigation into the complaint will be conducted ensuring confidentiality to the extent possible. If a violation of this policy is found, appropriate action designed to remedy the problem will be taken. No employee will be penalized for reporting such conduct or for participating in the investigation of such conduct. Please use discretion because a false report of such conduct can be extremely harmful to an innocent party.

# 511272

2

# Exhibit 16

# REVISED
## HARASSMENT TRAINING SCHEDULE

To All Hourly and Salary Employees:

Harassment Training is being held for all employees. Please attend at your scheduled time.

All meetings will be held in the Employee Cafeteria.

If you have any questions, please call Human Resources @ x228 or x261.

Thank you.

## Wednesday, October 29, 2003

**2:00 PM - Cafeteria**
2ND SHIFT - Aluminum & Zinc DCPO'S, Metalmen, and Inspection

**2:30 PM - Cafeteria**
2ND SHIFT – Aluminum & Zinc DIE CAST SET-UP, Process Control, all other DC
classifications, Trim Department, Tool Room, Tool Crib and Maintenance
Department.

**3:00 PM - Cafeteria**
1ST SHIFT – Aluminum & Zinc DCPO's, Metalmen, Inspection, Shipping and Process Control

**3:30 PM - Cafeteria**
2nd SHIFT – Plant Salary Supervision

## Thursday, October 30, 2003

**7:00 AM - Cafeteria**
3RD SHIFT – All Plant Hourly Employees

**7:30 AM - Cafeteria**
All of 3rd Shift Plant Salary Employees plus ½ of 1st Shift Plant Salary Supervision

**8:15 AM - Cafeteria**
½ of 1st Shift Plant Salary Supervision plus Office Salary Supervision

**9:00 AM - Cafeteria**
Manufacturing Engineering, SEEEIV, Quality Assurance, Accounting, Management Information
Systems, Purchasing Department

**3:00 PM - Cafeteria**
1ST SHIFT – Aluminum & Zinc DIE CAST SET-UP, all other DC classifications, Trim
Department, Tool Room, Tool Crib and Maintenance Department.

Human Resources
October 28, 2003

# Exhibit 17

# HARASSMENT TRAINING FOR MANAGERS

A Presentation for:
PHB, Inc.

By:
Richard H. Zamboldi, Esq.
Labor & Employment Group
Knox McLaughlin Gornall & Sennett, P.C.

October 29 and 30, 2003

---

**NOTES**

## I.   REVIEW OF POLICY

A.   Basic rule is treat every employee with respect.

B.   Prevent all forms of harassment

- Sexual harassment – will cover in some detail.
- Other forms of harassment:
  - Racial
  - Religious
  - Ethnic
  - Disability
  - Age-related

## II.   THIS APPLIES TO EVERY EMPLOYEE

A.   Company responsibility – Prevent a hostile work environment.

B.   Your role is twofold.

- Refrain from inappropriate behavior.
- Monitor and control behavior of subordinates.

## III.   WHAT IS EXPECTED OF YOU

- Know the policy.
- Understand what constitutes harassment.
- Recognize and address inappropriate behavior.
- Consult with Human Resources to determine appropriate discipline when required.
- Accept complaints and report promptly to Human Resources.
- Participate in investigations

IV.   **SEXUAL HARASSMENT**

A.   Two types.

B.   Quid pro quo.

- Superior/subordinate relationship.
- Knowledge is imputed to employer.
- <u>Not</u> a private matter.

C.   Hostile environment type.

- May be superior/subordinate, co-worker, worker-contractor, visitor-worker.
- Imputed knowledge -- some clear answers, some gray areas. The <u>only</u> safe course -- don't do it.

D.   The standard.

- Offensive to the person complaining.
- Offensive to a person of reasonable sensitivity.

E.   Who may file a complaint.

- Any offended person.
- <u>Not</u> limited to the intended recipient.

F.   What conduct constitutes harassment.

- Idle talk -- suggestive "cute" stuff.
- Off-color humor -- "dirty" jokes.
- Suggestive -- double meanings.
- Comments about physical characteristics.
- Photos, pictures, calendars, etc.
- Suggestive looks, ogling, etc.
- Voicemail, e-mail, notes, etc.
- Anything that displays a lack of respect.

G.   Responsibility to control.

- The Company acts through managers and supervisors.
- <u>All</u> have some level of responsibility.
- Be responsible for yourself.
- Watch for and point out inappropriate behavior.
- Do not "wait for complaints."
- Report patterns of inappropriate behavior <u>even</u> <u>if</u> you are not offended.

## V. THE PROCEDURE

A.  Report to Human Resources

B.  Human Resources investigation – you will participate.

C.  Decision and action.

D.  Range of consequences.

- Reprimand and apology.
- Suspension.
- Disciplinary probation.
- Demotion.
- Loss of merit reviews.
- Termination.

E.  Follow-up.

F.  Retaliation – very serious consequences will follow.

## VI. OTHER FORMS OF HARASSMENT

A.  Hostile environment standard.

B.  Act promptly.

C.  Responsibility to control.

D.  Procedures – identical to sexual harassment.

## VII. CONSEQUENCES

- Very serious matter.
- Zero tolerance.
- Expect firm, serious discipline.
- Investigation will be prompt, thorough, confidential and action will result promptly.

# 519887

3

# Exhibit 18

## POINTS FOR BILL HILBERT INTRO REMARKS

1. Series of meetings over the next 2 days to introduce to all employees a new Policy for the Prevention of Harassment.

2. Not a change in who we are or what we do – We have always opposed harassment.

3. Effort is simply to state the policy in the clearest possible terms.

4. Have encountered several recent charges and lawsuits from the EEOC claiming racial discrimination and racial harassment.

5. We have defended our position and our policy but have incurred a lot of expense in doing so.

6. We want to be sure everyone is aware of the policy and understands it.

7. Every manager and every employee has a responsibility to assure that our workplace is fair and respectful to every employee and free from harassment. That includes:

   - Sexual Harassment
   - Racial Harassment
   - Ethnic Harassment
   - Religious Harassment
   - Age-Related Harassment

   and any other form of harassment.

8. The simple rule is: Treat everyone with respect.

9. This is a real, living policy. It will be enforced. Persons who violate it will be subject to disciplinary action.

10. Our goal is NOT discipline. Our goal is to treat everyone with respect.

# 519644

# Exhibit 19

Memo to the file

Testimony of Rodney W. Berry, Janitor

Date: 7/30/03

Re: EEOC Charge No.: 172-2003-00954 and 172-2003-00962
      Woodard and Goodwine (respectively) v. PHB

Witness has been employed by R as a janitor for 13 years. He is responsible for cleaning the rest rooms. There are outside people who clean the offices and some other areas of the facility.

Witness stated that there was a KKK sign written on the walls in the large men's rest room a number of years ago. He notifies his supervisor of things like that and then paints over it immediately. He noted that he has never seen a KKK sign or burning cross in the smaller men's rest room off of the aluminum die cast area.

Witness noted that that rest room does not get very much graffiti and witness does not monitor it as thoroughly as the main large rest room. Sometimes when graffiti is noticed by employees they cross it off themselves. A lot of employees carry magic markers and things like that.

If there is something offensive on the walls, employees will let him know so that he can take care of it. Witness was never told of any problem with the small rest room where the offensive graffiti was alleged to have been written. Witness stressed that that rest room is generally not a problem. There are some little things but he doesn't bother with it much and hardly pays attention to what is written. However, he is sure that if he saw a KKK or burning cross he would show it to someone and then cover it up right away. If in fact this stuff had been on the walls, it would have been very small and hard to see.



# Exhibit 20

# GRIEVANCE REPORT

## USWA Local Union No. 3199-18    Grievance NO. 03-08

Location __PHB DIE CAST__    Date 3-21-03

__7900 West Ridge Rd__

__fairview  PA  16415__

| EMPLOYEE'S NAME | IDENTIFICATION NO. | DEPARTMENT | JOB TITLE |
|---|---|---|---|
| Group | All | All | All |

Use space below to write in other important Grievance information

__Nature of Grievance__: The company's refusal to discipline supervisors who make racist remarks and who mistreat and\or harass our minority employees has created intolerable working conditions for some of our minority employees.  There are employees who feel that speaking up not only places their job in jeopardy, but also believe that there could be acts of retaliation where they may suffer bodily harm.

__Settlement Requested :__  For the company to stop ignoring these problems and issues our minority employees are experiencing; to address them in a manner that says to ALL employees that "PHB will not tolerate this type of behavior from any of our employees."  To comply with PHB's own "No Harassment, No Discrimination" policy and create a workplace where ALL employees, management and hourly are treated with equality and respect.

__Agreement Violation :__  Conditions of Employment and any article, section, past practice, policy, agreement or law that may apply to the resolution of this grievance

Signature of Aggrieved:

Signature of Union Representative:

Form USWA 122    PRINTED IN U.S.A.    COPY FOR USWA INTERNATIONAL OFFICE WHEN NECESSARY TO FILE

# Exhibit 21

Toby Crosby
1524 Fairmount Parkway
Erie, Pa. 16510
814-455-2720
--------------------
Vernon Duck
332 W. 3rd
Erie, Pa. 16507
814-459-5918
--------------------
Jim Fowler
1206 E. 21st St.
Erie, Pa. 16503
814-452-2738
--------------------
Cari Goodwine
2905 Pennsylvania Ave.
Erie, Pa. 16504
814-454-5049
--------------------
Roy Hinton
629 Pin Oak Dr.
Erie, Pa. 16504
814-825-8078
--------------------
Tim Norton
1133 East Lake Rd.
Erie, Pa. 16507
N\A
--------------------
Clarence (Ron) Oliver — 814 - 455-2506
453 E. 28th St.
Erie, Pa. 16504
N\A
--------------------
Jamal Shields
3617 Davison Ave.
Erie, Pa. 16504
814-454-4666
--------------------
Dayved Woodard
PO Box 771
Erie, Pa. 16512
814-434-9660

2

# Exhibit 22

5/13/04

B. Donner, C. Goodwin, G. Bible, B. Hancock

Threats are the problem.
If Jim Henry has a problem with Bill Donnell,
don't use Cali Goodwin as leverage.
Bill Donnell willing to apologize to Cali.
"      "    Not prejudiced. His best friend
was black in high school and was killed
in Vietnam.

Bill Donnell talked about throwing deadbeats
or deadwood in the hole. No one specific,
General discussion about many employees

000000203

# Exhibit 23

To : Ben Hancock
From : Greg Bible
Re : Grievance 03-08
Date : 5 - 29 - 03

Your Step II answer implies that this particular grievance was written for one incident, an incident that you claim has been resolved between the supervisor and the hourly employee.

Couple of problems with your answer: One - to my knowledge the singular incident you are referring to has never been satisfactorily resolved per the hourly employee, and Two - this grievance was not written for one particular incident, it was written for a host of incidents. It was written concerning the conditions of employment and what this meant was the fact that we have employees who feel that our workplace is a hostile working environment for minorities. They feel this way because supervision seems to be allowed to say and do whatever they want to minorities with no fear of reprisal from the company.

Some examples: Beth Campbell feels she has been treated differently ever since she reported being verbally mistreated by Ed Shollenberger. She feels she has been given more designated rate jobs because of the incident between her and Ed Shollenberger. Just tonight she got on me because nothing was ever done by PHB concerning the way she and Tracy Fish were treated by Ed Shollenberger. She pointed out how Ed was never given one second of time off and in her opinion was never reprimanded at all for mistreating them. Because of the company's lack of response to her and Tracy's complaints, our workplace in her eyes is a hostile work place for women.

Tracy Fish knows she was treated way differently than any other employee. She was harassed and verbally abused by Ed Shollenberger to the point that she left here in tears and to this day, nothing has been done to Ed Shollenberger for treating her this way. The company continues to hold this lost time against her attendance record but has never punished Ed in any form and this says to her that PHB condones this type of behavior in their supervisors. Because Ed was never punished, the lost time is still being held against her attendance record, and the fact she has been given more than her fair share of designated rate after this incident she feels that this clearly shows that our work place is a hostile work environment for women.

The last I heard from Cari Goodwine, he was not very happy that absolutely nothing had been done about the racist comment made towards him by Gary Gebhart. Your answer implies that Gary and Cari reached some amicable agreement and this issue was resolved. Not to my knowledge. As far as Cari is concerned, PHB's continued lack of response to supervisors making racist remarks makes our work place a hostile working environment for him personally and for all minorities.

Jamal Shields feels that 95% of the work force here is prejudiced against blacks. Not just salary but hourly too. Part of the reason he feels this way  is because of how the Tom Thompson racial remark incident was handled...actually I should say was not handled as nothing was ever done leaving Jamal and the other black employees here at PHB to believe that PHB condones this type of behavior from their supervisors and this creates  a hostile working environment for blacks. He also blames the union for not being able to get the company to do anything about this and considers us partly responsible for allowing a hostile work environment for minorities.

These are the reasons this grievance was written and your answer says nothing to make me believe that you have addressed anything to improve the conditions of employment leaving our work place a hostile work environment for minorities. To this end we do not accept your Step II answer and ask that this grievance be moved to the next step.

3

Grievance 2003-08
Subject: Harassment of Minority Employees
Dated - March 21, 2003
Step II Answer

The issue which led to this particular grievance has been resolved between the salaried supervisor and the hourly employee who took offense to his remarks. The Company has not refused to discipline anyone; however we do not publicly debate the proper discipline that should be given to salaried employees.

We try to deal with each situation on the basis of its own merits and make appropriate decisions that are dependent on the circumstances surrounding the situation.

# Exhibit 24

# EEO-1 Establishment Report

from 2000 EEO-1 Reports
U.S. Equal Employment Opportunity Commission

## PHB DIE CASTING NORTHERN DIVISION

7900 WEST RIDGE ROAD
FAIRVIEW, PA 16415
County: ERIE
PMSA: Erie, PA MSA (2360)

Unit Number: K00589
Parent Number: 503889
SIC Code: 3363: Aluminum die-castings

Parent: **PHB INC**
FAIRVIEW, PA 16415

EI#: 147317077
DUN#: 005028121

|  | Ofc/Mgr | Profs. | Tech. | Sales | Clerical | Craft | Oper. | Labor. | Service | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| **Total** | 62 | 21 | 63 | 0 | 10 | 51 | 229 | 43 | 2 | 481 |
|  | 12.9% | 4.4% | 13.1% | 0.0% | 2.1% | 10.6% | 47.6% | 8.9% | 0.4% | 100.0% |
| **Women** | 1 | 15 | 8 | 0 | 6 | 0 | 18 | 1 | 1 | 50 |
|  | 1.6% | 71.4% | 12.7% | --- | 60.0% | 0.0% | 7.9% | 2.3% | 50.0% | 10.4% |
| **Black** | 0 | 1 | 0 | 0 | 0 | 0 | 7 | 1 | 0 | 9 |
|  | 0.0% | 4.8% | 0.0% | --- | 0.0% | 0.0% | 3.1% | 2.3% | 0.0% | 1.9% |
| **Hispanic** | 0 | 0 | 0 | 0 | 0 | 0 | 5 | 1 | 0 | 6 |
|  | 0.0% | 0.0% | 0.0% | --- | 0.0% | 0.0% | 2.2% | 2.3% | 0.0% | 1.2% |
| **Asian** | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 2 |
|  | 0.0% | 0.0% | 0.0% | --- | 0.0% | 0.0% | 0.9% | 0.0% | 0.0% | 0.4% |
| **Amer. Ind.** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
|  | 0.0% | 0.0% | 0.0% | --- | 10.0% | 0.0% | 0.0% | 2.3% | 0.0% | 0.2% |

# Exhibit 25



**A PHB Company**
7900 WEST RIDGE ROAD
FAIRVIEW, PA 16415-1899

TEL: 814-474-5511 • FAX: 814-474-2063

# AFFIRMATIVE ACTION PLAN

This is to advise all employees that the Affirmative Action Plan is available for review during normal business hours. Arrangements for its review may be made through the Human Resources Office.

PHB DIE CASTING COMPANY

J. Benjamin Hancock
Human Resources Manager

R. 1999

# PHB Die Casting

**A PHB Company**
7900 WEST RIDGE ROAD
FAIRVIEW, PA 16415-1899

TEL: 814-474-5511 • FAX: 814-474-2063

January 1, 1999

Reaffirmation Of Policy
(60 - 2.13a/60 - 2.20)

## COMPANY POLICY ON EQUAL EMPLOYMENT OPPORTUNITY

It is the policy of PHB Die Casting to provide equal opportunity to all qualified employees and applicants for employment without regard to race, color, creed, national origin, age, sex or handicap/disability. Affirmative action shall be taken to ensure the fulfillment of this policy. This obligation includes:

Hiring, placement, upgrading, transfer or demotion
Recruitment, advertising or solicitation for employment
Rates of pay or other forms of compensation
Selection for training
Layoff or termination

This policy is consistent with the requirements and objectives set forth by Executive Order 11246, the Rehabilitation Act of 1973, the Americans With Disability Act of 1990, the Vietnam Era Veterans Readjustment Act of 1974 and the Family and Medical Leave Act of 1993.

The objective of PHB Die Casting is to obtain individuals qualified and/or trainable for a position by virtue of job-related standards of education, training, experience and personal qualifications.

PHB DIE CASTING

William M. Hilbert, Sr.
President

## HARASSMENT OF EMPLOYEES
### March 26, 1990
### R. 1996

Harassment of employees is a serious issue which neither the Company, nor the Union condone. Particularly sensitive are the areas of harassment related to race, color, creed, sex and national origin. Not only is harassment of employees in relation to the above-mentioned areas a violation of Company Rules and Policy, it is also a violation of federal and state laws.

Many actions may be interpreted as harassment. Writing disparaging remarks on restroom walls, making abusive remarks to other employees and making suggestive remarks to members of the opposite sex can create problems for the Company and the Union.

We would advise all employees to be cautious of their words and actions. Harassment of fellow employees can result in discipline up to, and including termination of employment.

We appreciate your cooperation in complying with Company Policy and the federal and state laws related to harassment.


Gregory A. Bible
President
USWA, Local 711


J. B. Hancock
Personnel Manager
PHB Die Castings


A PHB Company
NORTHERN DIVISION:  7900 WEST RIDGE ROAD · FAIRVIEW, PA 16415-1699 · TEL: 814-474-5511 · FAX: 814-474-2083
SOUTHERN DIVISION:  188 PARKER DRIVE · BEAUFORT, SC 29902 · TEL: 803-846-2201 · FAX: 803-846-6526

RACIAL AND SEXUAL HARASSMENT
April, 1995

This is to remind all employees that both racial and sexual harassment are violations of company policy and of federal and state laws.

Harassment can take many forms.  It can involve making disparaging remarks to fellow employees, writing nasty or obscene remarks on restroom walls and stalls, hanging signs on company premises (including in the parking lot), distributing or posting derogatory cartoons or any other action that may be offensive to a fellow employee.

We should all treat each other with dignity and respect.  Actions that are considered racial or sexual harassment will be dealt with severely.  We would ask that each of you exercise some restraint before you say or do something that may be offensive to another person.

Thank you for your cooperation in this matter.

PHB DIE CASTINGS

RACIAL AND SEXUAL HARASSMENT
March 3, 1997

This is to remind all employees that both racial and sexual
harassment are violations of company policy and of federal and
state laws.

Harassment can take many forms.  It can involve making disparaging
remarks to fellow employees, writing nasty or obscene remarks on
restroom walls and stalls, hanging signs on company premises
(including in the parking lot), distributing or posting derogatory
cartoons or any other action that may be offensive to a fellow
employee.

We should all treat each other with dignity and respect.  Actions
that are considered racial or sexual harassment will be dealt with
severely.  We would ask that each of you exercise some restraint
before you say or do something that may be offensive to another
person.

Thank you for your cooperation in this matter.

PHB DIE CASTING

# Exhibit 26



# WELCOME

## TO

# PARKER WHITE METAL COMPANY

We wish to welcome you as a new employee of Parker White Metal Company.

In order that you may understand the established regulations, we ask you to read this carefully.

Every group of individuals must be guided by certain regulations. The purpose is to prevent confusion and misunderstanding and to assist in creating efficiency, harmony and safety.

From collective experience over the years we have established two categories of rules. In category I are those rules covering minor offenses. The violation of these rules will result in the issuance of a warning slip to the employee. Continued violation of these rules will result in disciplinary action.

Category II covers rules that, due to their serious nature, must be obeyed. Any violation of these rules will result in discharge.

## CATEGORY I

### MINOR OFFENSES

1. Carelessness or poor workmanship which causes the product to be scrapped or reworked.

2. Leaving the plant, or assigned job, or assigned department during working hours without permission of supervision.

3. Excessive absenteeism including tardiness and leaving work early.

4. Throwing objects out of windows.

5. Lack of cooperation with supervisors and/or co-workers.

6. Failure of an employee to report to a supervisor any unusual condition apparent during his work.

7. Exceeding authority.

8. "Horse play" and practical joking.

9. Failure to report an accident or injury at the time it occured.

10. Failure to go to the first aid room when so ordered.

11. Excessive profanity or abusive language.

12. Violation of safety rules when the act is unintentional.

13. Not punching out when leaving the building or punching in on returning.

## CATEGORY II

### CAUSE FOR DISMISSAL

1. Obtaining employment on the basis of false or misleading information.

2. Stealing Company or fellow worker's property.

3. Falsifying any time card, time keeping record, or job ticket, or giving false information to one whose job it is to make such records.

4. Punching "in" or "our" another employee's time card, or having another employee punch your card "in" or "out".

5. Intoxication or being under the influence of drugs during working hours or bringing alcoholic beverages or illegal drugs onto Company property.

6. Threatening another employee.

7. Fighting in the plant or on Company property.

8. Tampering with fire fighting, electrical or safety equipment.

9. Sabotage or deliberate damage or destruction to tools, equipment, products, or property belonging to the Company or to a fellow worker.

# SAFETY RULES

Your safety and health is important to both you and the Company. Accident avoidance is a matter of thinking about safety and working safely at all times. In the case of an accident everyone suffers: the employee suffers from loss of wages and painful injury which could result in loss of life; the Company suffers from loss of production from the injured employee, loss of production from other employees whose work is interrupted by the accident, and increased insurance rates.

For your future safety, the Company has developed rules for your protection. By following these rules you can make this plant a safer place to work. These regulations will be composed of general rules and ones that pertain to specific hazards or equipment. The following rules are general guidelines which are to be complied with:

## I. GENERAL RULES

1. Obey all safety regulations and signs.

2. Follow instructions. If you are unsure of the safe procedure, do not guess. Ask your supervisor.

3. If you notice an unsafe condition, correct or report it immediately.

4. Use the right protective equipment for the job and wear safe clothing.

5. Report any accident **immediately** to your supervisor. He will see that you receive first aid or medical treatment.

6. If you are injured and are treated by a physician, an accident report must be filled out as soon as possible after the accident.

7. Use, adjust and repair equipment only if you are qualified to do so.

8. Get help to lift heavy loads.

9. Avoid "horse play" on the job.

4

---

10. Sleeping on the job.

11. Divulging of confidential Company information.

12. Insubordination or refusal to follow reasonable assignments or orders.

13. "Horse play" or deliberate disregard of any one safety rule where the consequences of the act could be serious injury.

14. Engaging in any unauthorized interruption, stoppage, or slowdown of work.

15. Bringing firearms or weapons of any kind into the plant.

16. Falsifying any report or record related to claims of illness or injury

## UNION MEMBERSHIP

All new, hourly employees must join Local No. 711 of the United Steelworkers of America within sixty (60) days after the date they are hired and remain a member of the Union as long as the Company has an agreement with it. Up to that time you are a probationary employee. At any time before the end of the sixty (60) day probationary period the Company may, at its option, lay-off, discharge, promote, transfer or demote probationary employees.

## ABSENTEEISM

### REGULAR ATTENDANCE
### OF EVERY EMPLOYEE IS REQUIRED

If you must be absent, you must notify the Company before the start of your shift to enable your supervisor to make the necessary adjustments in his schedule to compensate for your absence. This requirement is for your protection, since three (3) consecutive days' absence without notification will be deemed cause for dismissal.

3

10. Do not talk to fellow employees while they are operating machinery.

11. Keep your work area clean and clear of obstacles.

12. **Eye protection** must be worn in all posted areas and in any situation where there is a danger of chips, or any foreign material entering the eye.

13. **Hard hats** are required when operating a stand-up type fork lift, when operating a lift truck with a work platform attached, when working on or under a work platform or when there is a danger of head injury.

14. **Work shoes** are required to be worn on the job. Canvas shoes or sneakers, open-toed shoes and sandals are not to be worn on the job. Although steel toed work shoes are not required, it is suggested that they be worn on the job. They may be purchased through the Personnel Office.

15. Access to doors and first aid equipment must be maintained at all times.

16. **Hearing protection** is to be worn in areas and on jobs that have a high noise level.

## II. SPECIFIC RULES

In your work activities in the plant you will encounter certain conditions that have the potential for causing serious accidents. To help all employees deal with these hazards in a safe manner we have formulated certain rules that must be complied with daily. The specific hazards are divided into categories and each has rules that apply separately. They are as follows:

### MACHINE AND HAND TOOL HAZARDS

Accidents involving machinery are one of the leading causes of occupational injury. Improperly trained operators often are victims. Until you have been instructed on the procedures for safely

operating a machine and are authorized to operate it, do not operate it. Before you turn on a machine, make a safety check to insure that the guards are in place and properly adjusted, and the moving parts are free to turn.

Specific rules are as follows:

1. Do not walk away from a machine and leave it running.

2. When you make adjustments, turn off the power and let the machine stop completely by itself. Do not try to brake or slow down moving parts with your hands.

3. Safety devices shall not be tampered with or rendered inoperable.

4. Keep your machine clean.

5. Watches, rings, bracelets and loose hanging necklaces or chains should not be worn while operating machinery or using hand tools.

6. If chips accumulate while operating a lathe and need to be cleaned from the machine, do it with a stick or brush. Do not use your hands.

7. Eye protection must be worn while operating any type of machine.

8. Long hair must be kept tied back or confined with a hair net.

9. Long sleeves are required when operating a die casting machine.

10. Use the right tool for the job. Replace splintered, broken or loose handles before using the tool.

11. Do not apply excessive pressure or force to hand tools, or use a pipe extender on the handle of a wrench for more leverage. Get a larger wrench.

## ELECTRICAL HAZARDS

1. All portable power tools (except ones that are double in-suited) must be grounded.

2. If you are not an electrician, do not try to make electrical repairs. Only qualified electricians are allowed to work on electrical equipment.

3. Water and electricity can be fatal combinations. Do not use portable electrical equipment if your hands are wet or if you are standing on wet ground.

4. Watches, rings, bracelets and loose hanging necklaces or chains should not be worn around electrical equipment.

## FIRE HAZARDS

1. Always obey "No Smoking Signs". They are placed in certain locations in the plant to alert you to fire hazards. Some hazards cannot be seen, such as vapors. Lighting a match or cigarette lighter could cause a fire or an explosion.

2. Do not let flammable waste lie around. Flammable or combustible liquids are to be placed in special containers. They should never be poured down drains or sewers.

3. Change your clothes immediately if they are soaked with oil, kerosene, or any other flammable liquid. Vapors retained in the cloth can catch fire and cause a serious burn.

## LIFTING

Manual handling of materials is the major cause of occupational injuries. Lifting can be done without injury by following the rules below:

1. If the object is too large or heavy, get help.

7

2. Lift in the correct manner.

   a). Put one foot beside the object and the other foot behind it.

   b). Keep your back straight.

   c). Get a firm grip with the palms of your hands. A finger grip is weaker and can slip.

   d). Draw the object close to you and be certain that your body weight is centered over your feet.

   e). Lift up by straightening your legs. This uses leg muscles instead of back muscles.

   f). Avoid twisting or turning while lifting.

   g). Putting the object down is just as important as lifting it. Simply follow the lifting procedures in reverse.

## FIRE FIGHTING EQUIPMENT

1. Become familiar with the location of fire extinguishers.

2. If you must use a fire extinguisher, have it replaced with a fully charged one.

3. Areas around fire fighting equipment shall be kept clear of obstructions.

4. Fire fighting equipment shall be used for its intended purpose only.

## SPECIAL HAZARDS

1. Compressed air should never, under any circumstances, be used to clean clothing or parts of the body.

2. Handle all compressed gas cylinders as if they are full. Keep the cylinders on end and strap or chain them securely. Use a cylinder truck to move them and make sure that the protective cap is screwed in place when the cylinder is not in use.

3. Do not look at arc or gas welding operations unless you

8

are wearing the recommended eye protection.

4. Fork lifts are for moving materials and not people.

**A SAFETY PROGRAM CAN ONLY BE
SUCCESSFUL THROUGH THE COOPERATON
OF ALL EMPLOYEES**

# FAIRVIEW HOURLY EMPLOYEES OF

# PARKER WHITE METAL COMPANY

## SICK AND ACCIDENT BENEFIT PLAN

### SUMMARY PLAN DESCRIPTION

Effective 1-01-98

SECTION I                          SCHEDULE OF WEEKLY BENEFITS

The maximum amount of your sick and accident benefits is as
follows:

|                        Length of Service | Maximum Weekly Benefit |
|---|---|
| 0 but less than 60 days | 0 |
| 60 days or more | $275.00 per week for a maximum of 52 weeks. |

Note:    _ Weekly benefits will begin with the first day of Total
           Disability if due to accident and with the fourth day
           of total disability if due to illness or pregnancy.

SECTION II                    DEFINITIONS

The terms set out below, wherever used in this  Booklet, shall be construed as follows:

    1. Actively  at Full-Time Work:  Engaging  in and performing the  normal duties of employment on  a regular basis for the Company for not less than 30 hours per week.

    2.  Calendar year:  A  period of  one year  commencing with January 1st up to and including December 31st.

    3. Company:  The Company is the Parker White Metal Company.

    4.  Eligible  Employee:   All  full-time  hourly  employees employed by the Company at Fairview, Pennsylvania.

    5. Participant:  An Eligible Employee who has met all of the eligibility requirements of the Plan.

    6. Plan:  The name of this Plan is Fairview Hourly Employees of Parker White Metal Company Sick and Accident Plan.

    7. Plan Administrator:  The Plan Administrator is the Parker White Metal Company.  The Plan Administrator is  responsible for  the day-to-day functions and  management of  the Plan. The Plan Administrator may employ persons to process  claims and perform other Plan connected services.

    8. Total Disability:  Your complete inability to perform any and every duty pertaining to your occupation or employment.

    9. Weekly Benefit:  The benefit which  you are entitled  to receive pursuant to the terms of Section IV of this Booklet.

SECTION III     ELIGIBILITY AND CONTRIBUTIONS TO THE PLAN

Eligibility

     All  full-time   hourly  employees  employed    at  Fairview,
     Pennsylvania  whose employment with the Company is covered by
     a Collective  Bargaining Agreement between  the Company  and
     the United  Steelworkers of America,  Local #711  are to  be
     eligible  for coverage on the date  of completion of 60 days
     of service with the Company.

When Your Coverage Commences

     Your coverage  commences on  the  date you  become  eligible
     provided you are  not away from work due to Total Disability
     on that date.  If you are away from work  your coverage will
     not start until your return to active full-time work.

Contributions to the Plan

     (1) General:   The Company  shall  make payments  to  cover
     benefits paid by the Plan in amounts determined from time to
     time by the Plan Administrator.

SECTION IV          SICK AND ACCIDENT PLAN PROVISIONS

A.   Benefits

     If  you   become  subject  to  a  Total  Disability  due  to
     accidental bodily injury  or from sickness or as a result of
     pregnancy, childbirth or a  related medical condition, other
     than injury  or sickness hereinafter  excluded, so as  to be
     prevented from  performing any and every  duty pertaining to
     your occupation, the  Plan will, subject  to the  conditions
     hereinafter stated,  pay you the Weekly Benefit indicated  in
     the Schedule of Benefits.

     Weekly  Benefits will  begin  with the  first  day of  Total
     Disability if  due to accident  and with  the fourth day  of
     Total  Disability  if due  to sickness  or pregnancy.   Such
     benefits  will continue  for not  more than  fifty-two weeks
     during  any one period of Total Disability, whether from one
     or more causes,  while you remain  Totally Disabled and  are
     not Actively  at Full-Time work.  You must be under the care
     of a qualified physician if the Total Disability is due to
     sickness or pregnancy.

Successive periods of Total Disability separated by less than thirty days of active work on a full-time basis are considered as one period unless the subsequent disability is due to an injury or disease entirely unrelated to the cause of the earlier disability and commences after you return to work on a full-time basis.

## B.    Benefit Amount

The maximum sick and accident benefit is $265.00 per week, subject to a maximum of 52 weeks.

## C.    Exclusions

### Benefits are not payable for loss resulting from:

1. Any injury or disease covered by Workmen's Compensation Law or Act or similar occupational legislation;

2. Any injury or disease sustained while engaged in any occupation for remuneration or profit;

3. Any Total Disability resulting from any injury or disease for which you are not treated by a qualified physician.

SECTION V                          OTHER PROVISIONS

### Amendment or Discontinuance of Plan

The Company reserves the right to change or discontinue the Plan. However, this will be done only after adequate notice to each Participant and to representation of United Steelworkers of America, Local #711. Any amendment of the Plan shall be set forth in an instrument in writing executed by a duly authorized representative of the Company and the Union.

4

## Termination of Coverage

Benefits provided under the Plan will automatically terminate upon the earliest of the following to occur:

> (i) the date you cease to be Actively at Full-Time work due to a temporary lay-off,
>
> (ii) the date your employment terminates,
>
> (iii) the date you are no longer in a class of employees eligible to be covered under the Plan, or
>
> (iv) the date this plan is discontinued.

Termination of any coverage under the Plan shall be without prejudice to any claim arising prior to termination.

## How do you Appeal Denial of a Benefit

If you feel that a denied claim should be reviewed, you have seventy-five (75) days from the denial to ask the Plan Administrator to start a review. A request must be accompanied by your explanation of why you believe that the claim should have been approved. This will then be reviewed by the Plan Administrator, who will notify you of a decision no later than sixty (60) days after receiving the request. Beyond this you may have further rights under the Employee Retirement Income Security Act (ERISA)

STATEMENT OF ERISA RIGHTS

SECTION VI

## STATEMENT OF ERISA RIGHTS

For the purpose of meeting certain requirements of the Employee Retirement Income Security Act of 1974, the following information is provided for use with this Booklet to form the Summary Plan Description.

A copy of the Plan is available for your review during normal working hours in the office of the Plan Administrator.

As a Participant in the Plan, you are entitled to certain rights and protection under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provided that all Plan participants shall be entitled to examine without charge at the Plan Administrators office and other locations all plan documents, including insurance contracts, and copies of all documents filed by the Plan with the U. S. Department of Labor such as annual reports and Plan descriptions. You also shall be entitled to obtain copies of all Plan documents and other Plan information upon written request to the Plan Administrator. The Plan Administrator may make a reasonable charge for the copies.

In addition, you shall be entitled to receive a summary of the Plan's annual financial report. The Plan Administrator is required by law to furnish each Participant with a copy of this summary financial report.

You also may file suit in a federal court if any materials requested are not received within thirty (30) days of the participant's request, unless the materials were not sent because of matters beyond the control of the Plan Administrator. The court may require the Plan Administrator to pay up to one hundred dollars ($100) for each day's delay until the materials are received.

In addition to creating rights for Plan participants, ERISA imposes obligations under the persons who are responsible for the operation of the employee benefit plan. These persons are referred to as "fiduciaries" in the law. Fiduciaries must act solely in the interest of the plan participants, and they must exercise prudence in the performance of their plan duties. Fiduciaries who violate ERISA may be removed and required to make good any losses they have caused this Plan.

Your employer may not fire you or discriminate against you to prevent you from obtaining a benefit from this Plan in full or in part. You have the right to file suit in a federal court or request assistance from the U. S. Department of Labor. If you are successful in your lawsuit, the court may, if it so decides, require the other party to pay your legal costs including attorney's fees.

If you have any questions about this statement of your rights under ERISA you should contact the Plan Administrator or the nearest Area Office of the U.S. Labor-Management Services Administration, Department of Labor.

SECTION VII          MISCELLANEOUS

The following specifics are for your reference:

Plan Name

Fairview Hourly Employees of Parker White Metal Company Sick and Accident Benefit Plan

Plan Effective Date

January 1, 1984

Type of Welfare Plan

Sick and Accident Benefit Plan

Plan Administrator

Parker White Metal Company
7900 W. Ridge Road
Fairview, PA 16415-0905
Federal Employers Identification Number: 25-0924453

Plan Number

503

Funding Medium

Self-funded

Source of Contributions

The Company pays all required contributions to the Plan.

# SICK AND ACCIDENT BENEFITS
# WORK INSTRUCTIONS

## Eligibility:

All hourly employees with 60 days of service are eligible for up to 52 weeks of benefits.

## Benefit Entitlement:

Benefits begin on the fourth day of disability that is due to an employee's illness. There is no waiting period if the disability is due to a bonafide accident.

## Application Process:

1. The employee must notify the Human Resources Department/Plant Nurse of his/her disability and request a **Sick and Accident Benefit Form.**

2. Human Resources/Plant Nurse will fill out the basic information on the front of the form. The forms are in the file cabinet behind the desk in the spare office or are available from the nursing office.

3. The sick and accident benefit form can either be mailed to the employee or given to them or their designated representative along with an instruction sheet and FMLA notice.

4. The employee will need to complete the appropriate information on the form, sign the form where indicated, and give it to his/her physician for completion.

5. The completed form may be mailed, faxed, or hand delivered to the Human Resources Department/Plant Nurse for review and processing.

6. Once the form is received by the Human Resources Department/Plant Nurse it will be reviewed. If all of the necessary information has been completed on the form, it will be processed for payment of the appropriate benefit.

7. If information is lacking on the sick and accident benefit form, it will be returned to the employee with a note indicating what is needed and further instructions. When the necessary information has been obtained, the claim will be processed for payment of benefits.

**Payment of Benefits:**

1. For payment of benefits during the current calendar week the sick and accident benefit form must be received by 10:00 AM on Monday morning with all of the necessary information completed on the form. Should Monday be a holiday, the deadline will be extended to Tuesday morning at 10:00 AM.

2. If the form is received after the deadline, benefits will be paid the following week.

3. Benefits will be paid until the date indicated on the form by the physician when the employee should be back to work. The employee will be notified that their benefits will be paid until this date. Should the disability extend beyond the original return to work date, the employee must notify the Human Resources Department/Plant Nurse of his/her continuing disability. A **Supplemental Sick and Accident Benefit Form** will be mailed or given to the employee for completion by the physician on or after each subsequent office visit. **A Supplemental Sick and Accident Benefit Form** may also be mailed or given to the employee for completion by the physician when the employee is on disability for an indefinite time period as indicated by the physician. This may occur one or more times during an employee's disability. The same procedures, time frames, etc. that apply to the original sick and accident benefit application for benefits apply to the supplemental form for a continuation of benefits.

4. Benefits will be discontinued when the employee is released by the physician to return to work.

**Other Information:**

Other information related to the benefits is contained in the Summary Plan Description for Sick and Accident Benefits.

**Revised 04-25-03**

# NUMBER OF PHB EMPLOYEES

## AS OF JUNE, 2003

| DIVISION | ACTIVE EMPLOYEES | LEAVE OF ABSENCE | EXTENDED PERIOD OFF WORK | LAY OFF | TOTAL |
|---|---|---|---|---|---|
| PHB CORPORATE | 21 | | | | 21 |
| PHB DIE CAST SALARY | 123 | | | | 123 |
| PHB DIE CAST HOURLY | 272 | 4 | 3 | 26 | 305 |
| PHB MACHINING | 124 | | | | 124 |
| PHB MOLDING | 25 | | | | 25 |
| PHB TOOL & DIE | 35 | | | 1 | 36 |
| TOTAL | 600 | 4 | 3 | 27 | 634 |

# PHB DIE CAST



**Chester Kempinski** — Chief Operations Officer

**Beth Mead** — Executive Assistant

- **Paul Johnson** — V.P. Engineering
- **Butch Smith** — Manufacturing Manager
- **Fred Kerner** — Production Manager
- **Jim Scott** — PHB Director of Quality Assurance
- **Dan Langer** — V.P. Purchasing
- **Don Richwine** — Director Sales & Marketing
- **Pete Tolhurst** — Chief Finance Officer
- **Tony Ferrera** — PHB MIS Director
- **Ben Hancock** — Director of Human Resources

June 25, 2003



# Exhibit 27

This grievance was written as Rich felt that the company was harassing him in several different areas. In Rich's mind, when you look at all these areas together as a whole there was an overwhelming pattern of harassment. Rich contends that this harassment stems from his testifying for Fred Jackson against PHB.

The union looked at this grievance and decided to break it into 5 separate categories and treat each one on it's own merit. To this end we have decided the following:

The S&A harassment issue - we find that Rich did not provide adequate proof that the company intentionally held up his S&A, so we consider this part of the grievance withdrawn due to lack of merit. The company was partially to blame for part of this, but so was Rich for not having the paperwork in at the appropriate times and probably the doctor played a part in this too by not filling out the physicians part of the paperwork in a timely enough manner. The company has since addressed this by trying to better inform those employees on S&A what the rules and time frames are for having their paperwork back in a timely manner so that a paycheck can be issued. The company needs to continue to reinforce this message to those off on S&A so that in the future no employee will feel that they have been treated any differently than another when it comes to getting their S&A in a timely manner. This can be achieved by giving the employee a written instruction sheet at the same time they are given the S&A papers and we recommend that this be done from now on.

The phone call harassment issue - we find that Rich did not provide adequate proof that the company had anything at all to do with these phone calls, so we consider this part of the grievance withdrawn due to lack of merit.

The company picnic issues - we find that Rich did not provide adequate proof that the company intentionally treated Rich and\or his family members different than other PHB employees and the union withdraws this part of the grievance due to lack of merit. What happened to Rich and his family was unfortunate, and if in the future should the picnic ever take place again steps should be made to ensure that no employee feel that he\she has been treated differently than any other employee and this can be achieved by making sure the paperwork process has no glitches.

The Bad Boy List - this issue we believe will ultimately be decided by the EEOC and place this part of this grievance on hold pending the EEOC's findings pertaining to the legality of the attendance policy.

The verbal harassment by Mark Nine and Mike Wiedler - the union cannot tolerate nor condone such behavior but understands that it goes on in this plant on a daily basis. We are hoping that this behavior will be addressed in the up-coming anti-harassment\discrimination classes the company has told us will be given in the near future. To this end, we place this part of the grievance on hold pending the outcome of these classes. Considering this type of training has been offered here at PHB before, we hope that THIS training has a much better success rate than past similar anti-harassment\discrimination training sessions have had here at PHB. We also feel that Rich deserves an apology from the respective supervisors as what was said by these supervisors was unprofessional and was uncalled for. What they said to this employee who was off on S&A due to anxiety reasons, did nothing to improve this employees state of mind, in fact what they said to him that day could have made his health much worse.

# Exhibit 28

To : Ben Hancock
From : Greg Bible
Re: Roy Hinton
Date : 3 - 25 - 02

This past Saturday, an incident occurred between Roy Hinton and Chet Kempinski. This occurred while Roy was working at 800Z8. Chet came up and asked him a question. Roy replied with his pent-up feelings that he had been discriminated against by PHB and Chet took offense to this and told Roy if this was how he felt he should quit. Roy told him for two to three hundred thousand dollars he would quit. Roy states that at that point Chet became very angry and got right in his face and he, Roy, was worried that Chet intended to get physical. Instead, Chet told him something to the effect that his day was coming, which Roy takes as a very serious threat to his job here at PHB.

Roy is concerned for his job as he feels he has already been discriminated against once by PHB and the fact that PHB treats black employees differently than white employees. Why does he feel this way? Fred Jackson, a black employee, allegedly threatens Gary Hardick with no witnesses and Fred is immediately terminated.

Mike Little, a white management employee, allegedly threatens two separate individuals (in one case there was a witness) and there was no disciplinary action.

Tim Holmstrom, a white employee, allegedly threatens his supervisor and he is given a Last Chance Agreement.

Keith Regelman, a white employee, physically attacks another employee and he suffers no discipline at all!

Roy is concerned that Chet will say that Roy was the aggressive person in this incident on Saturday and have him terminated. He feels that Chet has been attempting to do something like this for some time as he repeatedly seeks Roy out while walking through ZDC. Roy has attempted to limit his exposure to Chet as he felt this was for his own best interest, but when Chet comes right up to his work-center, there is no place to hide.

In the past he has kept his opinions to himself and just offered back the basic chit-chat that could not be construed as anything but chit-chat. I think that this Saturday, Roy couldn't hold back any longer due to the companies lack of discipline in the Regelman incident. Roy knows he did some things wrong that led to what happened to him. But, the punishment was way too severe for the crime and he feels that PHB has an obligation to admit that they too did wrong. He personally holds you and Chet responsible for the extremes that PHB took to make him look like a bad employee and to the extremes that you tried to punish him.

Roy just wants to be left alone. In fact, he said that is what he told Chet, just to go away and leave him alone. He was a good employee before the incident with Chris Klobusnick, and he has been a good employee since his return after the arbitrators decision. He likes his job here at PHB. He can't say the same concerning you or Chet. But putting his personal feelings for the two of you aside, he has been and will continue to be a good employee for PHB. His attendance record has been good. He works just about all the offered overtime that he can. His supervisors (to this point and I would hate to see this suddenly change!) have no complaints to my knowledge concerning his work ethics.

This letter has two purposes. One, to ensure that nothing bad happens to Roy solely because he had the audacity to truthfully answer a question when asked. I would also recommend that Chet abide by Roy's request and leave him alone from now on unless Chet is willing to take the high road and apologize to Roy. Chet may feel he is the aggrieved party here due to Roy's dislike of his past treatment, but if he is man enough to look at what PHB put Roy through back then (try to do this through Roy's eyes taking into account how PHB has treated other employees) he should be able to understand Roy's pent up frustrations. Chet should also take into account Roy's past and current work record! Roy has been a good employee.

The second purpose of this letter is to state that Roy is not alone in his opinion that PHB treated them wrongly in light of the Regelman incident. Several employees have outstanding LCA's for different reasons that in light of how the company handled the Regelman incident have them feeling that they were discriminated against. Several other employees have received punishment in the past that under consideration of how the company handled the Regelman incident has them feeling that they were treated far worse than they should have been.

We, the company and the union, are both going to regret that no disciplinary action was taken involving the Regelman incident. This is going to cause us problems for quite sometime as the companies lack of action makes no sense to anyone. Whenever any disciplinary action is taken in the future the lack of discipline in the Regelman incident will be brought forward by the person being disciplined and from the unions perspective, they will have a good argument.

But the main reason for this letter is to ensure that nothing untoward happens to Roy Hinton because someone didn't like the answer to their question. You can't treat people like you did Roy and expect them to respect you for it. Chet's actions this past Saturday did nothing but reinforce Roy's lack of respect and distrust of upper management here at PHB.

To : Ben Hancock
From : Greg Bible
Re : Roy Hinton\Chet Kempinski
Date : 4 - 12 - 02


Everyday, Roy comes to us and asks, what was the company's response to the
memo concerning the incident between Roy and Chet. Roy feels that if this is
allowed to be swept under the rug, and we all pretend this did not occur, that Roy's
days here are numbered. If the company takes no action at all, this gives Chet the
go ahead to one day make good his threat that Roy will get his.

Roy feels that had he been the one that had made this threat, he would have been
immediately terminated. He feels that once again, he is being discriminated against
by PHB.

To date, I have nothing to tell him as we have heard no response, in fact it is as
though nothing ever took place. How can I explain to Roy that he has nothing to
fear and that he is not being discriminated against when I know that had he been
the one making a threat he would have been terminated on the spot. No one should
have to come to work everyday with this type of threat hanging over their head.
Especially someone we've already treated rather shabbily in the past. He knows
already just how vindictive this company can be.

Something needs to happen to allow for some form of closure on this or it will end
up being another disaster just like the Regalman incident and will just continue to
haunt us. Let me know what the company's intentions are, if any, concerning some
form of resolution to this incident.

To : Ben Hancock
From : Greg Bible
Date : 4 - 24 - 02
Re: Your reply to the Roy Hinton memo

Ouch! I think I just got slapped. My first impression is that I should be apologizing for wasting your very valuable time over something as silly as a human relations problem. Oh gee, that's right, you are the Human Relations Director here at PHB Die Cast and as such I would presume should be the one I go to when there is such a problem. But maybe I just don't understand the system or exactly what your job duties are.

I was not, and am not trying to argue with you the merits of your case against Fred Jackson. I have spoke my peace about this and feel that Fred will ultimately prevail but that really has no bearing here.

As for your argument that the union always espouses that each case is different, you are correct. The part you conveniently left out is why we have to argue this every case. Because the company has always argued the opposite. Funny in this case that the company has all of a sudden decided that the union position is the correct position.

As for my trying to tie many events involving different employees together and make them the same, you have totally missed the main point of my arguments each time. I am not trying to make each case the same. Nope, just trying to find some semblance of order in how these cases were handled. Every case should be judged on it's own merit (gee, it sure is nice we agree about something!), but each case should also be decided and handled in a manner where there seems to be some form of "FAIR" justice. Some form of order, merit, and fairness to show that there was no discrimination or unfair or unjust treatment. THAT is exactly what is lacking and what I have been arguing for, and that is why I feel Fred Jackson will ultimately prevail in his law suit.

I love the next part. **"Roy Hinton was disciplined in the past. The case went to arbitration and the arbitrator decided that the company was justified in disciplining Roy."** Wow! Now that's a statement! No one ever said Roy was completely innocent. No one ever said that Roy didn't deserve some form of punishment. The problem was, and the reason for the grievance, was that your punishment was too severe....you terminated Roy, you didn't just discipline him. The fact that the arbitrator gave Roy his job back clearly shows that the arbitrator did not think that the company was justified concerning the discipline awarded. Nice play on words though!

**"If a white employee had done the same thing, would they have been disciplined? There is no doubt in my mind that if the circumstances were the same, the discipline would be the same."** I suggest that you get a transcript of this arbitration and look at your very own testimony. You testified that if a case involved only the things that Roy agreed he did, the only ones the company proved really happened, that this would not be grounds for a termination, maybe a written warning and maybe some time off, but not a termination. I think the arbitrator agreed with you there. (What happened to every case should be judged on it's own merit? Probably was an hourly person and not someone from management that precipitated the problem)

"He presented himself as a model employee and this just wasn't the case." Another nice statement, but in reality how does it stack up to facts? As the union president I am involved whenever an employee does something bad. Since Roy is what PHB considers a "Not so model employee", I must have been involved with Roy many times in the past. A "Not so model employee" probably has a file full of written warnings. Gee, I can't remember Roy hardly ever (if ever) getting written up for anything. A "Not so model employee" probably has oodles of warnings for missing work. Gee, I don't think Roy has any of these either. A "Not so model employee" probably refuses all overtime. Gee, I believe Roy worked almost every bit of OT he was asked for. A "Not so model employee" has probably been called up front and talked to several times in the past. If so, he must have taken his union steward along as I was never apprised of this happening. Gosh, I wonder why Roy would hold a grudge against you for trying so hard to make him out to be a bad employee???

"Obviously, he has not learned anything from the past." Actually, I think he learned a lot from the past, that he cannot trust upper management to treat him fairly. In fact, I believe he learned this lesson all to well and your response to this latest incident only confirms everything he has learned.

'As far as his relationship with Chet, I cannot comment too much about that. It matters little. Boy, now that statement said a lot about  what is wrong around here! Upper management doesn't care about it's employees is what that statement basically says to me. You'd have thought Chet would have learned something during negotiations, not to ask a question that you didn't want to hear the answer for. Not everyone is going to make small talk or lie and tell him what he wants to hear. On occasion, someone is liable to tell him exactly what that person feels and\or believes and Chet is not going to like hearing the answer. Should that person be fired or disciplined for being honest? (only if the company *develops* witnesses...what's up with this???)

"Chet should have developed a witness and then had Roy disciplined for respect, or a horrible attitude towards the company and management. " Apparently Roy was who went to Chet's work area to approach Chet? Apparently Roy was the one who got pissed off and got right in Chet's face? Apparently, Chet felt his job was threatened that day? Respect is a funny animal. One isn't born with it, one has to earn it and if you are going to fire employees because they don't respect you, we might find that there are no employees left. (Oh yeah, so the company *develops* witnesses? There's a sure way to gain your employees respect. It's right up there with making out that they are also a "Not so model employee"!)

Not so very long ago, I personally was disrespectful to Chet. I could have buried my head in the sand and said too bad, but instead I chose to apologize to him in person. Why? I basically did this out of respect and for respect. Respect is a two way street. If I had ignored the fact that I had done wrong I would have lost Chet's respect as well as respect for myself and quite possibly the respect of many others. As I stated earlier, one isn't born with respect, one has to earn it, and sometimes this isn't so easy.

Both you and Chet have just taken a long ride down on my respect meter and the respect meter of many other employees because of how you mis-handled this incident!

Yes, Roy Hinton does work here. An arbitrator saw to that. Does he have to like you after what you did to him? No. But it sure would be better for all employees to know that no one here has to come to work scared that they could lose their job at anytime because upper management doesn't like them. Accomplish this, and you will have the respect of every employee here!



# Exhibit 29

STATE OF <u>Pennsylvania</u>                           CASE NAME <u>Woodard V. PHB</u>

CITY/COUNTY OF <u>Erie/Erie</u>                        CHARGE NUMBER 172-2003-00954

## AFFIDAVIT

I, <u>James Lee Fowler</u>, being first duly sworn upon my oath affirm and hereby say:

I have been given assurances by an Agent of the U.S. Equal Employment Opportunity Commission that this Affidavit will be considered confidential by the United States Government and will not be disclosed as long as the case remains open unless it becomes necessary for the Government to produce the affidavit in a formal proceeding.  Upon the closing of this case, the Affidavit may be subject to disclosure in accordance with agency policy.

I am **47** years of age, my gender is **male**, and my racial identity is **Black**.  I reside at **1206 E. 21st. Street**, City of **Erie**, State of **Pennsylva-nia**, Zip Code **16503**.

I have been employed by the Respondent, PHB for almost 10 years. I currently work the second shift which operates from 2:30 p.m. to 10:30 p.m. I work in the Zinc department and report to various supervisors who are assigned to that shift. The Charging Party, Davyed Woodard, also works the second shift but works in the Aluminum Department. We do not see each other a lot at work. The Zinc department is much smaller than the Aluminum Department. I have not experienced blatant racism in the Zinc Department like the Charging Party.

I am aware that racism exists at the plant, particularly in the aluminum department. I learned this shortly after I was hired. I was asked to go over to the Aluminum Department because they were short handed. I and a Hispanic employee went to a supervisor and asked him what he wanted us to do. He just looked at us and walked away. We went up to him a short while later and he did the same thing. Finally, another supervisor gave us an assignment. The first supervisor who ignored us, retired several years ago.

STATE OF Pennsylvania                          CASE NAME Woodard V. PHB

CITY/COUNTY OF Erie/Erie                        CHARGE NUMBER 172-2003-00954

## AFFIDAVIT (cont.)

Another incident occurred shortly after I was hired. I was in the rest room using one of the stalls. Another employee made a comment stating that it was getting "too dark" in there. I do not know who made the comment.  I believe that he was referring to the color of my skin when he made that comment.

I feel that I have been discriminated against in subtle ways that are difficult to prove. For example, a few years ago, my car was keyed at work and the hood ornament was twisted. I have also had my car spit upon. I do not know who did this and I did not report it to the company or management because I knew it could never be proved. I did inform some of my coworkers about this. I believe this was done because of my race.

I also feel that I was treated differently than other employees after I suffered a work related injury in 2000. I was required to return to work to perform light duty work even though I had to sit with an ice bag on my hip and my leg elevated. When I was ready to return to full duty Respondent did not take me back immediately even though my doctor provided a release. I had to provide documentation to the company 7 times before I was finally returned to work.

I have never seen any racially derogatory graffiti on the bathroom walls. I have seen other offensive writing referring to "gays" and "fag-gots." The company janitor usually paints over things like that soon after they appear on the walls.

STATE OF <u>Pennsylvania</u>

CITY/COUNTY OF <u>Erie/Erie</u>

CASE NAME <u>Woodard V. PHB</u>

CHARGE NUMBER 172-2003-00954

## AFFIDAVIT (cont.)

People have to write a letter explaining what happened when a part breaks. This is a fairly new procedure. Letters are not always required. It depends upon what broke and how long the machine was down.

I have no problems working in the zinc department. If anyone says anything to me that is offensive. I will tell them about it and the problem is taken care of.

The Charging Party, Dayved Woodard, and I are cousins. I did not know him before he began to work for the Respondent. However, we discovered after he started working for the Respondent that our mothers are related. Dayved has told me about some of the things that has happened to him.

I have read and had an opportunity to correct this Affidavit consisting of 3 typed pages and swear that these facts are true and correct to the best of my knowledge and belief.

_____

date/signature

Page 3 of _____
(initials)

# Exhibit 30

STATE OF <u>Pennsylvania</u>                                    CASE NAME <u>Woodard V. PHB</u>

CITY/COUNTY OF <u>Erie/Erie</u>                               CHARGE NUMBER 172-2003-00954

## AFFIDAVIT

I, <u>Timothy Glen Norton</u>, being first duly sworn upon my oath affirm and hereby say:

I have been given assurances by an Agent of the U.S. Equal Employment Opportunity Commission that this Affidavit will be considered confidential by the United States Government and will not be disclosed as long as the case remains open unless it becomes necessary for the Government to produce the affidavit in a formal proceeding. Upon the closing of this case, the Affidavit may be subject to disclosure in accordance with agency policy.

My gender is **male**, and my racial identity is **Black**. I reside at **402 Wilson Street**, City of **Erie**, State of **Pennsylvania**, Zip Code **16507**.

I have been employed by the Respondent, PHB, for almost 14 years. I have held my current position of Hot Metal Man for about a month. Prior to getting this position I was a Die Cast Press Operator in the Aluminum side for about 3 years. My immediate supervisor now is Jeff Parker.

I have not noticed any racial graffiti in the rest rooms during the last few years. About 8 years ago, I recall there was something on the walls. It was painted over quickly by the custodian. I have not seen anything since then.

I previously worked in the trim department. About 4 or 5 years ago, I felt that I was being messed with in my job assignments. I was a grinder and then I got booted to drill press. I was told there was a shortage in work for grinders. However, after I was moved to the drill press, the remaining grinder was working 10 hours a day. I complained to the Union about this. I did not say anything about race. I just said it wasn't fair. It was never really resolved.

About 8 to 10 years ago one of the foremen called me a "nigger". He said it to a white coworker. The white guy told me about it in front of

STATE OF <u>Pennsylvania</u>                            CASE NAME <u>Woodard V. PHB</u>

CITY/COUNTY OF <u>Erie/Erie</u>                        CHARGE NUMBER 172-2003-00954

## AFFIDAVIT (cont.)

this foreman. The foreman John Yakobosky, then said he was just kidding. I did not go to HR or my supervisor. This supervisor never said anything like that again in my presence or in the presence of the white employee who told me about the foreman's comment.

There are only about 7 or 8 black employees who work for the Respondent. It seems as though when a foreman sees two black employees talking together he will say something about them getting back to work. When two or three white employees are talking the foremen just walk right past without saying anything.

When I was working as a Die Cast Press Operator, I had to call a supervisor for relief when I had to use the rest room, had a problem or needed a break. Sometimes I had to wait for 20 minutes before a supervisor came by. I do not believe this happens to the white employees.

Over the years I have been employed by PHB, I have heard a lot of racial jokes. They are always around. I believe the last time I heard a racial joke was in the summer of 2003. I do not recall what it was about.

Up until I got the job as a hot metal man, Gary Gebhart was one of my supervisors. He always had something to say to me and the other black employees. He often would make comments to me under his breath, like "idiot." He is one person who I can tell is prejudiced against black employees by the way he acts towards us.  Within the last year or two, a white employee who owned a camp told me that Gary made a derogatory comment about a black employee coming to visit him at his camp. It had something to do with shooting the white and the black employee if they came to visit him. In the past, I told Ron Sayers that Gary was prejudiced. He did nothing about it. After the EEOC started its investigation, Gary has been breaking his neck to be nice to the black employees.

STATE OF Pennsylvania

CASE NAME Woodard V. PHB

CITY/COUNTY OF Erie/Erie

CHARGE NUMBER 172-2003-00954

## AFFIDAVIT (cont.)

I have read and had an opportunity to correct this Affidavit consisting of 3 typed pages and swear that these facts are true and correct to the best of my knowledge and belief.

_____

date/signature

# Exhibit 31

STATE OF <u>Pennsylvania</u>                          CASE NAME <u>Woodard V. PHB</u>

CITY/COUNTY OF <u>Erie</u>                           CHARGE NUMBER 172-2003-00954

## AFFIDAVIT

I, <u>Glen Csombok</u>, being first duly sworn upon my oath affirm and hereby say:

I have been given assurances by an Agent of the U.S. Equal Employment Opportunity Commission that this Affidavit will be considered confidential by the United States Government and will not be disclosed as long as the case remains open unless it becomes necessary for the Government to produce the affidavit in a formal proceeding. Upon the closing of this case, the Affidavit may be subject to disclosure in accordance with agency policy.

My gender is male, and my racial identity is white. I reside at 1035 W. 9th Street, City of Erie, State of Pennsylvania, Zip Code 16502.

I have been employed by the Respondent for 11 years. I work the first shift in the aluminum side of the plant. My supervisors are Rex Ryan and Ron Sayers. Gary Gebhart is also a supervisor who alternates on the fist and second shift.

Gary Gebhart and I both have hunting camps in the same general area. Several years ago, when at work, I walked up to the place where Gary Gebhart was siting. I told him that Ron Oliver and I were going up to my camp on the weekend and might stop up to see him. Present during this conversation were Tommy Thompson, foreman, and Mike Thor, who is in charge of punch presses and trim dies.

Ron Oliver is a good friend of mine who I met at work. Ron has been with the company about two or three years longer than me. Ron is also a Committee man for the union. He and I have been good friends for the entire time I have worked for the Respondent. We golf together, and see each other socially occasionally. Ron is a black employee. After I told Gary that I



Page 1 of _____
(initials)

ſE OF <u>Pennsylvania</u>

Y/COUNTY OF <u>Erie</u>

CASE NAME <u>Woodard V. PHB</u>

CHARGE NUMBER 172-2003-00954

### AFFIDAVIT (cont.)

ght stop by his camp with Ron, Gary told me not to bring that "fucker" to
s camp because if I did we would not make it out of his driveway. He
ntinued to say that he didn't want Ron at his camp and that he had no use
r "them fuckers." I assumed that he was talking about black people. I
lieve this was an accurate assumption because Gary has made similar
mments about black people in the past. This was just another indication
his attitude towards black people.

Mike Thor who was standing nearby was shocked by this and told me that
could bring Ron down to his camp any time.

I told Ron Oliver about this comment. I did not share it with other
lack employees or go to the office about this. I do not think it is fair
r someone like Gary to have that attitude about someone like Ron or any
lack employee. I have not received any anti-harassment or training about
iscrimination from the company. I do not think that anyone at the plant
as been given this type of training either. The area where the plant is
ocated and where Gary Gebhart has his hunting camp is what I call a
redneck" area. The people live out in the country and have little contact
ith black people.

I have heard that other supervisors make similar comments about black
mployees. For Example, Tommy Thompson has made several comments about the
ork ethic of black employees, saying those "bastards" are all the same. He
as also used the word "nigger" when talking about black employees. I have
ot actually heard those comments but was told this by witnesses. It is a
hame that a few employees have such a bad attitude about people who are
ifferent. Those employees spoil the environment for everyone.

Page 2 of _____
(initials)

STATE OF <u>Pennsylvania</u>

CASE NAME <u>Woodard V. PHB</u>

CITY/COUNTY OF <u>Erie</u>

CHARGE NUMBER 172-2003-00954

## AFFIDAVIT (cont.)

I do not believe that assignments are given out on the basis of race, with black employees getting the more difficult jobs. I think the supervisors try to even things out among all of the employees. Ron Sayers and Rex Ryan have some say in the way assignments are made but do not have total control. The time keeper or dispatcher make most of the assignments. Sometimes a customer might have a rush job or request special attention to detail. In that case the supervisor might make an assignment based on who does the best work with that assignment.

I do not think having to write a letter when a part breaks is meant to be a punishment. It is an opportunity for an operator to explain what happened when something goes wrong. It is usually used when something breaks that is costly to repair.

I have read and had an opportunity to correct this Affidavit consisting of 3 typed pages and swear that these facts are true and correct to the best of my knowledge and belief.

_____

date/Signature

Page 3 of _____
(initials)

# Exhibit 32

Memo to the File

Re: Conversation with Greg Bible, Union President. Home phone 814-774-4079

date: 5/21/03

EEOC Charge NO.: 172A300954
          Woodard V. PHB Die Casting

This witness is the Union President. He has been the union president since 1990 or 1991. He has been employed by the Respondent fo 25 years. His current title is Job Inspector A.

Witness was asked about various incidents in connection with the employment of Dayved Woodard and union intervention in those situations.

1.     Witness was not aware of any complaint of a KKK sign and a burning cross drawn on the bathroom walls. Witness pointed out that some matters are resolved by the Union Steward and witness does not know about them. Witness noted that the main bathroom is regularly painted over by the maintenance department to cover graffiti. However, he noted that there is a bathroom near the cp's work station that does not receive so much attention. If the offensive graffiti was in that location, it is possible that it was not painted over for quite a while. Witness does not go into that bathroom very often. Witness did not see this graffiti or hear about it. He noted that even in the main bathroom there are periods where the maintenance department does not paint over the graffiti. He said there was something about the Pittsburgh Steelers for quite some time.

2.     Cp has never actually filed a grievance with the Union. Cp has not hesitated to get the Union involved and has several meetings with supervisors and either witness or the shop Steward. It seems that things are resolved in those meetings so that grievances do not have to be filed. On numerous occasions cp has come to witness with complaints of one kind or another. Cp has not provided specifics at those times but just told witness that he was going to file a grievance. Witness then gives the cp a fact sheet to fill out and return. This is what is used when a grievance has been filed. Cp has never turned in a filled out fact sheet form as far as the witness recalls.



3.     Witness noted that there have been a couple of meetings where the cp has complained about job assignments. Witness stated that this is a touchy subject with a lot of guys. It often comes up with female employees. He noted that some jobs are more difficult than others. Sometimes women are assigned jobs that they are simply not equipped to handle. Witness does not want to see any of the women hurt and has advocated giving women assignments that they are able to safely do. Witness states that many of the men both black and white complain about this.

Witness states that the Union has asked the company to rotate all of the employees around the machines so that they all get a chance at easier jobs. He said the lower numbered jobs

are not necessarily easier because they may have more stations or work faster. Witness was asked about the cp's example of a break down where Lou Barka was given a lower number machine to do after his machine was fixed and cp was given Barka's job. Witness stated that generally, a person returns to the job he was working on when a machine breaks but the supervisors sometimes rotate the employees for many different reasons.

4.    Witness has told the company on many occasions that it has a problem with the treatment of minorities and female employees. Within the last few months he filed a grievance on behalf of all of the minorities and women employed by the Plant. He indicated that there was an environment where the women and black employees did not fee comfortable at work. This grievance is still pending.

He filed the grievance because there were situations were supervisors were making racial remarks and statements that were intimidating and the company was not taking any actions.

When asked for examples the witness provided the following examples:

a)    There was an incident where an employee was wearing a Budwiser frog shirt. A supervisor asked him why he was wearing that "nigger shit". This was said to a white person who was offended enough by it to complain to management. The company did nothing about it because it was not said to a black employee or in the presence of a black employee. The witness did not believe that the employee needed to be black to be offended.

b)    the most recent incident involved supervisor Gary Gebhart. He made a comment to Rob Tolhurst, race white, who was working as a metal man. Rob was helping black employee, Carrie Goodwine with Goodwine's job. Gebhart chastized Tolhurst for helping Goodwine and told Tolhurst that "We have to make it harder on them" (meaning black employees). Tolhurst told this to Goodwine. Goodwine complained to the Union Steward. The Union talked to the company but nothing was done since the comment was not made in the presence of Goodwine or other black employees.

Witness said there have been incidents in the past where he thought the company was going to get its butt sued but somehow managed to escape major repercussions for their actions.

5.    Witness was asked about an incident which the cp said occurred in September/October 2002. Cp was required to write a letter because two drill taps broke. Witness stated that he and the other Union officials were shocked when the cp was asked to write this letter. He stated that the practice of writing letters after an incident began some years ago after witness intervened. Prior to his intervention, it had been company practice to give disciplinary write ups based solely on the supervisor's say so. Witness felt it unfair that the employees were not given the opportunity to provide their side of the story.

However, write ups are usually only called for when there is a major incident, such as a major break down or something that stops production for a long period of time. Witness stated that drills break all of the time. This is a very minor thing and easy to fix. There is very little down time required to get it fixed. Witness counseled the cp to write the letter and put in it whatever he wanted to do. Cp was asked to do this by supervisor, Rex Ryan. Cp wrote the letter and indicated that he felt this was a discriminatory action because of his race. Cp showed the letter to witness to see if witness felt he could do this. Witness counseled the cp that since he was requested to write his version of the incident, he saw no reason why the cp could not say what he believed.

Ryan was upset with the version of the letter that cp wrote and complained to witness that Ryan was not the one who made the cp write the letter. Ryan stated that his supervisor, Butch Smith, made him get the letter from Cp. According to Ryan this is how things were going to be done from this point forward. However, witness is not aware of anyone else having to write a letter for broken drills which reasonably occur with regularity.

6.    Witness stated that the company is undergoing hard times in the current economy as are many businesses. At a recent "What's Happening" meeting, (these are supposed to occur quartely but only happen when the company wants to have one) the CEO told the employees that Unionism is going to close the company. That gives and idea of the antagonism between the company and the employees to begin with.

7.    Witness has sat in several meeting with the cp and Ron Sayers where cp has complained about his treatment by Ron and states that he believes it is because of cp's race. Ron counters by saying that if cp would do his job, Ron would not have to watch him so closely.

8.    Witness is aware that the black employees feel that they are not allowed to "bull shit" (witness' words - meaning to socialize during work). He says that they feel they are yelled at more often than white employees who do the same thing. The meetings witness has attended with supervisors about this has not been conclusive. In many cases the black employees have to travel some distance from their work station to talk to their friends. The company expects all of its employees to stay at their stations during work hours. However, the black employees feel that this is a racial thing because they are the ones most often singled out for this.

9.    Witness believes that there are about 10 or 12 black employees working for the Respondent. He will make the Union facilities available for the EEOC to use to talk to them. He will also research is notes to see what recent interventions he has done on the cp's behalf.

# Exhibit 33



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Pittsburgh Area Office**

Liberty Center
1001 Liberty Avenue, Suite 300
Pittsburgh, PA 15222-4187
(412) 644-3444
TTY (412) 644-2720
FAX (412) 644-2664

Mr. Davyed Woodard
P.O. Box 771
Erie, PA 16512

Charging Party,

CHARGE NO.172-2003-00954

PHB Die Casting
7900 West Ridge Road
Fairview, PA 16415-1899

Respondent

## DETERMINATION

Under the authority vested in me by the Commission, I issue the following determination as to the merits of the above cited charge.

All requirements for coverage have been met. Charging Party alleged that Respondent discriminated against him because of his race black in violation of Title VII of the Civil Rights Act of 1964, as amended. The alleged discrimination took the form of blatant racial slurs being made by coworkers and supervisors; being subjected to graffiti in the rest room consisting of a KKK sign and a burning cross; being given more difficult assignments than similarly situated white employees; finding chewed up sunflower seeds in his gatorade; and finding his snacks smashed at his work station.

Respondent denies that coworkers or supervisors heard or made racially offensive remarks. Respondent also asserts that its janitor observed a KKK sign on the rest room walls a number of years ago. Respondent states that its janitor regularly paints over any kind of graffiti in the rest rooms and other locations of the plant. Respondent denied being told that Charging Party found chewed up sunflower seeds in his gatorade or smashed snacks at his work station. Respondent denies that the Charging Party receives less favorable assignments than his white coworkers.

On several occasions during his employment Charging Party complained about racially offensive comments made by supervisors and the manner in which he was assigned work, claiming he got all the difficult jobs. His complaints were made to his supervisors, Union representatives, the Human Resources Director and the Human Resources Employment and Training Supervisor. Other black employees made similar complaints.

The fact of such complaints is captured in numerous summaries of discussions prepared by Union officials and Company administrators. Some of the statements that the Charging Party complained about include the use of the words "nigger" and other derogatory comments such as "I don't associate with them kind" and "I don't watch football because it involves over paid *nigger* players." Records reveal that Charging Party had four meetings with Supervisor Ron Sayers, Union representatives, and Ben Hancock, Human Resources Manager in 2000 and 2001. Respondent investigated the complaints but did little or nothing to correct the situation. Respondent noted that it was concerned enough about one supervisor to schedule him for a diversity class at Edinboro University. However, the class was cancelled and the Supervisor did not have to attend any other training.

In interviews conducted by the EEOC, Respondent officials admitted that they investigated several complaints made by the Charging Party and other black employees. EEOC's Investigation established that derogatory comments about African Americans in general had been made by supervisors and coworkers. While all of the comments were not made directly to the Charging Party, the remarks reflect a definite bias against black people which created a hostile environment for the Charging Party.

Some incidents that Charging Party complained about which allegedly occurred within the relevant 300 day time frame include: having to write a letter after breaking minor machine parts in September 2002; problems with his sick and accident pay in March 2003; and being assigned the more difficult work constantly.

Investigation found witness corroboration that offensive racial graffiti in the form of a KKK and burning cross was written on the rest room walls. Investigation found witness corroboration that a supervisor made derogatory comments about black employees and black people in general. The comments were offensive to white and black employees and were brought to the attention of Respondent's administrators.

Based on this analysis, I have determined that the evidence obtained during the investigation establishes a violation of Title VII with respect to hostile environment.

Investigation did not establish a violation of Title VII with respect to the other issues cited by the Charging Party. Although, Charging Party frequently complained that he was given the more difficult assignments, the investigation did not corroborate this allegation. Many factors go into deciding how to assign work, including priorities and the availability of employees. Furthermore, each machine can run a variety of different jobs. Not all jobs on the same machine are considered difficult and not all people consider the same type of work to be difficult.

Investigation could not establish that the sunflower seeds and smashed snacks were the result of the Charging Party's race. The culprit was never found and Charging Party did not complain about this to the Respondent. Having to write a letter following a breakage or problem with the equipment is a recently instituted practice that allows the employee to provide his side of the story. Requiring the Charging Party to do this is not an indication of discrimination.

Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter.

The confidentiality provisions of Title VII and Commission Regulations apply to information obtained during conciliation.

If the Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the office Director is not obtained, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission.

A Commission representative will contact each party in the near future to begin conciliation.

The Commission is seeking an amount inclusive of the applicable cap to your organization for compensatory and punitive damages; appropriate lost wages and actual monetary costs incurred by the Charging Party. In this regard, a Commission representative will prepare and monitor an actual dollar amount to include accruing lost wages, if any, and attendant benefits, with interest to date; any appropriate attorney fees and costs which have accrued to date. Again, the Commission is postured to consider any reasonable offer during this period.

Respondent may contact investigator, Susan M. Kelly at 412-644-2921, if there are any questions or concerns about conciliation.

On Behalf of the Commission,

_12/18/03_
Date

Marie M. Tomasso
District Director

Page 3

# Exhibit 34

Memo to the File

Re: Conversation with Greg Bible, Union President. Home phone 814-774-4079

date: 5/21/03

EEOC Charge NO.: 172A300954
          Woodard V. PHB Die Casting

This witness is the Union President. He has been the union president since 1990 or 1991. He has been employed by the Respondent fo 25 years. His current title is Job Inspector A.

Witness was asked about various incidents in connection with the employment of Dayved Woodard and union intervention in those situations.

1.    Witness was not aware of any complaint of a KKK sign and a burning cross drawn on the bathroom walls. Witness pointed out that some matters are resolved by the Union Steward and witness does not know about them. Witness noted that the main bathroom is regularly painted over by the maintenance department to cover graffiti. However, he noted that there is a bathroom near the cp's work station that does not receive so much attention. If the offensive graffiti was in that location, it is possible that it was not painted over for quite a while. Witness does not go into that bathroom very often. Witness did not see this graffiti or hear about it. He noted that even in the main bathroom there are periods where the maintenance department does not paint over the graffiti. He said there was something about the Pittsburgh Steelers for quite some time.

2.    Cp has never actually filed a grievance with the Union. Cp has not hesitated to get the Union involved and has several meetings with supervisors and either witness or the shop Steward. It seems that things are resolved in those meetings so that grievances do not have to be filed. On numerous occasions cp has come to witness with complaints of one kind or another. Cp has not provided specifics at those times but just told witness that he was going to file a grievance. Witness then gives the cp a fact sheet to fill out and return. This is what is used when a grievance has been filed. Cp has never turned in a filled out fact sheet form as far as the witness recalls.

3.    Witness noted that there have been a couple of meetings where the cp has complained about job assignments. Witness stated that this is a touchy subject with a lot of guys. It often comes up with female employees. He noted that some jobs are more difficult than others. Sometimes women are assigned jobs that they are simply not equipped to handle. Witness does not want to see any of the women hurt and has advocated giving women assignments that they are able to safely do. Witness states that many of the men both black and white complain about this.

      Witness states that the Union has asked the company to rotate all of the employees around the machines so that they all get a chance at easier jobs. He said the lower numbered jobs

are not necessarily easier because they may have more stations or work faster. Witness was asked about the cp's example of a break down where Lou Barka was given a lower number machine to do after his machine was fixed and cp was given Barka's job. Witness stated that generally, a person returns to the job he was working on when a machine breaks but the supervisors sometimes rotate the employees for many different reasons.

4.    Witness has told the company on many occasions that it has a problem with the treatment of minorities and female employees. Within the last few months he filed a grievance on behalf of all of the minorities and women employed by the Plant. He indicated that there was an environment where the women and black employees did not fee comfortable at work. This grievance is still pending.

He filed the grievance because there were situations were supervisors were making racial remarks and statements that were intimidating and the company was not taking any actions.

When asked for examples the witness provided the following examples:

a)    There was an incident where an employee was wearing a Budwiser frog shirt. A supervisor asked him why he was wearing that "nigger shit". This was said to a white person who was offended enough by it to complain to management. The company did nothing about it because it was not said to a black employee or in the presence of a black employee. The witness did not believe that the employee needed to be black to be offended.

b)    the most recent incident involved supervisor Gary Gebhart. He made a comment to Rob Tolhurst, race white, who was working as a metal man. Rob was helping black employee, Carrie Goodwine with Goodwine's job. Gebhart chastized Tolhurst for helping Goodwine and told Tolhurst that "We have to make it harder on them" (meaning black employees). Tolhurst told this to Goodwine. Goodwine complained to the Union Steward. The Union talked to the company but nothing was done since the comment was not made in the presence of Goodwine or other black employees.

Witness said there have been incidents in the past where he thought the company was going to get its butt sued but somehow managed to escape major repercussions for their actions.

5.    Witness was asked about an incident which the cp said occurred in September/October 2002. Cp was required to write a letter because two drill taps broke. Witness stated that he and the other Union officials were shocked when the cp was asked to write this letter. He stated that the practice of writing letters after an incident began some years ago after witness intervened. Prior to his intervention, it had been company practice to give disciplinary write ups based solely on the supervisor's say so. Witness felt it unfair that the employees were not given the opportunity to provide their side of the story.

However, write ups are usually only called for when there is a major incident, such as a major break down or something that stops production for a long period of time. Witness stated that drills break all of the time. This is a very minor thing and easy to fix. There is very little down time required to get it fixed. Witness counseled the cp to write the letter and put in it whatever he wanted to do. Cp was asked to do this by supervisor, Rex Ryan. Cp wrote the letter and indicated that he felt this was a discriminatory action because of his race. Cp showed the letter to witness to see if witness felt he could do this. Witness counseled the cp that since he was requested to write his version of the incident, he saw no reason why the cp could not say what he believed.

Ryan was upset with the version of the letter that cp wrote and complained to witness that Ryan was not the one who made the cp write the letter. Ryan stated that his supervisor, Butch Smith, made him get the letter from Cp. According to Ryan this is how things were going to be done from this point forward. However, witness is not aware of anyone else having to write a letter for broken drills which reasonably occur with regularity.

6.  Witness stated that the company is undergoing hard times in the current economy as are many businesses. At a recent "What's Happening" meeting, (these are supposed to occur quartely but only happen when the company wants to have one) the CEO told the employees that Unionism is going to close the company. That gives and idea of the antagonism between the company and the employees to begin with.

7.  Witness has sat in several meeting with the cp and Ron Sayers where cp has complained about his treatment by Ron and states that he believes it is because of cp's race. Ron counters by saying that if cp would do his job, Ron would not have to watch him so closely.

8.  Witness is aware that the black employees feel that they are not allowed to "bull shit" (witness' words - meaning to socialize during work). He says that they feel they are yelled at more often than white employees who do the same thing. The meetings witness has attended with supervisors about this has not been conclusive. In many cases the black employees have to travel some distance from their work station to talk to their friends. The company expects all of its employees to stay at their stations during work hours. However, the black employees feel that this is a racial thing because they are the ones most often singled out for this.

9.  Witness believes that there are about 10 or 12 black employees working for the Respondent. He will make the Union facilities available for the EEOC to use to talk to them. He will also research is notes to see what recent interventions he has done on the cp's behalf.

# Exhibit 35
## Incorporated as part of Exhibit 39

# Exhibit 36

# CHARGE OF DISCRIMINATION

| | |
|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA <br> ☒ EEOC 172-A00405 |

_____ and EEOC
State or local Agency, if any

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Mr. Frederick E. Jackson | (814) 452-6163 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 1011 Abbey Lane, Apt. #12, Erie, PA 16502 | | 07/07/1956 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| PHB Die Casting | Cat C (201-500) | (814) 474-5511 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 7900 W. Ridge Road, Fairview, PA 16415 | | 049 |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN <br> ☐ RETALIATION ☐ AGE ☒ DISABILITY ☐ OTHER(Specify) | EARLIEST 12/04/1999 LATEST 03/19/1999 <br> ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)):

1. I have been employed with the Respondent since February 2, 1990, and most recently as Die Casting Production Operator. On December 4, 1998, I was suspended without pay and reinstated February 16, 1999. On March 19, 1999, I was discharged from my position.

2. Elaine Shaffer, Human Resources Representative, informed me that I was suspended for sleeping on the job. In a letter from Ben Hancock, Human Resources Manager, I was informed that I was terminated for threating my supervisor.

3. I believe that the respondent discriminated against me because of my race, black, in violation of Title VII of the Civil Rights Act of 1964 as amended, (Title VII) and my disability, in violation of the Americans with Disabilities Act of 1990 in that similarly situated white employees have been caught sleeping on the job and were either disciplined less harshly and/or not at all. The Respondent was aware of my disability. I did not threaten the foreman and there were no witnesses to the alleged incident. Shortly after I returned to work from my suspension, I was asked to go to another shift which I declined. Mike Little, a Caucasian employee, threatened two co-workers and was not terminated. Mike has also violated other company rules comparable in seriousness to that for which I was discharged and he was disciplined less harshly and/or not at all.

| ☐ I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| | SIGNATURE OF COMPLAINANT <br> *Frederick E Jackson* |
| 11-15-00 *Frederick E Jackson* <br> Date    Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE <br> (Month, day and year) |

EEOC FORM 5 (Rev. 06/99)

RESPONDENT'S COPY

# Exhibit 37

IN-32

## COUNTY OF ERIE

## ERIE COUNTY HUMAN RELATIONS COMMISSION

### COMPLAINT

COMPLAINANT:                    :
**Frederick Jackson**           :
            vs.                 :         Docket No. **01049-WD-75**
RESPONDENT:                     :
**PHB, Incorporated**           :


1.    The complainant herein is:

      Name:___Frederick Jackson_____

      Address:__1011 Abbey Lane Apt 12; Erie, PA 16502_____

      Name:_____

      Address:_____


2.    The respondent herein is:

      Name:_____PHB, Incorporated_____

      Address:____7900 West Ridge Road ; Fairview, PA 16415_____

      Name:_____

      Address:_____

IN-32                                                                (page 2)

3.    I allege the Respondent PHB, Incorporated violated section 5 of the
Pennsylvania Human Relations Act as follows:

A.)    On December 4, 1998 I suffered a diabetic seizure and because of my
       race, I was taunted, harassed, accused of sleeping and subsequently
       suspended from work until February 15, 1999.

       1.    On December 4, foreman Gary Hardick, Pat Widler, and Tom Burger
             found me unconscious in a diabetic coma.

       2.    Gary Hardick, instead of getting help, summoned the union steward and
             told him to wake me up.

       3.    The next day I was suspended from work because Gary Hardick reported
             that I had been found asleep.

       4.    I was reinstated on February 15, 1999 and required to sign strict,
             unequaled terms and conditions of employment.

       5.    Gary Hardick openly stated his preference that I should not be allowed to
             return to work on 2-15-99.

B.)    After my return to work, Hardick began harassing me almost daily with racially
       motivated false accusations and statements.

       1.    Between February 15 and March 13, 1999 I was harassed and accused
             by Hardick on at least four (4) different occasions.

       2.    Accused of horse playing (shooting rubber bands), others committing
             same act were not charged.

       3.    Called in for wearing my coat, (prepared to punch out too soon), when I
             had worn my coat the entire shift.

       4.    Accused of insubordination (refusing to clean work area). No other
             employee was cited for any such thing.

       5.    Falsely accused of not following instructions, (sweeping floor when not
             busy). Others were not required as they were allowed to stand around
             and do nothing.

6.  Gary Hardick made racist statements to me such as, the reason Blacks don't have jobs, they don't do anything. When I was a boy, we called black jelly beans nigger babies. The United States is at war to fight sand niggers.

7.  PHB allows graffiti and derogatory racist slurs to remain written on restrooms walls for indefinite periods. There are no known rules governing this kind of employee behavior.

8.  Gary Hardick often hid behind machines and watched me performing my job, this was not done to White workers.

C.)  Bob Strattazer, shop foreman, advised me to move to another shift because Gary was out to get me.

1.  I told Mr. Strattazer that my family did not own but one vehicle and since I had done nothing wrong, Gary was not going to force me off my shift.

D.)  On March 19, 1999 I was terminated for threatening Gary Hardick, my foreman.

1.  Gary Hardick accused me of verbally threatening him on a night when I had absolutely no verbal exchange with him.

2.  I was surrounded by witnesses all night, no one observed or overheard any verbal exchange with him.

3.  I was falsely accused and discharged because of my race.

E.)  PHB terminated me because of my race and retained two White employees who were accused of the same behavior.

1.  Mike Little was accused of threatening Mike Campbell, October - November 1998, neither were disciplined. Several witnesses will vouch for me that between December 1998 and March 1999, Gary Hardick mocked me because of my disability, diabetes, harassed me constantly and terminated my employment on lies because of my race, Black.

IN-32

(page 3)

4.    The allegations in paragraph 3 here of constitute(s) an unlawful discriminatory practice or unlawful practice and is in violation of:

   ( )    Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s)_____

         **Erie County Human Relations Commission Ordinance Number 80, 1993, Section -**

_____

   ( )    Section 5.1 Subsection(s)_____

   ( )    Section 5.2 Subsection(s)_____

   ( )    Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766 as amended).  Section 4 Subsection(s)_____

5.    The complainant(s) allege(s) that the alleged unlawful discriminatory practice(s):

    Is/are of a continuing nature which has/have persisted up to and including the present time.

6.    No other action based on the aforesaid allegations has been instituted by the complainant in any court or before any other commission within the Commonwealth of Pennsylvania except as follows:

   ( )    None

   ( )    This charge will be filed with the PA real Estate Commission under the PA Licensing and Registration Act Section 604.

   ( )    This charge will be referred to EEOC for the purpose of dual filing.

   ( )    This charge will be referred to HUD for the purpose of dual filing.

7.    The complainant(s) pray that the respondent(s) be required to:

   ( a )   Make the complainant(s) whole, including but not limited to an award of back pay, hiring, reinstatement, upgrading and restoration of job benefits; or to provide housing sought or the loan sought in connection with housing.

   ( b )   Eliminate all unlawful discriminatory practice(s) and procedure(s).

   ( c )   Remedy the discriminatory effect of past practice(s) and procedure(s).

   ( d )   Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

   ( e )   Provide such further relief as the Commission deems necessary and appropriate.

IN-32                                                                    (page 4)

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 PA. C.S. Section 4904, relating to unsworn falsification to authorities.

_4/30/99_
(Date Signed)

_Frederick E. Jackson_
(Signature)

_452-6163_
(Telephone Number)

_1011 Abbey Lane apt 12_
(Address)

_Erie, PA. 16502_
(City, State and Zip Code)

I hereby certify that I have this day served the foregoing document upon all parties of record in this proceeding in accordance with the requirements of 1 Pa. Code 33.31 (relating to service by an agency).

Dated at this _30th_ day of _April_ , 19 _99_

_Sandra L. Deider_
(Signature)

# Exhibit 38



PHB, Inc.
Training list by course title

| Full Name Backward | Course Title | Completion Date |
|---|---|---|
| Anderson, Thomas F | Harassment Policy | 10-30-2003 |
| Andrews, David A | Sexual Harassment In The Workplace | 06-08-1999 |
| Arkley, John P | Harassment Policy | 12-29-2003 |
| Buchholz, Paul C | General-Harassment Policy | 08-04-2004 |
| Campbell, Matthew P | Harassment Policy | 10-29-2003 |
| Dahlkemper, Thomas E | Sexual Harassment In The Workplace | 06-03-1999 |
| Dietrich, Danielle | General-Harassment Policy | 10-04-2004 |
| Estok, Andrew F | Sexual Harassment In The Workplace | 06-02-1999 |
| Finney, Douglas H | General-Harassment Policy | 07-12-2004 |
| Fullom, Eric L | Harassment Policy | 10-29-2003 |
| Gebhardt, Gary C | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Godfrey, David L | Harassment Policy | 10-29-2003 |
| Gregory, Gerald R | Harassment Policy | 10-30-2003 |
| Grizanti, Vincent C | General-Harassment Policy | 08-20-2004 |
| Gualtieri, Michael G | General-Harassment Policy | 06-21-2004 |
| Hanisek, Keith D | Harassment Policy | 10-30-2003 |
| Hodgson, John C | Sexual Harassment In The Workplace | 06-08-1999 |
| Hosack, John C | Harassment Policy | 10-29-2003 |
| Imboden, Michelle A | Harassment Policy | 01-26-2004 |
| Jarrett, Gordon L | Harassment Policy | 10-30-2003 |
| Krzewinski, Kevin R | General-Harassment Policy | 08-10-2004 |
| Long, William J | Sexual Harassment In The Workplace | 06-08-1999 |
| MAHER    , MATTHEW   M | Sexual Harassment In The Workplace | 06-02-1999 |
| Meeker, Garold H | Harassment Policy | 10-30-2003 |
| MERRITT    , CHARLES   E | Sexual Harassment In The Workplace | 06-03-1999 |
| MOOK    , RUSSEL   A | Harassment Policy | 10-30-2003 |
| Mooney, Dennis C | Harassment Policy | 10-30-2003 |
| NEARHOOF    , TERRY   L | Sexual Harassment In The Workplace | 06-03-1999 |
| Pace, William G | General-Harassment Policy | 06-28-2004 |
| Peyton, Charles L | General-Harassment Policy | 07-16-2004 |
| Plyler, Brian S | General-Harassment Policy | 01-26-2004 |
| Pretz, Michael R | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Riu, Stephen M | General-Harassment Policy | 11-24-2003 |
| Shaffer, Donald H | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Smock, Laura A | Sexual Harassment In The Workplace | 06-03-1999 |
| Thayer, Terry M | General-Harassment Policy | 05-24-2004 |
| Thompson, Dennis G | Harassment Policy | 10-30-2003 |
| Waddell, John W | Sexual Harassment In The Workplace | 06-03-1999 |
| Waller, William L | Harassment Policy | 12-29-2003 |
| Yorko, Kenneth A | Harassment Policy | 12-29-2003 |
| Zaunegger, Michael A | General-Harassment Policy | 06-24-2004 |
| Count | | |
| 44 | | |
| Grand Count | | |
| 44 | | |

000000130



PHB, Inc.
Training list by course title

| Full Name Backward | Course Title | Completion Date |
|---|---|---|
| Adams, Nancy | General-Harassment Policy | 06-28-2004 |
| Adolphson, John S | General-Harassment Policy | 09-09-2004 |
| Ahenger, Robert | General-Harassment Policy | 02-23-2004 |
| Aleksiewicz, Ronald J | Sexual Harassment In The Workplace | 06-08-1999 |
| Al-Isa, Ali | General-Harassment Policy | 10-04-2004 |
| Alloway, Keith J | General-Harassment Policy | 01-31-2005 |
| Anderson, Charles W | Sexual Harassment In The Workplace | 06-08-1999 |
| Anderson, Thomas F | Harassment Policy | 10-30-2003 |
| Andrews, Rachel J | General-Harassment Policy | 07-30-2004 |
| Angerer, Patrick W | Harassment Policy | 10-29-2003 |
| Antolik, Shelly M | Harassment Policy | 10-29-2003 |
|  | Sexual Harassment In The Workplace | 06-02-1999 |
| Atkinson, Steven A | General-Harassment Policy | 11-11-2004 |
| Bahny, Pamela A | Harassment Policy | 10-30-2003 |
|  | Sexual Harassment In The Workplace | 06-02-1999 |
| Bahny, Stephen R | Harassment Policy | 10-30-2003 |
|  | Sexual Harassment In The Workplace | 06-03-1999 |
| Baker, Richard H | Harassment Policy | 10-29-2003 |
| Banks, George J | Harassment Policy | 10-30-2003 |
| Barko, Louis G | Harassment Policy | 10-29-2003 |
| Barko, Robert S | Sexual Harassment In The Workplace | 06-02-1999 |
| Bartlett, Craig R | Harassment Policy | 10-29-2003 |
| Barton, Rodney L | Harassment Policy | 10-29-2003 |
|  | Sexual Harassment In The Workplace | 06-03-1999 |
| Barton, Toni M | Harassment Policy | 10-30-2003 |
| Bartosek, Richard A | Sexual Harassment In The Workplace | 06-03-1999 |
| Bateman, Douglas K | Harassment Policy | 10-29-2003 |
| Bateman, Thomas E | General-Harassment Policy | 03-17-2004 |
| Beiter, Russell R | Harassment Policy | 04-25-2004 |
| Belfiore, Daniel L | General-Harassment Policy | 08-30-2004 |
| Bell, Jack T | General-Harassment Policy | 10-08-2004 |
| Bernard, Catherine A | Harassment Policy | 10-30-2003 |
| Bernardini, Frances - | Harassment Policy | 10-30-2003 |
| Bernatowicz, Owen W | General-Harassment Policy | 03-15-2004 |
| Berry, Rodney W | Harassment Policy | 10-30-2003 |
| Bible, Gregory A | Harassment Policy | 10-29-2003 |
|  | Sexual Harassment In The Workplace | 06-08-1999 |
| Biebel, Robert B | General-Harassment Policy | 07-26-2004 |
| Biggie, Lawrence J | Harassment Policy | 10-30-2003 |
|  | Sexual Harassment In The Workplace | 06-02-1999 |
| Bish, Joseph L | General-Harassment Policy | 09-09-2004 |
| Bishop, Randall K | General-Harassment Policy | 09-13-2004 |
| Blass, Frederick A | Harassment Policy | 10-30-2003 |
| Blicha, Amy K | Harassment Policy | 03-29-2004 |
| Bloom, John C | General-Harassment Policy | 12-29-2003 |
| Bond, Clifford L | Harassment Policy | 10-29-2003 |
| Bova, John M | General-Harassment Policy | 06-21-2004 |
| Bowen, Richard T | Harassment Policy | 10-30-2003 |
| Brandon, James R | Harassment Policy | 10-29-2003 |
|  | Sexual Harassment In The Workplace | 06-02-1999 |
| Braswell, Bobby C | General-Harassment Policy | 07-26-2004 |
| Brockett, Linda M | General-Harassment Policy | 03-08-2004 |
| Buhl, Richard W | General-Harassment Policy | 08-30-2004 |
| Bushyeager, David A | Harassment Policy | 10-30-2003 |
| Butch, James L | Harassment Policy | 10-29-2003 |

000000131

Produced by People-Trak



PHB, Inc.

Training list by course title

| Full Name Backward | Course Title | Completion Date |
|---|---|---|
| Butch, James L | Sexual Harassment In The Workplace | 06-08-1999 |
| Butler, Ronald E | Harassment Policy | 10-29-2003 |
| Byers, Christopher G | Harassment Policy | 10-30-2003 |
| Calladine, David C | Harassment Policy | 10-29-2003 |
| Camp, Patrick R | Harassment Policy | 10-29-2003 |
| Campbell, Kathleen M | Harassment Policy | 10-30-2003 |
| Campbell, Michael J | Harassment Policy | 10-29-2003 |
| Carroll, Matthew | General-Harassment Policy | 01-26-2004 |
| Casbohm, Eric J | General-Harassment Policy | 06-10-2004 |
| Chaffee, Donald J | General-Harassment Policy | 05-20-2004 |
| Cherry, William L | Harassment Policy | 10-29-2003 |
| Clark, Alan R | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 12-10-1991 |
| Clinger, John C | General-Harassment Policy | 10-29-2003 |
| Colonna, Michael F | Harassment Policy | 10-30-2003 |
| Comstock, Joseph A | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Cornell, Mark W | Harassment Policy | 10-30-2003 |
| Cronin, Michael S | Harassment Policy | 10-30-2003 |
| Crosby, Tobren C | Harassment Policy | 10-30-2003 |
| Dana, Robert L | Harassment Policy | 10-30-2003 |
| Daniels, Todd R | Harassment Policy | 10-30-2003 |
| Darr, William R | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Deas, Jennifer L | General-Harassment Policy | 08-30-2004 |
| Delavern, William R. | General-Harassment Policy | 01-12-2004 |
| Dersch, Lloyd S | Harassment Policy | 10-29-2003 |
| Dhumeen, Hamid D | General-Harassment Policy | 12-29-2003 |
| Dibble, Karen A | Harassment Policy | 10-30-2003 |
| Dick, William | General-Harassment Policy | 10-18-2004 |
| Diehl, William M | Harassment Policy | 10-29-2003 |
| Difilippo, Michael A | General-Harassment Policy | 09-14-2004 |
| Digello, David A | Harassment Policy | 10-30-2003 |
| Dinicola, David J | Harassment Policy | 10-30-2003 |
| Divido, Michael | General-Harassment Policy | 07-26-2004 |
| Dombrowski, Nancy J | Harassment Policy | 05-03-2004 |
| Donnell, Trevor A | Harassment Policy | 10-30-2003 |
| Donnell, William C | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Doritty, Charles A | Harassment Policy | 10-29-2003 |
| Drury, Michael J | General-Harassment Policy | 03-17-2004 |
| Dudzinski, Michael J | General-Harassment Policy | 12-29-2003 |
| Dunn, David G | Harassment Policy | 10-30-2003 |
| Ebisch, Thomas R. | General-Harassment Policy | 01-12-2004 |
| Edmiston, Ross N | General-Harassment Policy | 10-31-2003 |
| Edwards, Kyle A | General-Harassment Policy | 11-09-2004 |
| Egli, Frank J | Harassment Policy | 03-24-2004 |
| Elder, Edith F | Harassment Policy | 10-29-2003 |
| Elder, Ray D | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Elliott, Misty M | General-Harassment Policy | 08-30-2004 |
| Ely, Leonard L | Harassment Policy | 10-29-2003 |
| Ely, Lysle A | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| English, Jeffrey A | Harassment Policy | 10-29-2003 |

Produced by People-Trak



PHB, Inc.
Training list by course title

| Full Name Backward | Course Title | Completion Date |
|---|---|---|
| Erickson, Douglas J | General-Harassment Policy | 10-04-2004 |
| Fahey, Warren T | Harassment Policy | 10-30-2003 |
| Farley, Lee N | Harassment Policy | 10-29-2003 |
| Fellows, Jesse D | Sexual Harassment In The Workplace | 06-03-1999 |
| Fellows, Justin | General-Harassment Policy | 03-01-2004 |
| Fellows, Richard D | Harassment Policy | 10-29-2003 |
| Ferguson, Dorothy G | Harassment Policy | 10-30-2003 |
| Ferrara, Tony P | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Fetterolf, Russell L | Sexual Harassment In The Workplace | 06-03-1999 |
| Field, James A | Harassment Policy | 10-29-2003 |
| Field, Kelly J | Harassment Policy | 10-30-2003 |
| Figurski, John J | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Fiolek, Kyle D | General-Harassment Policy | 10-29-2003 |
| Fiolek, Paul M | Harassment Policy | 10-29-2003 |
| Fish, Michelle | General-Harassment Policy | 11-15-2004 |
| Forinash, Laurie K | Harassment Policy | 10-29-2003 |
| Fortney, Eric W. | General-Harassment Policy | 01-12-2004 |
| Fullom, Eric L | Harassment Policy | 10-29-2003 |
| Gant, Frank W | Harassment Policy | 10-30-2003 |
| Gariepy, Kenneth P | General-Harassment Policy | 07-06-2004 |
| Gehrlein, Donald E | General-Harassment Policy | 06-28-2004 |
| Giaimo, Ruth Ann | General-Harassment Policy | 01-03-2005 |
| Giddings, Howard R | Harassment Policy | 10-29-2003 |
| Glavasevic, Kemo | General-Harassment Policy | 03-22-2004 |
| Godfrey, David L | Harassment Policy | 10-29-2003 |
| Gordon, Timothy J | Harassment Policy | 10-30-2003 |
| Gorecki, Edward J | General-Harassment Policy | 07-06-2004 |
| Gorny, David F | General-Harassment Policy | 10-30-2003 |
| Graden, Robert A | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Graff, Jacqueline | Harassment Policy | 10-30-2003 |
| Graff, Ronald G | Harassment Policy | 03-17-2004 |
| Graves, Bruce E | Harassment Policy | 10-30-2003 |
| Gregory, Gerald R | Harassment Policy | 10-30-2003 |
| Gresh, Edward J | Harassment Policy | 10-29-2003 |
| Guianen, Ronald C | General-Harassment Policy | 09-07-2004 |
| Haffley, Aaron D | Sexual Harassment In The Workplace | 06-08-1999 |
| Hagmaier, David J | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-08-1999 |
| Haibach, Harold P | Harassment Policy | 10-30-2003 |
| Hale, Anthony | General-Harassment Policy | 12-15-2004 |
| Hall, Ernest H | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Hall, John F | General-Harassment Policy | 10-30-2003 |
| Hancock, James B | General-Harassment Policy | 10-29-2005 |
| Hanisek, Eileen M | Sexual Harassment In The Workplace | 04-09-1999 |
| | Sexual Harassment In The Workplace | 12-10-1991 |
| Hanson, Dale | General-Harassment Policy | 07-06-2004 |
| Hardik, Gary P | Sexual Harassment In The Workplace | 06-02-1999 |
| Harvey, Douglas A | Harassment Policy | 10-29-2003 |
| Hayes, Shawn E | Harassment Policy | 10-29-2003 |
| Heffren, Lawrence R | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |

000000133

Produced by People-Trak



PHB, Inc.
Training list by course title

| Full Name Backward | Course Title | Completion Date |
|---|---|---|
| Heffner, Mark A | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Heinonen, Daniel | General-Harassment Policy | 12-13-2004 |
| Henderson, David C | Harassment Policy | 10-30-2003 |
| Herrmann, Howard J | General-Harassment Policy | 10-01-2004 |
| Hilbert, William M | General-Harassment Policy | 10-29-2003 |
| Holden, Mark T | Harassment Policy | 10-29-2003 |
| Homan, Jay | General-Harassment Policy | 12-15-2004 |
| Hopkins, Roger L | Harassment Policy | 10-29-2003 |
| Horvath, John Z | Harassment Policy | 11-12-2003 |
| Hosack, John C | Harassment Policy | 10-29-2003 |
| Hough, Robert A | General-Harassment Policy | 06-08-2004 |
| Hudacky, Kirk T | General-Harassment Policy | 09-13-2004 |
| Huston, David H | General-Harassment Policy | 08-17-2004 |
| Iacobozzi, John T | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Janoski, Andrew J | Harassment Policy | 10-29-2003 |
| Johnson, Paul W | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-08-1999 |
| Johnson, Shawn W | Harassment Policy | 10-30-2003 |
| Joslin, Donna H | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Keiper, Robert H | Sexual Harassment In The Workplace | 06-08-1999 |
| Kelley, Thomas E | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Kerner, Frederick A | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Ketcham, Daniel L | General-Harassment Policy | 09-24-2004 |
| Kibbe, Michael J | General-Harassment Policy | 06-10-2004 |
| Kidder, Gary C | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| King, Dale E | General-Harassment Policy | 05-04-2004 |
| King, George H | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| King, J Keith | Harassment Policy | 10-30-2003 |
| Kinnear, Stephen T | Harassment Policy | 10-29-2003 |
| Klein, Kenneth C | Harassment Policy | 04-02-2004 |
| Kleshchevnikov, Andrey I | Harassment Policy | 03-18-2004 |
| Klobusnik, Michael | General-Harassment Policy | 05-13-2004 |
| Knapp, Alan L | Harassment Policy | 10-30-2003 |
| Komaromy, Robert V | Harassment Policy | 10-30-2003 |
| Korynoski, John L | Harassment Policy | 05-01-2004 |
| Krayeski, James A | Harassment Policy | 10-29-2003 |
| Krysiak, John J | General-Harassment Policy | 11-01-2004 |
| Kuhn, Daniel E | Harassment Policy | 04-02-2004 |
| Kupniewski, Kevin J | General-Harassment Policy | 11-29-2004 |
| Kuzma, Patricia L | Harassment Policy | 10-30-2003 |
| Kuzma, Timothy A | Harassment Policy | 10-30-2003 |
| Kuzmin, David M | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Laguardia, Karen M | Harassment Policy | 10-30-2003 |
| Landis, Gerald W | General-Harassment Policy | 06-25-2004 |
| Langer, Daniel J | Harassment Policy | 10-30-2003 |
| Laprice, Richard J | Harassment Policy | 10-30-2003 |
| Lavery, Terry E | Harassment Policy | 10-30-2003 |

000000134



PHB, Inc.

Training list by course title

| Full Name Backward | Course Title | Completion Date |
| --- | --- | --- |
| Layton, Brian | General-Harassment Policy | 12-29-2003 |
| Lemmon, Laura A | Harassment Policy | 10-29-2003 |
| Lewis, Jay D | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-08-1999 |
| Lewis, Ronnie L | General-Harassment Policy | 08-13-2004 |
| Licsko, Christine H | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Lindsley, Peter C | Harassment Policy | 10-29-2003 |
| List, John C | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Little, Daniel W | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Little, William J | Harassment Policy | 10-29-2003 |
| Lobaugh, Ricky D | Harassment Policy | 10-30-2003 |
| Lopez, James A | Harassment Policy | 10-30-2003 |
| Lowe, Christopher G | Sexual Harassment In The Workplace | 06-03-1999 |
| Lunger, Kenneth L | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-08-1999 |
| Lynch, James T | Harassment Policy | 10-29-2003 |
| MacHinski, Scot A | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| MacKes, Lee A | General-Harassment Policy | 07-06-2004 |
| Maisner, Michael F | General-Harassment Policy | 06-21-2004 |
| Mando, Gregory A | Harassment Policy | 12-15-2003 |
| Marrale, David A | Harassment Policy | 10-29-2003 |
| Marzka, Richard A | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Mayes, Elmer Z | Harassment Policy | 10-30-2003 |
| Mayes, Joseph J | Harassment Policy | 10-30-2003 |
| McCormick, Peter G | Harassment Policy | 10-30-2003 |
| McGaughey, J Michael | General-Harassment Policy | 08-31-2004 |
| McGee, John J | Harassment Policy | 10-29-2003 |
| McGuire, Erwin W | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| McInchak, Michael S | General-Harassment Policy | 10-29-2003 |
| McLaughlin, Gregory J | Sexual Harassment In The Workplace | 06-03-1999 |
| Miller, Harry N | General-Harassment Policy | 05-12-2004 |
| Mitchell, Roger Perry | General-Harassment Policy | 10-01-2004 |
| Mohr, Larry C | Harassment Policy | 10-29-2003 |
| Mooney, Christopher J | Harassment Policy | 10-30-2003 |
| Mooney, Leroy C | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Mundkowsky, William E | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Myers, Alan G | Harassment Policy | 10-29-2003 |
| Nickerson, Alton W | General-Harassment Policy | 10-29-2003 |
| Nine, Mark S | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Norton, Mark T | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-08-1999 |
| Olinger, Robert C | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Oliver, Clarence G | Harassment Policy | 10-29-2003 |
| Olmstead, Michael A | Harassment Policy | 10-29-2003 |
| Pacansky, Michael G | Harassment Policy | 10-30-2003 |

000000135

Produced by People-Trak



PHB, Inc.
Training list by course title

| Full Name Backward | Course Title | Completion Date |
|---|---|---|
| Pace, William G | General-Harassment Policy | 06-28-2004 |
| Paris, Geraldine L | General-Harassment Policy | 10-15-2003 |
| Parker, Charles W | Harassment Policy | 10-29-2003 |
|  | Sexual Harassment In The Workplace | 06-02-1999 |
| Parker, Jeffrey C | Harassment Policy | 10-30-2003 |
|  | Sexual Harassment In The Workplace | 06-02-1999 |
| Parker, Jonas A | Harassment Policy | 10-29-2003 |
| Parrish, David L | Sexual Harassment In The Workplace | 12-10-1991 |
| Perez, Jesus V | Harassment Policy | 10-29-2003 |
| Phelps, Patrick A | General-Harassment Policy | 12-29-2003 |
| Phillips, Wayne G | Sexual Harassment In The Workplace | 06-02-1999 |
| Phillis, Jean M | Harassment Policy | 10-29-2003 |
| Pietrasiewicz, Shannon R | General-Harassment Policy | 09-01-2004 |
| Pintea, Larie R | Harassment Policy | 10-30-2003 |
| Pointer, Richard | General-Harassment Policy | 11-05-2004 |
| Polanski, Frank R | Harassment Policy | 10-30-2003 |
| Pollick, Frank W | Harassment Policy | 10-30-2003 |
| Porsch, Gary C | Harassment Policy | 10-29-2003 |
| Porter, Clyde W | Harassment Policy | 10-29-2003 |
| Porter, Lynn A | Harassment Policy | 10-29-2003 |
| Powell, Robert C | Harassment Policy | 10-30-2003 |
| Prichard, John H | Harassment Policy | 04-02-2004 |
| Ratajczak, James J | General-Harassment Policy | 03-17-2004 |
| Reinwald, James | Harassment Policy | 10-30-2003 |
| Rocco, David J | Harassment Policy | 10-30-2003 |
| Rodgers, David E | Harassment Policy | 10-30-2003 |
| Roemer, John G | Harassment Policy | 10-30-2003 |
| Rorabaugh, Cecil L | Harassment Policy | 10-30-2003 |
| Rose, Kevin R | Harassment Policy | 03-17-2004 |
| Roueche, James M | General-Harassment Policy | 06-10-2004 |
| Russin, Scott J | Sexual Harassment In The Workplace | 06-08-1999 |
| Ryan, Rex A | Sexual Harassment In The Workplace | 06-03-1999 |
| Ryan, Timothy M | Harassment Policy | 10-29-2003 |
| Sabol, Carl A | General-Harassment Policy | 07-27-2004 |
| Sabol, Diann J | Harassment Policy | 10-30-2003 |
| Sanchez, Javier - | Harassment Policy | 10-29-2003 |
| Sargent, Daniel F | Harassment Policy | 10-30-2003 |
|  | Sexual Harassment In The Workplace | 06-03-1999 |
| Sayers, Ronald R | Harassment Policy | 10-30-2003 |
|  | Sexual Harassment In The Workplace | 06-08-1999 |
| Schermer, William C | Harassment Policy | 10-30-2003 |
| Scott, James J | Harassment Policy | 10-30-2003 |
|  | Sexual Harassment In The Workplace | 06-02-1999 |
| Scott, Patricia G | Harassment Policy | 10-30-2003 |
| Seyler, Paul R | Harassment Policy | 10-29-2003 |
|  | Sexual Harassment In The Workplace | 06-03-1999 |
| Shallenbarger, Edward J | Harassment Policy | 10-30-2003 |
|  | Sexual Harassment In The Workplace | 06-03-1999 |
| Sharp, Ronald B | Harassment Policy | 10-30-2003 |
|  | Sexual Harassment In The Workplace | 06-03-1999 |
| Shearer, Timothy C | General-Harassment Policy | 08-24-2004 |
| Sheriff, Grant E | Harassment Policy | 10-30-2003 |
|  | Sexual Harassment In The Workplace | 06-02-1999 |
| Shields, Jamal A | Harassment Policy | 10-29-2003 |
| Silbaugh, James D | General-Harassment Policy | 05-25-2004 |

02-15-2005

Produced by People-Trax

000000136



PHB, Inc.

Training list by course title

| Full Name Backward | Course Title | Completion Date |
|---|---|---|
| Silvis, Jesse M | General-Harassment Policy | 06-21-2004 |
| Smith, Charlene C | Harassment Policy | 10-30-2003 |
| Smith, Charles W | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-08-1999 |
| Smith, Dennis D | General-Harassment Policy | 11-18-2004 |
| Smith, Jay A | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-08-1999 |
| Smith, Jeffrey B | General-Harassment Policy | 07-06-2004 |
| Smith, Loren A | Harassment Policy | 10-30-2003 |
| Smith, Richard A | Sexual Harassment In The Workplace | 06-03-1999 |
| Smith, Robert L | Harassment Policy | 10-29-2003 |
| Soudan, Bradley A | General-Harassment Policy | 11-17-2003 |
| Spaulding, Mark D | Harassment Policy | 10-29-2003 |
| Spencer, William M | General-Harassment Policy | 07-15-2004 |
| Spinks, William C | Harassment Policy | 10-29-2003 |
| Stafford, David G | Harassment Policy | 10-30-2003 |
| Stellmach, Bruce A | Harassment Policy | 10-29-2003 |
| Stellmach, Duane A | Harassment Policy | 10-30-2003 |
| Stellmach, Judith A | Harassment Policy | 10-29-2003 |
| Stiles, Charles | Harassment Policy | 10-29-2003 |
| Strader, Randy L | Harassment Policy | 10-29-2003 |
| Straw, Gregory L | Harassment Policy | 10-30-2003 |
| Strazisar, David E | General-Harassment Policy | 10-29-2003 |
| Strazisar, Robert F | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Surdy, Karen L | General-Harassment Policy | 02-02-2004 |
| Sutter, Melissa S | Harassment Policy | 10-30-2003 |
| Swaney, James K | Harassment Policy | 10-30-2003 |
| Szczutkowski, Ernest John | General-Harassment Policy | 11-30-2004 |
| Szymanski, Pamela L | Harassment Policy | 10-29-2003 |
| Tagle, Alfonso C | Harassment Policy | 10-29-2003 |
| Taylor, Lisa A | Harassment Policy | 10-29-2003 |
| Taylor, Richard L | Harassment Policy | 03-24-2004 |
| Taylor, Richard M | Harassment Policy | 10-30-2003 |
| Thompson, Charles A | Sexual Harassment In The Workplace | 06-02-1999 |
| Thompson, Thomas R | Sexual Harassment In The Workplace | 06-03-1999 |
| Thornton, Theron | Harassment Policy | 10-30-2003 |
| Thorr, Michael W | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Throop, Terry L | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-08-1999 |
| Tobolewski, Mark D | Harassment Policy | 10-30-2003 |
| Todd, Russell C | Harassment Policy | 10-30-2003 |
| Tolhurst, Harland R | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Tomlinson, Bradley T | Harassment Policy | 10-30-2003 |
| Turner, Ralph E | Harassment Policy | 10-29-2003 |
| Unger, James W | Sexual Harassment In The Workplace | 06-08-1999 |
| Uzelac, Christopher Saua | General-Harassment Policy | 02-02-2004 |
| Vacco, Edwin A | General-Harassment Policy | 10-29-2003 |
| Van Meter, Frederick W | General-Harassment Policy | 03-17-2004 |
| Vanek, Aaron J | Harassment Policy | 10-30-2003 |
| Vereb, Marie A | General-Harassment Policy | 10-30-2003 |
| Vojtko, Roger W | Harassment Policy | 10-30-2003 |
| Watson, Robert M | Harassment Policy | 10-30-2003 |

02-15-2005

000000137

Produced by People-Trak



PHB, Inc.
Training list by course title

| Full Name Backward | Course Title | Completion Date |
|---|---|---|
| Weaver, Phillip J | Harassment Policy | 10-30-2003 |
| Weese, R Mike | General-Harassment Policy | 10-06-2004 |
| Weidler, Michael L | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Weidler, Patrick E | Sexual Harassment In The Workplace | 06-02-1999 |
| Weir, Walter R | Harassment Policy | 10-29-2003 |
| Welton, Richard | General-Harassment Policy | 01-03-2005 |
| Weyeneth, William G | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Williams, Dale E | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Williams, Earnest | General-Harassment Policy | 10-27-2003 |
| Wise, Bryan R | Harassment Policy | 10-29-2003 |
| Wood, Stephen D | Harassment Policy | 10-29-2003 |
| Woods, Richard J | Harassment Policy | 10-29-2003 |
| Wygant, Ronnie F | Harassment Policy | 10-30-2003 |
| Yaros, Louis C | Harassment Policy | 10-30-2003 |
| York, Trevor E | Harassment Policy | 10-29-2003 |
| Zeigler, Bruce M | Harassment Policy | 10-29-2003 |
| Zimmerman, Daniel A | Harassment Policy | 10-29-2003 |
| Zukowski, Richard M | Harassment Policy | 10-30-2003 |
| Count: 406 | | |
| Grand Count 406 | | |

000000138

TRAINING TOPIC: HARASSMENT TRAINING    DATE: 10/30/03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.    TIME: 9:00 a.m.

**I have attended the above training and understand the contents that were presented.**

| | CLOCK# | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 01618 | Richard La Price | MIS | |
| 2 | 11-027 | Michael Paciansky | Q C | |
| 3 | 70025 | DAVID R. STRUBEL | Q.A. | |
| 4 | 01-474 | Todd Daniels | QA | |
| 5 | 01556 | DAVE FRITTS | SEEE-IV | |
| 6 | 01622 | Joseph T. Mayes | SEEE-IV | |
| 7 | 70-045 | DAVID J. Rocco | SEEE-IV | |
| 8 | 70632 | Russell C. Todd | M.E. | |
| 9 | 01779 | PETE McCORMICK | SEEE-IV | |
| 10 | 01589 | FRANK POLANSKI | SEEE-IV | |
| 11 | 20201 | Bob Konversny | QA | |
| 12 | 10078 | Roger Vajtko | QA | |
| 13 | 70079 | DAVID RODGERS | SEEE IV | |
| 14 | 05215 | Nora King | SEEE IV | |
| 15 | 05543 | Theron Thornton | SEEE-IV | |
| 16 | 01790 | Melissa Sutter | Purch/HR | |
| 17 | | Michele Imbardu | SEEE-IV | |
| 18 | 01383 | Patricia Scott | Purchasing | |
| 19 | 20014 | David Stafford | Purchasing | |
| 20 | 01776 | JACQUELINE GRAFF | PURCHASING | |
| 21 | 01709 | Marie Vorab | Accounting | |
| 22 | 70011 | Cathy Bernard | MIS | |

MEETING.ATT.doc

HR.TRNG.0001:2/2000

TRAINING TOPIC: HARASSMENT TRAINING    DATE: 10/30/03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.    TIME: 9:00 a.m.

**I have attended the above training and understand the contents that were presented.**

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 70-056 | DAVID KUZMIN | ENGINEERING | |
| 2 | 10-076 | DENNIS THOMPSON | SEE IV | |
| 3 | 04060 | LARRY BIGGIE | SEE IV | |
| 4 | 01467 | TIM KUZMA | ENGR | |
| 5 | 04166 | FRANK GANT | DESIGNER | |
| 6 | 01531 | SHAWN JOHNSON | ENGR | |
| 7 | 01631 | Bill Darr | QC | |
| 8 | 21010 | TERRY LAVERY | QA | |
| 9 | 05055 | Al Clark | Mfg. Eng. | |
| 10 | 26-033 | Denny Mooney | ME Dept | |
| 11 | 01734 | David D. Belle | Data Center | |
| 12 | 10040 | Glenn STELLMACH | MFG ENGR | |
| 13 | 01360 | Rik Zubarik | Manu Eng | |
| 14 | 05383 | Cheryl Ferguson | Acct | |
| 15 | 01315 | Marlene Smith | Acct | |
| 16 | 05639 | KAREN A. DIBBLE | Accounting | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |

MEETING.ATT.doc                    HR.TRNG.0001:2:2000



PHB, Inc.
Training list by course title

| Full Name Backward | Course Title | Completion Date |
|---|---|---|
| Adams, Nancy | General-Harassment Policy | 06-28-2004 |
| Adolphson, John S | General-Harassment Policy | 09-09-2004 |
| Ahenger, Robert | General-Harassment Policy | 02-23-2004 |
| Aleksiewicz, Ronald J | Sexual Harassment In The Workplace | 06-08-1999 |
| Al-Isa, Ali | General-Harassment Policy | 10-04-2004 |
| Alloway, Keith J | General-Harassment Policy | 01-31-2005 |
| Anderson, Charles W | Sexual Harassment In The Workplace | 06-08-1999 |
| Anderson, Thomas F | Harassment Policy | 10-30-2003 |
| Andrews, Rachel J | General-Harassment Policy | 07-30-2004 |
| Angerer, Patrick W | Harassment Policy | 10-29-2003 |
| Antolik, Shelly M | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Atkinson, Steven A | General-Harassment Policy | 11-11-2004 |
| Bahny, Pamela A | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Bahny, Stephen R | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Baker, Richard H | Harassment Policy | 10-29-2003 |
| Banks, George J | Harassment Policy | 10-30-2003 |
| Barko, Louis G | Harassment Policy | 10-29-2003 |
| Barko, Robert S | Sexual Harassment In The Workplace | 06-02-1999 |
| Bartlett, Craig R | Harassment Policy | 10-29-2003 |
| Barton, Rodney L | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Barton, Toni M | Harassment Policy | 10-30-2003 |
| Bartosek, Richard A | Sexual Harassment In The Workplace | 06-03-1999 |
| Bateman, Douglas K | Harassment Policy | 10-29-2003 |
| Bateman, Thomas E | General-Harassment Policy | 03-17-2004 |
| Beiter, Russell R | Harassment Policy | 04-25-2004 |
| Belfiore, Daniel L | General-Harassment Policy | 08-30-2004 |
| Bell, Jack T | General-Harassment Policy | 10-08-2004 |
| Bernard, Catherine A | Harassment Policy | 10-30-2003 |
| Bernardini, Frances - | Harassment Policy | 10-30-2003 |
| Bernatowicz, Owen W | General-Harassment Policy | 03-15-2004 |
| Berry, Rodney W | Harassment Policy | 10-30-2003 |
| Bible, Gregory A | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-08-1999 |
| Biebel, Robert B | General-Harassment Policy | 07-26-2004 |
| Biggie, Lawrence J | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Bish, Joseph L | General-Harassment Policy | 09-09-2004 |
| Bishop, Randall K | General-Harassment Policy | 09-13-2004 |
| Blass, Frederick A | Harassment Policy | 10-30-2003 |
| Blicha, Amy K | Harassment Policy | 03-29-2004 |
| Bloom, John C | General-Harassment Policy | 12-29-2003 |
| Bond, Clifford L | Harassment Policy | 10-29-2003 |
| Bova, John M | General-Harassment Policy | 06-21-2004 |
| Bowen, Richard T | Harassment Policy | 10-30-2003 |
| Brandon, James R | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Braswell, Bobby C | General-Harassment Policy | 07-26-2004 |
| Brockett, Linda M | General-Harassment Policy | 03-08-2004 |
| Buhl, Richard W | General-Harassment Policy | 08-30-2004 |
| Bushyeager, David A | Harassment Policy | 10-30-2003 |
| Butch, James L | Harassment Policy | 10-29-2003 |

02-15-2005

Produced by People-Tree

000000159



PHB, Inc.
Training list by course title

| Full Name Backward | Course Title | Completion Date |
|---|---|---|
| Butch, James L | Sexual Harassment In The Workplace | 06-08-1999 |
| Butler, Ronald E | Harassment Policy | 10-29-2003 |
| Byers, Christopher G | Harassment Policy | 10-30-2003 |
| Calladine, David C | Harassment Policy | 10-29-2003 |
| Camp, Patrick R | Harassment Policy | 10-29-2003 |
| Campbell, Kathleen M | Harassment Policy | 10-30-2003 |
| Campbell, Michael J | Harassment Policy | 10-29-2003 |
| Carroll, Matthew | General-Harassment Policy | 01-26-2004 |
| Casbohm, Eric J | General-Harassment Policy | 06-10-2004 |
| Chaffee, Donald J | General-Harassment Policy | 05-20-2004 |
| Cherry, William L | Harassment Policy | 10-29-2003 |
| Clark, Alan R | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 12-10-1991 |
| Clinger, John C | General-Harassment Policy | 10-29-2003 |
| Colonna, Michael F | Harassment Policy | 10-30-2003 |
| Comstock, Joseph A | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Cornell, Mark W | Harassment Policy | 10-30-2003 |
| Cronin, Michael S | Harassment Policy | 10-30-2003 |
| Crosby, Tobren C | Harassment Policy | 10-30-2003 |
| Dana, Robert L | Harassment Policy | 10-30-2003 |
| Daniels, Todd R | Harassment Policy | 10-30-2003 |
| Darr, William R | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Deas, Jennifer L | General-Harassment Policy | 08-30-2004 |
| Delavern, William R. | General-Harassment Policy | 01-12-2004 |
| Dersch, Lloyd S | Harassment Policy | 10-29-2003 |
| Dhumeen, Hamid D | General-Harassment Policy | 12-29-2003 |
| Dibble, Karen A | Harassment Policy | 10-30-2003 |
| Dick, William | General-Harassment Policy | 10-18-2004 |
| Diehl, William M | Harassment Policy | 10-29-2003 |
| Difilippo, Michael A | General-Harassment Policy | 09-14-2004 |
| Digello, David A | Harassment Policy | 10-30-2003 |
| Dinicola, David J | Harassment Policy | 10-30-2003 |
| Divido, Michael | General-Harassment Policy | 07-26-2004 |
| Dombrowski, Nancy J | Harassment Policy | 05-03-2004 |
| Donnell, Trevor A | Harassment Policy | 10-30-2003 |
| Donnell, William C | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Doritty, Charles A | Harassment Policy | 10-29-2003 |
| Drury, Michael J | General-Harassment Policy | 03-17-2004 |
| Dudzinski, Michael J | General-Harassment Policy | 12-29-2003 |
| Dunn, David G | Harassment Policy | 10-30-2003 |
| Ebisch, Thomas R. | General-Harassment Policy | 01-12-2004 |
| Edmiston, Ross N | General-Harassment Policy | 10-31-2004 |
| Edwards, Kyle A | General-Harassment Policy | 11-09-2004 |
| Egli, Frank J | Harassment Policy | 03-24-2004 |
| Elder, Edith F | Harassment Policy | 10-29-2003 |
| Elder, Ray D | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Elliott, Misty M | General-Harassment Policy | 08-30-2004 |
| Ely, Leonard L | Harassment Policy | 10-29-2003 |
| Ely, Lysie A | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| English, Jeffrey A | Harassment Policy | 10-29-2003 |

Proveded by People-Trak



PHB, Inc.
Training list by course title

| Full Name Backward | Course Title | Completion Date |
|---|---|---|
| Erickson, Douglas J | General-Harassment Policy | 10-04-2004 |
| Fahey, Warren T | Harassment Policy | 10-30-2003 |
| Farley, Lee N | Harassment Policy | 10-29-2003 |
| Fellows, Jesse D | Sexual Harassment In The Workplace | 06-03-1999 |
| Fellows, Justin | General-Harassment Policy | 03-01-2004 |
| Fellows, Richard D | Harassment Policy | 10-29-2003 |
| Ferguson, Dorothy G | Harassment Policy | 10-30-2003 |
| Ferrara, Tony P | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Fetterolf, Russell L | Sexual Harassment In The Workplace | 06-03-1999 |
| Field, James A | Harassment Policy | 10-29-2003 |
| Field, Kelly J | Harassment Policy | 10-30-2003 |
| Figurski, John J | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Fiolek, Kyle D | General-Harassment Policy | 10-29-2003 |
| Fiolek, Paul M | Harassment Policy | 10-29-2003 |
| Fish, Michelle | General-Harassment Policy | 11-15-2004 |
| Forinash, Laurie K | Harassment Policy | 10-29-2003 |
| Fortney, Eric W. | General-Harassment Policy | 01-12-2004 |
| Fullom, Eric L | Harassment Policy | 10-29-2003 |
| Gant, Frank W | Harassment Policy | 10-30-2003 |
| Gariepy, Kenneth P | General-Harassment Policy | 07-06-2004 |
| Gehrlein, Donald E | General-Harassment Policy | 06-28-2004 |
| Giaimo, Ruth Ann | General-Harassment Policy | 01-03-2005 |
| Giddings, Howard R | Harassment Policy | 10-29-2003 |
| Glavasevic, Kemo | General-Harassment Policy | 03-22-2004 |
| Godfrey, David L | Harassment Policy | 10-29-2003 |
| Gordon, Timothy J | Harassment Policy | 10-30-2003 |
| Gorecki, Edward J | General-Harassment Policy | 07-06-2004 |
| Gorny, David F | General-Harassment Policy | 10-30-2003 |
| Graden, Robert A | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Graff, Jacqueline | Harassment Policy | 10-30-2003 |
| Graff, Ronald G | Harassment Policy | 03-17-2004 |
| Graves, Bruce E | Harassment Policy | 10-30-2003 |
| Gregory, Gerald R | Harassment Policy | 10-30-2003 |
| Gresh, Edward J | Harassment Policy | 10-29-2003 |
| Guianen, Ronald C | General-Harassment Policy | 09-07-2004 |
| Haffley, Aaron D | Sexual Harassment In The Workplace | 06-08-1999 |
| Hagmaier, David J | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-08-1999 |
| Haibach, Harold P | Harassment Policy | 10-30-2003 |
| Hale, Anthony | General-Harassment Policy | 12-15-2004 |
| Hall, Ernest H | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Hall, John F | General-Harassment Policy | 10-30-2003 |
| Hancock, James B | General-Harassment Policy | 10-29-2005 |
| Hanisek, Eileen M | Sexual Harassment In The Workplace | 04-09-1999 |
| | Sexual Harassment In The Workplace | 12-10-1991 |
| Hanson, Dale | General-Harassment Policy | 07-06-2004 |
| Hardik, Gary P | Sexual Harassment In The Workplace | 06-02-1999 |
| Harvey, Douglas A | Harassment Policy | 10-29-2003 |
| Hayes, Shawn E | Harassment Policy | 10-29-2003 |
| Heffren, Lawrence R | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |

000000161

Produced by People-Trax



PHB, Inc.
Training list by course title

| Full Name Backward | Course Title | Completion Date |
|---|---|---|
| Heffren, Mark A | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Heinonen, Daniel | General-Harassment Policy | 12-13-2004 |
| Henderson, David C | Harassment Policy | 10-30-2003 |
| Herrmann, Howard J | General-Harassment Policy | 10-01-2004 |
| Hilbert, William M | General-Harassment Policy | 10-29-2003 |
| Holden, Mark T | Harassment Policy | 10-29-2003 |
| Homan, Jay | General-Harassment Policy | 12-15-2004 |
| Hopkins, Roger L | Harassment Policy | 10-29-2003 |
| Horvath, John Z | Harassment Policy | 11-12-2003 |
| Hosack, John C | Harassment Policy | 10-29-2003 |
| Hough, Robert A | General-Harassment Policy | 06-08-2004 |
| Hudacky, Kirk T | General-Harassment Policy | 09-13-2004 |
| Huston, David H | General-Harassment Policy | 08-17-2004 |
| Iacobozzi, John T | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Janoski, Andrew J | Harassment Policy | 10-29-2003 |
| Johnson, Paul W | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-08-1999 |
| Johnson, Shawn W | Harassment Policy | 10-30-2003 |
| Joslin, Donna H | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Keiper, Robert H | Sexual Harassment In The Workplace | 06-08-1999 |
| Kelley, Thomas E | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Kerner, Frederick A | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Ketcham, Daniel L | General-Harassment Policy | 09-24-2004 |
| Kibbe, Michael J | General-Harassment Policy | 06-10-2004 |
| Kidder, Gary C | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| King, Dale E | General-Harassment Policy | 05-04-2004 |
| King, George H | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| King, J Keith | Harassment Policy | 10-30-2003 |
| Kinnear, Stephen T | Harassment Policy | 10-29-2003 |
| Klein, Kenneth C | Harassment Policy | 04-02-2004 |
| Kleshchevnikov, Andrey I | Harassment Policy | 03-18-2004 |
| Klobusnik, Michael | General-Harassment Policy | 05-13-2004 |
| Knapp, Alan L | Harassment Policy | 10-30-2003 |
| Komaromy, Robert V | Harassment Policy | 10-30-2003 |
| Korynoski, John L | Harassment Policy | 05-01-2004 |
| Krayeski, James A | Harassment Policy | 10-29-2003 |
| Krysiak, John J | General-Harassment Policy | 11-01-2004 |
| Kuhn, Daniel E | Harassment Policy | 04-02-2004 |
| Kupniewski, Kevin J | General-Harassment Policy | 11-29-2004 |
| Kuzma, Patricia L | Harassment Policy | 10-30-2003 |
| Kuzma, Timothy A | Harassment Policy | 10-30-2003 |
| Kuzmin, David M | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Laguardia, Karen M | Harassment Policy | 10-30-2003 |
| Landis, Gerald W | General-Harassment Policy | 06-25-2004 |
| Langer, Daniel J | Harassment Policy | 10-30-2003 |
| Laprice, Richard J | Harassment Policy | 10-30-2003 |
| Lavery, Terry E | Harassment Policy | 10-30-2003 |

000000162
Produced by PeopleTrac



PHB, Inc.
Training list by course title

| Full Name Backward | Course Title | Completion Date |
|---|---|---|
| Layton, Brian | General-Harassment Policy | 12-29-2003 |
| Lemmon, Laura A | Harassment Policy | 10-29-2003 |
| Lewis, Jay D | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-08-1999 |
| Lewis, Ronnie L | General-Harassment Policy | 08-13-2004 |
| Licsko, Christine H | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Lindsley, Peter C | Harassment Policy | 10-29-2003 |
| List, John C | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Little, Daniel W | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Little, William J | Harassment Policy | 10-29-2003 |
| Lobaugh, Ricky D | Harassment Policy | 10-30-2003 |
| Lopez, James A | Harassment Policy | 10-30-2003 |
| Lowe, Christopher G | Sexual Harassment In The Workplace | 06-03-1999 |
| Lunger, Kenneth L | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-08-1999 |
| Lynch, James T | Harassment Policy | 10-29-2003 |
| MacHinski, Scot A | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| MacKes, Lee A | General-Harassment Policy | 07-06-2004 |
| Maisner, Michael F | General-Harassment Policy | 06-21-2004 |
| Mando, Gregory A | Harassment Policy | 12-15-2003 |
| Marrale, David A | Harassment Policy | 10-29-2003 |
| Marzka, Richard A | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Mayes, Elmer Z | Harassment Policy | 10-30-2003 |
| Mayes, Joseph J | Harassment Policy | 10-30-2003 |
| McCormick, Peter G | Harassment Policy | 10-30-2003 |
| McGaughey, J Michael | General-Harassment Policy | 08-31-2004 |
| McGee, John J | Harassment Policy | 10-29-2003 |
| McGuire, Erwin W | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| McInchak, Michael S | General-Harassment Policy | 10-29-2003 |
| McLaughlin, Gregory J | Sexual Harassment In The Workplace | 06-03-1999 |
| Miller, Harry N | General-Harassment Policy | 05-12-2004 |
| Mitchell, Roger Perry | General-Harassment Policy | 10-01-2004 |
| Mohr, Larry C | Harassment Policy | 10-29-2003 |
| Mooney, Christopher J | Harassment Policy | 10-30-2003 |
| Mooney, Leroy C | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Mundkowsky, William E | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Myers, Alan G | Harassment Policy | 10-29-2003 |
| Nickerson, Alton W | General-Harassment Policy | 10-29-2003 |
| Nine, Mark S | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Norton, Mark T | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-08-1999 |
| Olinger, Robert C | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Oliver, Clarence G | Harassment Policy | 10-29-2003 |
| Olmstead, Michael A | Harassment Policy | 10-29-2003 |
| Pacansky, Michael G | Harassment Policy | 10-30-2003 |

000000163

Produced by People-Trak



PHB, Inc.
Training list by course title

| Full Name Backward | Course Title | Completion Date |
|---|---|---|
| Pace, William G | General-Harassment Policy | 06-28-2004 |
| Paris, Geraldine L | General-Harassment Policy | 10-15-2003 |
| Parker, Charles W | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Parker, Jeffrey C | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Parker, Jonas A | Harassment Policy | 10-29-2003 |
| Parrish, David L | Sexual Harassment In The Workplace | 12-10-1991 |
| Perez, Jesus V | Harassment Policy | 10-29-2003 |
| Phelps, Patrick A | General-Harassment Policy | 12-29-2003 |
| Phillips, Wayne G | Sexual Harassment In The Workplace | 06-02-1999 |
| Phillis, Jean M | Harassment Policy | 10-29-2003 |
| Pietrasiewicz, Shannon R | General-Harassment Policy | 09-01-2004 |
| Pintea, Larie R | Harassment Policy | 10-30-2003 |
| Pointer, Richard | General-Harassment Policy | 11-05-2004 |
| Polanski, Frank R | Harassment Policy | 10-30-2003 |
| Pollick, Frank W | Harassment Policy | 10-30-2003 |
| Porsch, Gary C | Harassment Policy | 10-29-2003 |
| Porter, Clyde W | Harassment Policy | 10-29-2003 |
| Porter, Lynn A | Harassment Policy | 10-29-2003 |
| Powell, Robert C | Harassment Policy | 10-30-2003 |
| Prichard, John H | Harassment Policy | 04-02-2004 |
| Ratajczak, James J | General-Harassment Policy | 03-17-2004 |
| Reinwald, James | Harassment Policy | 10-30-2003 |
| Rocco, David J | Harassment Policy | 10-30-2003 |
| Rodgers, David E | Harassment Policy | 10-30-2003 |
| Roemer, John G | Harassment Policy | 10-30-2003 |
| Rorabaugh, Cecil L | Harassment Policy | 10-30-2003 |
| Rose, Kevin R | Harassment Policy | 03-17-2004 |
| Roueche, James M | General-Harassment Policy | 06-10-2004 |
| Russin, Scott J | Sexual Harassment In The Workplace | 06-08-1999 |
| Ryan, Rex A | Sexual Harassment In The Workplace | 06-03-1999 |
| Ryan, Timothy M | Harassment Policy | 10-29-2003 |
| Sabol, Carl A | General-Harassment Policy | 07-27-2004 |
| Sabol, Diann J | Harassment Policy | 10-30-2003 |
| Sanchez, Javier - | Harassment Policy | 10-29-2003 |
| Sargent, Daniel F | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Sayers, Ronald R | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-08-1999 |
| Schermer, William C | Harassment Policy | 10-30-2003 |
| Scott, James J | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Scott, Patricia G | Harassment Policy | 10-30-2003 |
| Seyler, Paul R | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Shallenbarger, Edward J | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Sharp, Ronald B | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Shearer, Timothy C | General-Harassment Policy | 08-24-2004 |
| Sheriff, Grant E | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Shields, Jamal A | Harassment Policy | 10-29-2003 |
| Silbaugh, James D | General-Harassment Policy | 05-25-2004 |

000000164    Produced by People-Trak



PHB, Inc.
Training list by course title

| Full Name Backward | Course Title | Completion Date |
|---|---|---|
| Silvis, Jesse M | General-Harassment Policy | 06-21-2004 |
| Smith, Charlene C | Harassment Policy | 10-30-2003 |
| Smith, Charles W | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-08-1999 |
| Smith, Dennis D | General-Harassment Policy | 11-18-2004 |
| Smith, Jay A | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-08-1999 |
| Smith, Jeffrey B | General-Harassment Policy | 07-06-2004 |
| Smith, Loren A | Harassment Policy | 10-30-2003 |
| Smith, Richard A | Sexual Harassment In The Workplace | 06-03-1999 |
| Smith, Robert L | Harassment Policy | 10-29-2003 |
| Soudan, Bradley A | General-Harassment Policy | 11-17-2003 |
| Spaulding, Mark D | Harassment Policy | 10-29-2003 |
| Spencer, William M | General-Harassment Policy | 07-15-2004 |
| Spinks, William C | Harassment Policy | 10-29-2003 |
| Stafford, David G | Harassment Policy | 10-30-2003 |
| Stellmach, Bruce A | Harassment Policy | 10-29-2003 |
| Stellmach, Duane A | Harassment Policy | 10-30-2003 |
| Stellmach, Judith A | Harassment Policy | 10-29-2003 |
| Stiles, Charles | Harassment Policy | 10-29-2003 |
| Strader, Randy L | Harassment Policy | 10-29-2003 |
| Straw, Gregory L | Harassment Policy | 10-30-2003 |
| Strazisar, David E | General-Harassment Policy | 10-29-2003 |
| Strazisar, Robert F | Harassment Policy | 10-29-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Surdy, Karen L | General-Harassment Policy | 02-02-2004 |
| Sutter, Melissa S | Harassment Policy | 10-30-2003 |
| Swaney, James K | Harassment Policy | 10-30-2003 |
| Szczutkowski, Ernest John | General-Harassment Policy | 11-30-2004 |
| Szymanski, Pamela L | Harassment Policy | 10-29-2003 |
| Tagle, Alfonso C | Harassment Policy | 10-29-2003 |
| Taylor, Lisa A | Harassment Policy | 10-29-2003 |
| Taylor, Richard L | Harassment Policy | 03-24-2004 |
| Taylor, Richard M | Harassment Policy | 10-30-2003 |
| Thompson, Charles A | Sexual Harassment In The Workplace | 06-02-1999 |
| Thompson, Thomas R | Sexual Harassment In The Workplace | 06-03-1999 |
| Thornton, Theron | Harassment Policy | 10-30-2003 |
| Thorr, Michael W | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Throop, Terry L | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-08-1999 |
| Tobolewski, Mark D | Harassment Policy | 10-30-2003 |
| Todd, Russell C | Harassment Policy | 10-30-2003 |
| Tolhurst, Harland R | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Tomlinson, Bradley T | Harassment Policy | 10-30-2003 |
| Turner, Ralph E | Harassment Policy | 10-29-2003 |
| Unger, James W | Sexual Harassment In The Workplace | 06-08-1999 |
| Uzelac, Christopher Saua | General-Harassment Policy | 02-02-2004 |
| Vacco, Edwin A | General-Harassment Policy | 10-29-2003 |
| Van Meter, Frederick W | General-Harassment Policy | 03-17-2004 |
| Vanek, Aaron J | Harassment Policy | 10-30-2003 |
| Vereb, Marie A | General-Harassment Policy | 10-30-2003 |
| Vojtko, Roger W | Harassment Policy | 10-30-2003 |
| Watson, Robert M | Harassment Policy | 10-30-2003 |

000000165

Produced by People-Trak



PHB, Inc.
Training list by course title

| Full Name Backward | Course Title | Completion Date |
|---|---|---|
| Weaver, Phillip J | Harassment Policy | 10-30-2003 |
| Weese, R Mike | General-Harassment Policy | 10-06-2004 |
| Weidler, Michael L | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-02-1999 |
| Weidler, Patrick E | Sexual Harassment In The Workplace | 06-02-1999 |
| Weir, Walter R | Harassment Policy | 10-29-2003 |
| Welton, Richard | General-Harassment Policy | 01-03-2005 |
| Weyeneth, William G | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Williams, Dale E | Harassment Policy | 10-30-2003 |
| | Sexual Harassment In The Workplace | 06-03-1999 |
| Williams, Earnest | General-Harassment Policy | 10-27-2003 |
| Wise, Bryan R | Harassment Policy | 10-29-2003 |
| Wood, Stephen D | Harassment Policy | 10-29-2003 |
| Woods, Richard J | Harassment Policy | 10-29-2003 |
| Wygant, Ronnie F | Harassment Policy | 10-30-2003 |
| Yaros, Louis C | Harassment Policy | 10-30-2003 |
| York, Trevor E | Harassment Policy | 10-29-2003 |
| Zeigler, Bruce M | Harassment Policy | 10-29-2003 |
| Zimmerman, Daniel A | Harassment Policy | 10-29-2003 |
| Zukowski, Richard M | Harassment Policy | 10-30-2003 |
| Count | | |
| 406 | | |
| Grand Count | | |
| 406 | | |

TRAINING TOPIC: HARASSMENT TRAINING    DATE: 10/30/03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.    TIME: 9:00 a.m.

**I have attended the above training and understand the contents that were presented.**

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 01618 | Richard La Price | MIS | Richard J LaPrice |
| 2 | 11-027 | michael Pacansky | Q C | Michael Pacansky |
| 3 | 70025 | DAVID R. STRUBEL | Q.A. | David R. Strubel |
| 4 | 01-474 | Todd Daniels | QA | Todd Daniels |
| 5 | 01556 | DAVE FRITTS | SEEE-IV | Dave Fritts |
| 6 | 01622 | Joseph T. MAYES | SEEE-IV | Joseph J Mayes |
| 7 | 70-045 | DAVID J. Rocco | SEEE-IV | David J Rocco |
| 8 | 70633 | Russell C. Todd | M.E. | Russell C. Todd |
| 9 | 01779 | PETE McCORMICK | SEEE-IV | Peter B. McCormick |
| 10 | 01589 | FRANK POLANSKI | SEEE-IV | FPCC. |
| 11 | 20201 | Bob Konwinsky | QA | Bob Konwinsky |
| 12 | 10078 | Roger Vajtko | QA | Roger Vajtko |
| 13 | 70079 | DAVID RODGERS | SEEE IV | David Rodgers |
| 14 | 05215 | Nora King | SEEEIV | Nora King |
| 15 | 05547 | Theron Thornton | SEEE-IV | Theron Thornton |
| 16 | 01790 | Melissa Sitter | Purch/HR | Melissa Sitter |
| 17 | | Michele Infinden | SEEE-IV | Michele Infinden |
| 18 | 01333 | Patricia Scott | Purchasing | Patricia Scott |
| 19 | 20014 | David Stafford | Purchasing | David Stafford |
| 20 | 01776 | JACQUELINE GRAFF | PURCHASING | Jacqueline Graff |
| 21 | 01709 | Marie Varab | Accounting | |
| 22 | 70011 | Cathy Bernard | MIS | |

MEETING.ATT.doc                                    HR.TRNG.0001:2/2000

TRAINING TOPIC: HARASSMENT TRAINING    DATE: 10/30/03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.    TIME: 9:00 a.m.

I have attended the above training and understand the contents that were presented.

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 70-056 | DAVID KUZMIN | ENGINEERING | |
| 2 | 10-078 | DENNIS THOMPSON | SEE IV | |
| 3 | 04060 | LARRY BIGGIE | SEE IV | |
| 4 | 0167 | TIM KUZMA | ENGR | |
| 5 | 04166 | FRANK GANT | DESIGNER | |
| 6 | 01531 | SHAWN JOHNSON | ENGR | Shawn WJohnson |
| 7 | 01631 | Bill Dair | QC | |
| 8 | 21010 | TERRY LAVERY | QA | Terry Lavy |
| 9 | 05055 | Al Clark | Mfg. Eng. | Al Clark |
| 10 | 26-033 | Denny Mooney | ME Dept | Denny Mooney |
| 11 | 01734 | David D. Sille | Data Center | |
| 12 | 11040 | Jim STELLMACH | MFG ENGR | |
| 13 | 01360 | Rik Zuhoski | Manu Eng | Rik Zuhoski |
| 14 | 05383 | Hayli Ferguson | Acct | Hayli Ferguson |
| 15 | 01315 | Marlene Smith | Acct | Marlene Smith |
| 16 | 05639 | KAREN A. DiBBLE | Accounting | Karen A. DiBBle |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |

MEETING.ATT.doc    HR.TRNG.0001.2/2000

HR-301

TRAINING TOPIC: HARASSMENT TRAINING        DATE: 10/29/03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.        TIME:  2:00 p.m.

**I have attended the above training and understand the contents that were presented.**

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 10 024 | TIMOTHY M. RYAN | 10 | |
| 2 | 01752 | Louis Barko | ADC | |
| 3 | 01-410 | Jay D. Lewis | ADC | |
| 4 | 01-303 | WALTER WEIR | Alum. Insp. | |
| 5 | 01-601 | Jesus U. Perez Jr | ADC | |
| 6 | 01-751 | Shawn Hayes | ADC | |
| 7 | 20-145 | George King | TRIM | |
| 8 | 01640 | JAVIER SANCHEZ | ZINC | |
| 9 | 01606 | mike Campbell | Zinc | |
| 10 | 01603 | JAMAL SHIELDS | ADC | |
| 11 | 10-001 | Grey Buch | INSP | |
| 12 | 01658 | STEPHEN KINNEAR | Zink | |
| 13 | 01059 | LARRY MOHR | Zinc | |
| 14 | 01654 | DOUG Bateman | ADC | |
| 15 | 01-714 | JONAS PARKER | ZINC | |
| 16 | 01714 | Mark Holden | ADC | |
| 17 | 01788 | MIKE McINCHAK | ZINC | |
| 18 | 01274 | ALAN G MYERS | ADC | |
| 19 | 01781 | DAVE STRAZISAR | ZINC | |
| 20 | 01783 | Howard Giddings | ZDC | |
| 21 | 01786 | Kyle Fiolek | ZINC | |
| 22 | 01757 | BOB Smith | ADC | |

MEETING.ATT.doc                                    HR.TRNG.0001:5/2000

000000142

TRAINING TOPIC: HARASSMENT TRAINING     DATE: 10/29/03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.     TIME: 2:00 p.m.

**I have attended the above training and understand the contents that were presented.**

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 0'429 | Roger Hopkins | ADC | Roger Z Hopkins |
| 2 | 01-792 | Ed Vacco | Die Cast | Ed Vacco |
| 3 | 70-607 | Bri /Hmaker | HR | BH |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | |
| 9 | | | | |
| 10 | | | | |
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |

MEETING.ATT.doc                                    HR.TRNG.0001:2/2000

TRAINING TOPIC: HARASSMENT TRAINING   DATE: 10/29/03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.   TIME: 2:30 p.m.

**I have attended the above training and understand the contents that were presented.**

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 00139 | C. Stiles | Maint | Charles Stiles |
| 2 | 60008 | Wm Dichl | Maint | William Dichl |
| 3 | 01-495 | J. McGee | MAINT | J McGee |
| 4 | 01379 | P. Lindsley | SET-UP | P Lindsley |
| 5 | 01-610 | J. Field | SET UP | J. Field |
| 6 | 01535 | Bruce Zeiger | Maint | Bruce Zeiger |
| 7 | 10-081 | Leonard Ely | Cvib | Leonard Ely |
| 8 | 01298 | Jim Butck | MAINT | Jim Butck |
| 9 | 10-121 | Bill Cherry | maint. | Bill Cherry |
| 10 | 01252 | Bill Little | MAINT | William Little |
| 11 | 12003 | Richard Fellows | Maint | Richard Fellows |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |

MEETING.ATT.doc                              HR.TRNG.0001:2/2000

TRAINING TOPIC: HARASSMENT TRAINING ___ DATE: 10/29/03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ. ___ TIME: 2:30 p.m.

**I have attended the above training and understand the contents that were presented.**

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | |
| 9 | | | | |
| 10 | | | | |
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |

MEETING.ATT.doc

HR.TRNG.0001.2/2000

TRAINING TOPIC: <u>HARASSMENT TRAINING</u>    DATE: <u>10/29/03</u>

INSTRUCTOR: <u>RICHARD ZAMBOLDI, ESQ.</u>    TIME: <u>3:00 p.m.</u>

**I have attended the above training and understand the contents that were presented.**

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 40 016 | Daniel Zimmerman | Shipping | David Zimmerman |
| 2 | 01293 | Kurt Lemmon | ZDC | Laura Lemmon |
| 3 | 01335 | Laurie Forinash | ZDC | Laurie Forinash |
| 4 | 01293 | Doug Harvey | ZDC | Doug Harvey |
| 5 | 40-022 | ERIC FULLOM | SHIPPING | Eric Fullom |
| 6 | 20-090 | DAVE Godfrey | SHIPPING | David L. Godfrey |
| 7 | 40-009 | John HOSACK | SHIPPING | John G Hosack |
| 8 | 01015 | Lloyd S. Dersch | ZDC | Lloyd S Dersch |
| 9 | Q-407 | Ronald Buxter | Zinc | Ron Buxter |
| 10 | 10154 | LYNN PORTER | ADC | Lynn Porter |
| 11 | 10055 | Lee h Faely | ZDC | Lee M. Faely |
| 12 | 01-404 | Randy Stader | ZDC | Randy L Stader |
| 13 | 20078 | Jay Smith | Al. Imp | Jay Smith |
| 14 | 10-032 | Clint Bond | ADC | Clint Bond |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |

MEETING.ATT.doc    HR.TRNG.0001:2/2000

TRAINING TOPIC: HARASSMENT TRAINING     DATE: 10/29/03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.     TIME: 3:30 p.m.

**I have attended the above training and understand the contents that were presented.**

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 01223 | Mark Heffren | ADC | Mark Hff |
| 2 | 10 06B | Rick Baker | A D C | Rich Baker |
| 3 | 10105 | Rodney Barton | ZDC | Rodney J Barton |
| 4 | 01-269 | Paul Seyler | Process Control | Paul Seyler |
| 5 | 16-035 | DON SHAFFER | INSPECTION | Donald Shuffer |
| 6 | 10-067 | Erwin McGuire | Z.D.C. | Erwin McGuire |
| 7 | 20-174 | Dan Little | Trim | Daniel W. Little |
| 8 | 20-128 | John List | Dispatch | John List |
| 9 | 70-033 | Jean Phillu | Customer Service | Jean Phillu |
| 10 | 01645 | Shelly Antolik | HR | Shelly Antolik |
| 11 | 20062 | THOMAS KELLEY | Tool Room | Thomas Kelley |
| 12 | 20·089 | Richard Marcko | TRIM | Richard Marko |
| 13 | 10-141 | GARY GEBHARDT | ADC | Gary Gebhardt |
| 14 | 01-538 | Pam Szymanski | QA | Pam Szymanski |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |

MEETING.ATT.doc                    HR.TRNG.0001 2/2000

TRAINING TOPIC: HARASSMENT TRAINING    DATE: 10-30-03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.    TIME: 7⁰⁰ AM

**I have attended the above training and understand the contents that were presented.**

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 01-718 | Judy Stellmach | ADC | Judy Stellmach |
| 2 | 01596 | Bruce Stellmach | ADC | Bruce Stellm |
| 3 | 11-019 | Bill Sparler | Tool crib | Bill Sparler |
| 4 | 01089 | Jay Lorsch | ADC | Jay Lorsch |
| 5 | 01656 | Patrick Angeres | ADC | Patrick R. Angeres |
| 6 | 01-493 | Richard Woods | ADC | Richard J Woods |
| 7 | 01772 | Jeffrey A English | ZDC | Jeffrey A English |
| 8 | 10-159 | Ralph E. Turner | ZDC | Ralph E. Turner |
| 9 | 1695 | David Calladine | AI | David Calladine |
| 10 | 01769 | Bryan Wise | ADC | Bryan R Wise |
| 11 | 01574 | Ed Gresh | ADC | Edward Gresh I |
| 12 | 01759 | Trevor York | ADC | Trevor E York |
| 13 | 10-021 | JAMES BRENDON | ADC | James R Brand |
| 14 | 01624 | MATTHEW CAMPBELL | ZDC | Matthew Campbell |
| 15 | 01042 | Jim Lynch | ZDC | Jim Lynch |
| 16 | 01-067 | Ron Oliver | ADC | Ron Oliver |
| 17 | 10-035 | MARK D SPAULDING | Tool crib | Mark D. Spaul |
| 18 | 01-494 | Jim Kraycski | ZDC | J. Kray |
| 19 | 01550 | Stephn Wood | ZDC | Steph Wood |
| 20 | 01-575 | Bob Olinger | ZDC | Robert C. Oling |
| 21 | 01-729 | Craig Bartlett | ZDC | Craig Bartlett |
| 22 | 01321 | Andy Janoski | MAINT | |

MEETING.ATT.doc    HR.TRNG.0001 2/2000

000000148

TRAINING TOPIC: HARASSMENT TRAINING    DATE: 10·3.- '3

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.    TIME: 7ᵉ Aㄥㄥ

I have attended the above training and understand the contents that were presented.

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 01646 | Edith Elder | ADC | Edith Elder |
| 2 | 01668 | LISA TAYLOR | ZDC | Lisa Taylor |
| 3 | 01539 | AC Tagle | ZDC | Al Tagle |
| 4 | 01787 | Alton Nickerson | ADC | Alt N Nickel |
| 5 | 01782 | John Clinger | ZDC | John Clng |
| 6 | 01661 | DAVID MARRALE | ADC | David Marral |
| 7 | | | | |
| 8 | | | | |
| 9 | | | | |
| 10 | | | | |
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |

MEETING.ATT.doc    HR.TRNG.0001:2/2000

000000149

TRAINING TOPIC: HARASSMENT TRAINING     DATE: 10/30/03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.     TIME: 7:30 a.m.

**I have attended the above training and understand the contents that were presented.**

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 66 005 | Clyde PORTER | MAINT. | Clyde Porter |
| 2 | 60-013 | Bob GRADEN | MAINT. | Bob Graden |
| 3 | 10-133 | JOE COMSTOCK | PROCESS | Joseph Comstock |
| 4 | 10-136 | BOB STRAZISAR | DIE CAST | Bob Strazisar |
| 5 | 10-106 | Chuck PARKER | DIE CAST | Chuck Parker |
| 6 | 01-625 | Chuck Doritty | Maint | Chut Dtt |
| 7 | 10-019 | Lysle A. Ely | HDC | Lysle A. Ely |
| 8 | 10-022 | John Iacobozzi | ADC | John Iacobozzi |
| 9 | 10-113 | LeRoy MOONEY | Process | Leroy Mooney |
| 10 | 01-271 | Scott MACHINSKI | QC | Scott Machinski |
| 11 | 10-103 | Ray D Elder | ADC | Ray D Elder |
| 12 | 01 613 | Pat Camp | ADC | Patrick Camp |
| 13 | 01-747 | Paul Fiolek | 2DC | Paul Fiolek |
| 14 | 20-103 | Michael A Olmstead | 2DC | Michael A Olmstead |
| 15 | 12-010 | William Mundkowsky | Trim | William Mundkowsky |
| 16 | 10-110 | MARK S. NINE | 2DC | Mark Nine |
| 17 | 20-146 | Dale Whitehair | Trim | Dale Whitehair |
| 18 | 20009 | Donna H. Joslin | Trim | Donna H. Joslin |
| 19 | 01-096 | Larry Heffren | Trim | Larry H. |
| 20 | 20-114 | KELLy FIELD | MAINTS | Kelly Field |
| 21 | 76-040 | LOREN SMITH | ADC | L Smith |
| 22 | 01-466 | Wm C Donnell | MAINT. | Wm C Donnell |

MEETING.ATT.doc                                   HR.TRNG.0001.2/000

TRAINING TOPIC: HARASSMENT TRAINING    DATE: 10/30/03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.    TIME: 7:30 a.m.

**I have attended the above training and understand the contents that were presented.**

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 70062 | JEFFrey C. Parker | Metallurgy | |
| 2 | 01502 | BRANT SHERIFF | MAINT | |
| 3 | 61786 | GELI TALIS | HR | |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | |
| 9 | | | | |
| 10 | | | | |
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |

MEETING.ATT.doc    HR.TRNG.0001.2.2000

TRAINING TOPIC: HARASSMENT TRAINING    DATE: 10/30/03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.    TIME: 3:00 p.m.

**I have attended the above training and understand the contents that were presented.**

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 01537 | BRAD TOMLINSON | TRIM | |
| 2 | 01580 | Rusty Mook | Trim | |
| 3 | 01523 | Chris Mooney | TRIM | |
| 4 | 10085 | Tad Bowen | Trim | |
| 5 | 20-071 | MARK D. TOBOLEWSKI | Trim | |
| 6 | 01-571 | TONI BARTON | TRIM | |
| 7 | 01-509 | JAMES SWANEY | Trim | |
| 8 | 01593 | Kathy Campbell | Receptionis | |
| 9 | 04136 | Robert L. Dana | Tool room | |
| 10 | 01-292 | Jim Reinwald | Maintenance | |
| 11 | 01-510 | George BANKS | Remelt | |
| 12 | 10-102 | Bob Watson | Maint | |
| 13 | 20-086 | Frank Pollick | Maint. | |
| 14 | 10-092 | Ronnie F. Wygant | Maint | |
| 15 | 10-143 | DAVID C. HENDERSON | MAINT. | |
| 16 | 60-003 | ALAN L. KNAPP | MAINT | |
| 17 | 01-753 | TOBY C. CROSBY | TRIM | |
| 18 | 01320 | Larie Pinter | TRIM | |
| 19 | 61-001 | JOHN ROEMER JR | TRIM | |
| 20 | 01422 | Patty Kuzma | Trim | |
| 21 | 10052 | DAVID J. HAGMAIER SR | Trim | |
| 22 | 11-004 | FRED BLASS JR | TRIM | |

MEETING.ATT.doc    HR.TRNG.0001:2/2000

000000152

TRAINING TOPIC: HARASSMENT TRAINING      DATE: 10/30/03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.      TIME: 3:00 p.m.

**I have attended the above training and understand the contents that were presented.**

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 30026 | DAVID BUSHYEAGER | TRIM | David Bushyeager |
| 2 | 20133 | Tom Anderson | | |
| 3 | 01065 | Lou Yaros | Tool Rm | Lou c Yaros |
| 4 | 10-060 | Gordy Jarrett | Tool RM | Gordon Jarrott |
| 5 | 11-020 | MIKE PRETZ | TOOL CRIB | Mike Pretz |
| 6 | 01017 | Rick Lobaugh | Alum. DICAST | RL |
| 7 | 10-094 | Gerald Gregory | Tool R. | Gerald Gregory |
| 8 | 20-066 | James Lopez | Alum Die Cast | James A. Lopez |
| 9 | 20149 | Kenneth Lungtr | Alum TRIM | Kenneth Lungtr |
| 10 | 20-021 | Mark Cornell | MAINT. | Mark Cornell |
| 11 | 01-370 | DAVID DUNN | TRIM | D Dunn |
| 12 | 12-005 | John Keith King | Tool Room | John KEITH King |
| 13 | 01396 | Rodney Berry | Maint. | Rodney Berry |
| 14 | 20117 | Bill Schermer | Alum. D.C. | Bill Schermer |
| 15 | 20131 | MIKE COLONNA | ADC | Mike Colonna |
| 16 | 10153 | WARREN FAHEY | ADC | Warren Fahey |
| 17 | 20087 | Richard M. Taylor | TRIM | Richard M. Taylor |
| 18 | 20110 | GAROLD MEEKER | T.R. | Garold Meeker |
| 19 | 04044 | Robert C Powell | TR | Robert C Powell |
| 20 | 10-056 | MARK NORTON | TR | Mark Norton |
| 21 | 50008 | GREG STRAW | T.R. | Greg Straw |
| 22 | 20-084 | Charles Smith | T.R. | Charles Smith |

MEETING.ATT.doc                                    HR.TRNG.0001.2/2000

000000153

TRAINING TOPIC: HARASSMENT TRAINING    DATE: 10/30/03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.    TIME: 3:00 p.m.

**I have attended the above training and understand the contents that were presented.**

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---------|------|------------|-----------|
| 1 | 20-007 | Leroy Kightlinger | TOOL ROOM | Leroy Kightlinger |
| 2 | 01-341 | Paul V. Nicola | TRIM | Paul V. Nicola |
| 3 | 05-560 | Keith D. Hanisak | TRIM | Keith D. Hanisak |
| 4 | 01728 | Aaron Vanck | Trim | Aaron Vanck |
| 5 | 01736 | Chris Byer | TRim | |
| 6 | 01-295 | DIANN SABOL | TRIM | |
| 7 | 01237 | Philip Weaver | Trim | Philip W. |
| 8 | | | | |
| 9 | | | | |
| 10 | | | | |
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |

MEETING.ATT.doc    HR.TRNG.0001:2/2000

000000154

TRAINING TOPIC: HARASSMENT TRAINING     DATE: 10/30/03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.     TIME: 8:15 a.m.

**I have attended the above training and understand the contents that were presented.**

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 1076 | Jim Scott | QA | |
| 2 | 36004 | Gary Kidder | QA | Gary Kidder |
| 3 | 10-054 | Elmer Winyes | ADC | Elmer Way |
| 4 | 01-459 | Trevor Downell | ZDC | |
| 5 | 01383 | Steve Bahny | METAL | Stev Bay |
| 6 | 10059 | Ron Sharp | ADC | Ron Sharp |
| 7 | 10074 | Ron Sayers | ADC | Ronald R. Sayles |
| 8 | 01-008 | Ernie Hall | Tool Room | Ernie Hall |
| 9 | 01-247 | John F. Hall | Maint | John F. Hall |
| 10 | 20-142 | Mike Thorr | ADC | |
| 11 | 10-005 | Terry Throop | ADC/ | Terry Throop |
| 12 | 01062 | Butch Rorabaugh | Maint | Butch Rorabaugh |
| 13 | 01793 | Dave Gorny | Maint. | |
| 14 | 26-011 | Dan Sargent | Prod. Control | Dan Sargent |
| 15 | 20-177 | Ed Shellenbargee | Tech Setup | Edw. D. Shalle |
| 16 | 11-023 | Wm G. Weyeneth | D.C. | Wm G. Weyeneth |
| 17 | 07108 | Fran Bernardini | QA | Fran Bernardini |
| 18 | II 03092 | Daniel Langer | Purchasing | |
| 19 | 01-087 | Michael Cronin | QA | Michael Cronin |
| 20 | 11-013 | Tim Gordon | QA | Tim Gordon |
| 21 | 70066 | Fred Kerner | Prod. Cont | |
| 22 | 70055 | Paul Johnson | Engr'g | |

MEETING.ATT.doc                                   HR.TRNG.0001:2/2000

TRAINING TOPIC: HARASSMENT TRAINING          DATE: 10/30/03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.          TIME:  8:15 a.m.

I have attended the above training and understand the contents that were presented.

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 04034 | Harold Maibach | MFG-ENG | Harold Maibach |
| 2 | 10-161 | Mike Wudler | Zinc DC | Michael Wudler |
| 3 | 70047 | Pam Bah | Acct. | Pamela Bah |
| 4 | 70043 | Christine Lusko | Payroll | Chris Lusko |
| 5 | 70057 | Karen LaGuardia | MIS | Karen LaGuardia |
| 6 | 01645 | Shelly Antolik | HR | Shelly Antolik |
| 7 | 01079 | Tony Ferrara | MIS | Tony Ferrara |
| 8 | 70010 | Harland R. Hurst Jr. | Corp | Harland Hurst |
| 9 | 01591 | Trace Figurski | Finance | Trace Figurski |
| 10 | | | | |
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |

MEETING.ATT.doc                                    HR.TRNG.0001.2.2000

HR-301

TRAINING TOPIC: HARASSMENT TRAINING   DATE: 10/29/03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.   TIME: 2:00 p.m.

**I have attended the above training and understand the contents that were presented.**

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 10 024 | TIMOTHY M. RYAN | 10 | Timothy M. Ry |
| 2 | 01752 | Louis Barko | ADC | Louis Barko |
| 3 | 01-410 | Jay D. Lewis | ADC | Jay D |
| 4 | 01-303 | WALTER WEIR | Alum. Insp. | Walter Weir |
| 5 | 01-601 | JESUS U. PEREZ JR | ADC | Jesus U Perez J. |
| 6 | 01-751 | Shawn Hayes | ADC | Shawn Hayes |
| 7 | 20-145 | GEORGE KING | TRIM | George King |
| 8 | 01640 | JAVIER SANCHEZ | ZINCK | Javier Sanchez |
| 9 | 01606 | mike Campbell | Zinck | mike Campbell |
| 10 | 01603 | JAMAL SHIELDS | ADC | Jamall Shields |
| 11 | 10-001 | Grey Bible | Insp | G Bible |
| 12 | 01658 | STEPHEN KINNEAR | ZINK | Steph K |
| 13 | 01059 | LARRY MOHR | Zinc | Larry Mohr |
| 14 | 01654 | DOUG Bateman | ADC | Doug K Bat |
| 15 | 01-716 | JONAS PARKER | ZDC | Jonas Parker |
| 16 | 01714 | Mark Holden | ADC | Mark Holden |
| 17 | 01788 | MIKE McINCHAK | ZINC | M.I. McIn |
| 18 | 01274 | ALAN G MYERS | ADC | Alan G Myers |
| 19 | 01781 | Dave Streasick | ZINC | Dave E St |
| 20 | 01783 | Howard Giddings | ZDC | Howard K Giddings |
| 21 | 01786 | Kyle Fiolek | ZINC | K Fiell |
| 22 | 01757 | BOB Smith | ADC | R Smith |

MEETING.ATT.doc

HR.TRNG.0001-52000

000000170

TRAINING TOPIC: HARASSMENT TRAINING          DATE: 10/29/03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.          TIME: 2:00 p.m.

**I have attended the above training and understand the contents that were presented.**

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 01429 | Roger Hopkins | ADC | Roger Z Hopkins |
| 2 | 01-792 | Ed Vacco | Die Cast | Ed Vacco |
| 3 | 70-807 | Ben Shaw | HR | Bshw |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | |
| 9 | | | | |
| 10 | | | | |
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |

MEETING.ATT.doc                                    HR.TRNG.0001:2/2000

TRAINING TOPIC: HARASSMENT TRAINING          DATE: 10/29/03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.          TIME: 2:30 p.m.

**I have attended the above training and understand the contents that were presented.**

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 00139 | C. Stiles | MAint | Charles Stiles |
| 2 | 60008 | Wm Diehl | MAint | William Diehl |
| 3 | 01-495 | J. McGess | MAINT | J McGess |
| 4 | 01379 | P. Lindsley | SET-UP | P Lindsley |
| 5 | 01-610 | J. FIELD | SET UP | J. Field |
| 6 | 01535 | Bruce Zeller | Maint | Bruce Zeller |
| 7 | 10-081 | Leonard Ely | Civil | Leonard Ely |
| 8 | 01298 | Jim Butch | MAINT | Jim Butch |
| 9 | 10-121 | Bill Cherry | maint. | Bill Cherry |
| 10 | 01252 | Bill Little | MAINT | William Little |
| 11 | 12003 | Richard Fellows | Maint | Richard Fellows |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |

MEETING.ATT.doc                                      HR.TRNG.0001:2/2000

TRAINING TOPIC: HARASSMENT TRAINING          DATE: 10/29/03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.          TIME:  2:30 p.m.

**I have attended the above training and understand the contents that were presented.**

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | |
| 9 | | | | |
| 10 | | | | |
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |

MEETING.ATT.doc                                    HR.TRNG.0001:2/2000

TRAINING TOPIC: HARASSMENT TRAINING    DATE: 10/29/03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.    TIME: 3:00 p.m.

**I have attended the above training and understand the contents that were presented.**

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 40 010 | Daniel Zimmerman | Shipping | Daniel Zimmerman |
| 2 | 01295 | Kurt Lemmon | ZDC | Kurt Lemmon |
| 3 | 01-335 | Laurie Forenash | ZDC | Laurie Forenash |
| 4 | 91293 | Doug Harvey | ZDC | Doug Harvey |
| 5 | 40-022 | ERIC FULLOM | SHIPPING | Eric Fullom |
| 6 | 20-090 | DAve GodFrey | SHIPPING | David L. Godfrey |
| 7 | 40-009 | JOHN HOSACK | SHIPPING | John G Hosack |
| 8 | 01015 | Lloyd S. Dersch | ZDC | Lloyd Dersch |
| 9 | 01-407 | RonALD Butler | Zinc | Ron Butler |
| 10 | 10154 | LYNN PORTER | ADC | Lynn Porter |
| 11 | 10055 | Lee h Farley | ZDC | Lee M. Farley |
| 12 | 01-404 | Randy Stader | ZDC | Randy L Stader |
| 13 | 20078 | Jay Smith | Al Inv | Jay Smith |
| 14 | 10-032 | Cliff Bond | ADC | Cliff Bond |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |

MEETING.ATT.doc                                     HR.TRNG.0001:2/2000

TRAINING TOPIC: HARASSMENT TRAINING _____ DATE: 10/29/03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ. _____ TIME: 3:30 p.m.

**I have attended the above training and understand the contents that were presented.**

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 01273 | Mark Heffren | ADC | Mark Heffren |
| 2 | 10 06B | Rick Baker | A D C | Rich Baker |
| 3 | 10105 | Rodney Baxton | ZDC | Rodney J Baxton |
| 4 | 01-269 | Paul Seyler | Process Control | Paul Seyler |
| 5 | 16-035 | Don Shaffer | INSPECTION | Donald Shaffer |
| 6 | 10-067 | Erwin McGuire | Z.D.C. | Erwin McGuire |
| 7 | 20-174 | Dan Little | Trim | Dan W. Little |
| 8 | 20-128 | John List | Dispatch | John List |
| 9 | 70-033 | Jean Phillis | Customer Service | Jean Phillis |
| 10 | 01645 | Shelly Antolik | HR | Shelly Antolik |
| 11 | 20062 | Thomas Kelley | Toolroom | Thomas Kelley |
| 12 | 20-089 | Richard Marcko | TRIM | Richard Marcko |
| 13 | 10-141 | Gary Gebhardt | ADC | Gary Gebhardt |
| 14 | 01-538 | Pam Szymanski | QA | Pam Szymanski |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |

MEETING.ATT.doc                    HR.TRNG.0001:2/2000

TRAINING TOPIC: HARASSMENT TRAINING     DATE: 10-31-03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.     TIME: 7°° AM

**I have attended the above training and understand the contents that were presented.**

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 01-718 | Judy STELLMACH | ADC | Judy Stellmach |
| 2 | 01596 | Bruce Stellmach | ADC | Bruce Stellmach |
| 3 | 11-019 | Bill Spurlen | TOOL CRIB | Bill Spurlen |
| 4 | 01089 | Day Porch | ADC | Day Porch |
| 5 | 01656 | Patrick Angers | ADC | Patrick R Angelle |
| 6 | 01-493 | Richard J Woods | ADC | Richard J Woods |
| 7 | 01772 | Jeffrey A English | ZDC | JEFFREY A ENGLISH |
| 8 | 10-159 | Ralph E Turner | ZDC | RALPH E. TURNER |
| 9 | 1685 | David Calladine | A1 | Paul Calladine |
| 10 | 01769 | BRYAN WISE | ADC | Bryan R Wise |
| 11 | 01574 | Ed Gresh | ADC | Edward Gresh |
| 12 | 01759 | Trevor York | ADC | Trevor E York |
| 13 | 10-021 | JAMES BREWDON | ADC | James R Brewdon |
| 14 | 01624 | MATTHEW CAMPbell | ZDC | Matthew Campbell |
| 15 | 01042 | Jim Lynch | ZDC | Jim Lynch |
| 16 | 01-067 | Ron OLIVER | ADC | Ron Oliver |
| 17 | 10-035 | MARK D SPAULDING | TOOL CRIB | Mark D Spaulding |
| 18 | 01-494 | Jim Krayeski | ZDC | J. Krayeski |
| 19 | 01550 | Stephen weed | ZDC | Stephen weed |
| 20 | 01-575 | Bob OLINGER | ZDC | Robert C Olinger |
| 21 | 01-729 | Craig Bartlett | ZDC | Craig Bartlett |
| 22 | 01321 | Andy JANOSKI | MAINT | Andy Janoski |

MEETING.ATT.doc     HR.TRNG.0001 2/2000

TRAINING TOPIC: __HARASSMENT TRAINING__    DATE: _10·3·-·03_

INSTRUCTOR: __RICHARD ZAMBOLDI, ESQ.__    TIME: _7⁰⁰ AM_

**I have attended the above training and understand the contents that were presented.**

|   | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---------|------|------------|-----------|
| 1 | 01646 | Edith Einer | ADC | Edith Elder |
| 2 | 01668 | LiSA TAYLoR | ZDC | Lisa Taylor |
| 3 | 01539 | AL Tagle | ZDC | Al Tagle |
| 4 | 01787 | ALTON Nickerson | ADC | Alton Nickerson |
| 5 | 01782 | John Clinger | ZDC | John Clinger |
| 6 | 01661 | DAVID MARRALE | ADC | David Marrale |
| 7 | | | | |
| 8 | | | | |
| 9 | | | | |
| 10 | | | | |
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |

MEETING.ATT.doc                                    HR.TRNG.0001.2/2000

TRAINING TOPIC: HARASSMENT TRAINING     DATE: 10/30/03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.     TIME: 7:30 a.m.

**I have attended the above training and understand the contents that were presented.**

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 66.005 | Clyde Porter | Maint. | Clyde Porter |
| 2 | 60-013 | Bob Graden | Maint. | Bob Graden |
| 3 | 10-133 | Joe Comstock | Process | Joseph Comstock |
| 4 | 10-136 | Bob Strazisar | Die Cast | Bob Strazisar |
| 5 | 10-106 | Chuck Parker | Die Cast | Chuck Parker |
| 6 | 01-625 | Chuck Doritty | Maint | Chk Dt |
| 7 | 10-019 | Lysle A. Ely | ADC | Lysle A. Ely |
| 8 | 10-022 | John Iacobozzi | ADC | Joh Iacobozzi |
| 9 | 10-113 | Leroy Mooney | Process | Leroy Mooney |
| 10 | 01-271 | Scott Machiniski | QC | Scott Machiniski |
| 11 | 10-103 | Ray E. Elder | ADC | Ray D. Elder |
| 12 | 01-613 | Pat Camp | ADC | Patrick R Camp |
| 13 | 01-747 | Paul Fiolek | ZDC | Paul Fiolek |
| 14 | 20-103 | Michael A Olmstead | ZDC | Michael A Olmstead |
| 15 | 12-010 | William Mundkowsky | Trim | William Mundkowsky |
| 16 | 10-110 | Mark S. Nine | ZDC | Mark Nine |
| 17 | 20-146 | Dale Willson | Trim | Dale Willson |
| 18 | 20009 | Donna H. Joslin | Trim | Donna H. Joslin |
| 19 | 01-096 | Larry Heffren | Trim | Larry H. |
| 20 | 20-114 | Kelly Field | Maints | Kelly Field |
| 21 | 76-040 | Loren Smith | ADC | L Smith |
| 22 | 01-466 | Wm C Donnell | Maint. | Wm C Donnell |

MEETING.ATT.doc                    HR.TRNG.0001.2/2000

000000178

TRAINING TOPIC: HARASSMENT TRAINING     DATE: 10/30/03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.     TIME: 7:30 a.m.

**I have attended the above training and understand the contents that were presented.**

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 70062 | JEFFrey C. Parker | Metallurgy | JMC Parker |
| 2 | 01502 | GRANT SHERIFF | MAINT | |
| 3 | 61786 | GELi TALIS | HR | Jperi |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | |
| 9 | | | | |
| 10 | | | | |
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |

MEETING.ATT.doc                                  HR.TRNG.0001:2:2000

TRAINING TOPIC: HARASSMENT TRAINING          DATE: 10/30/03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.          TIME: 3:00 p.m.

**I have attended the above training and understand the contents that were presented.**

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 01537 | BRAD Tomlinson | TRIM | |
| 2 | 01580 | Rusty Mook | Trim | |
| 3 | 01523 | Chris Mooney | TRIM | |
| 4 | 10085 | Tad Bowen | Trim | |
| 5 | 20-071 | MARK D. Tobolewski | Trim | |
| 6 | 01-571 | TONI BARTON | TRIM | |
| 7 | 01-509 | JAMES SWANEY | TRim | |
| 8 | 01593 | Kathy Campbell | Receptionis | |
| 9 | 04136 | Robert L. Dana | Tool room | |
| 10 | 01-292 | Jim Reinwald | Maintenance | |
| 11 | 01-510 | George BANKS | Remelt | |
| 12 | 10-102 | Bob Watson | Maint | |
| 13 | 20-086 | Frank Pollick | Maint. | |
| 14 | 10-092 | Ronnie F. Wygant | Maint | |
| 15 | 10-143 | DAVID C. HENDERSON | MAINT. | |
| 16 | 60-003 | ALAN L. KNAPP | MAINT | |
| 17 | 01-753 | TOBY C. CROSBY | TRiM | |
| 18 | 01320 | Larie Pintea | TRIM | |
| 19 | 61-001 | JOHN Roemer JR | TRim | |
| 20 | 01422 | Patty Kuzma | Trim | |
| 21 | 10052 | DAVID J. HAGMAIER SR | TRim | |
| 22 | 11-004 | FRED BIass JR | TRiM | |

MEETING.ATT.doc                                    HR.TRNG.0001:2/2000

TRAINING TOPIC: HARASSMENT TRAINING    DATE: 10/30/03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.    TIME: 3:00 p.m.

**I have attended the above training and understand the contents that were presented.**

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 30026 | DAVID BUSHYEAGER | TRIM | |
| 2 | 20138 | Son Anderson | | |
| 3 | 01065 | Lou Yaros | TOOL Rm | |
| 4 | 10-060 | Gordy Jarrett | Tool RM | |
| 5 | 11-020 | MIKE PRETZ | TOOL CRIB | |
| 6 | 01017 | Rick Dobrich | Alum. DICCA | |
| 7 | 10-094 | Gerald Gregory | Tool R. | |
| 8 | 20-066 | James Lopez | Alum Die Cast | |
| 9 | 20149 | Kenneth Lunstr | Alum TRIM | |
| 10 | 20-021 | Mark Cornell | MAINT. | |
| 11 | 01-370 | DAVID DUNN | TRIM | |
| 12 | 12-005 | John Keith King | Tool Room | John Keith King |
| 13 | 01396 | Rodney Berry | MainT. | Rodney Berry |
| 14 | 20117 | Bill Schermer | Alum. O.C. | |
| 15 | 20131 | MIKE COLONNA | ADC | Mike Colonna |
| 16 | 10153 | WARREN FAHEY | ADC | |
| 17 | 20087 | Richard M. Taylor | TRIM | |
| 18 | 20110 | GAROD MEEKER | T.R. | |
| 19 | 04044 | RoBERT C Powell | T R | Robert C Powell |
| 20 | 10-056 | MARK NORTON | TR | |
| 21 | 50008 | GREG STRAW | T.R. | |
| 22 | 20-084 | Charles Smith | T.R. | |

MEETING.ATT.doc                                    HR.TRNG.0001:2/2000

TRAINING TOPIC: HARASSMENT TRAINING     DATE: 10/30/03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.     TIME: 3:00 p.m.

**I have attended the above training and understand the contents that were presented.**

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 20-007 | Leroy Kightlinger | TOOL ROOM | Leroy Kightlinger |
| 2 | 01-341 | Carol V. Nircola | TRIM | Carol V. Nircola |
| 3 | 05-560 | Keith D. Hanisek | TRIM | Keith D. Hanisek |
| 4 | 01728 | Aaron Vanek | Trim | Aaron Vanek |
| 5 | 01736 | Chris Byer | TRim | |
| 6 | 01-295 | DIANN SABOL | TRIM | Dianne |
| 7 | 01037 | Philip Weaver | Trim | Philip W |
| 8 | | | | |
| 9 | | | | |
| 10 | | | | |
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |

MEETING.ATT.doc                                      HR.TRNG.0001:2/2000

TRAINING TOPIC: HARASSMENT TRAINING    DATE: 10/30/03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.    TIME: 8:15 a.m.

**I have attended the above training and understand the contents that were presented.**

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 1076 | Jim Scott | QA | |
| 2 | 36004 | Gary Kidder | QA | Gary Kidder |
| 3 | 10-054 | Elmer Hayes | HDC | Elmer Hay |
| 4 | 01-459 | Trevor Dowell | ZDC | Trevor Dowell |
| 5 | 01383 | Steve Bahny | Metal | Steve By G |
| 6 | 10059 | Ron Sharp | ADC | Ron Sharp |
| 7 | 10074 | Ron Sayers | ADC | Ronald R. Sayers |
| 8 | 01-008 | Ernie Hall | Tool Room | Ernie Hall |
| 9 | 01-247 | John F. Hall | Maint | John F. Hall |
| 10 | 20-142 | Mike Thorr | ADC | Michael Thorr |
| 11 | 10-005 | Terry Throop | ADC/- | Terry Throop |
| 12 | 01062 | Butch Rorabaugh | Maint | Butch Rorabaugh |
| 13 | 01793 | Dave Gorny | Maint. | Dave Gorny |
| 14 | 26-011 | Dan Sargent | Prod. Control | Dan Sargent |
| 15 | 20-177 | Ed Shrlichbarger | Trim Setup | Ed O'Shall |
| 16 | 11-023 | Wm G. Weygeneth | D.C. | Wm D. Weygeneth |
| 17 | 07108 | Fran Bernardini | QA | Fran Bernardini |
| 18 | TL 03092 | Daniel Langin | Purchasing | Daniel Langin |
| 19 | 01-087 | Michael Cronin | QA | Michael Cronin |
| 20 | 11-013 | Tim Gordon | QA | Tim Gordon |
| 21 | 70066 | Fred Kerger | Prod. Cont | Fred Kerger |
| 22 | 70055 | Paul Johnson | Engr'g | Paul Johnson |

MEETING.ATT.doc    HR.TRNG.0001:2/1000

TRAINING TOPIC: HARASSMENT TRAINING          DATE: 10/30/03

INSTRUCTOR: RICHARD ZAMBOLDI, ESQ.          TIME: 8:15 a.m.

**I have attended the above training and understand the contents that were presented.**

| | CLOCK # | NAME | DEPARTMENT | SIGNATURE |
|---|---|---|---|---|
| 1 | 04034 | Harold Maibach | MFG ENG | Harold Maibach |
| 2 | 10-161 | Mike Wudkie | Zinc DC | Michael Wudkie |
| 3 | 70047 | Pam Bah | Acct. | Pamela Bah |
| 4 | 70043 | Christine Lusko | Payroll | Chris Lusko |
| 5 | 70057 | Karen LaGuardia | MIS | Karen LaGuardia |
| 6 | 01645 | Shelly Antalik | HR | Shelly Antalik |
| 7 | 01079 | Tony Ferrara | MIS | Tony Ferrara |
| 8 | 70010 | Harland R. Tollhurst Jr. | Corp. | Harland R. Tollhurst Jr. |
| 9 | 01591 | Traci Figurski | Finance | Traci Figurski |
| 10 | | | | |
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |

MEETING.ATT.doc                                    HR.TRNG.0001:2:2000

# Exhibit 40
## All Deposition Transcripts

# Exhibit 41

**PHB INC.**

7900 WEST RIDGE ROAD
FAIRVIEW, PENNSYLVANIA 16415
Phone: 814/474-5511
Fax: 814/474-2063
website: www.phbcorp.com

............................................ 20 ..............

TO: ...................................................

RE:   MON DAY                   3-14-05

BOB BARKO TOLD ME,

JAKE HEFFERN TOLD HIM,

THE BEST PART OF

HENRY, RAN DOWN HIS

MOTHERS LEG.

11:42 A.M.

PHB DIE CASTING  •  PHB TOOL & DIE DIVISION
PHB MACHINING DIVISION  •  PHB MOLDING DIVISION
PHB # 01-980-0218



7900 WEST RIDGE ROAD
FAIRVIEW, PENNSYLVANIA 16415
Phone: 814/474-5511
Fax: 814/474-2063
website: www.phbcorp.com

**PHB INC.**

20

TO:

RE: MONDAY          3-14-05


RICK BAKER   ASKED

ME  TO  SWEEP  UP

THAT  ZINC  ON  THE  FLOOR,

SWEEP  OUT  MY  OFFICE,

AND  SHINE  MY  SHOES.


10:22 A.M.


PHB DIE CASTING  •  PHB TOOL & DIE DIVISION
PHB MACHINING DIVISION  •  PHB MOLDING DIVISION
PHB # 01-980-0218





INC.

7900 WEST RIDGE ROAD
FAIRVIEW, PENNSYLVANIA 16415
Phone: 814/474-5511
Fax: 814/474-2063
website: www.phbcorp.com

20

TO: 11-24-04  12:22 PM

RE: I asked Bill Donnell
if I was still alowd to
Do maint work, he said,
" I dont know if why you
asked, you dont do
anything anyway"!!

Witness Clyde Porter,
Bill Cherry ?

11-24-04  1:16 pm
Fitting was leaking at
Central Spray I said I
will fix it Rex Ryan
said " dont have him
fix it He will just fude
it up." Witness Ron sayer, Ron Butler

PHB DIE CASTING  •  PHB TOOL & DIE DIVISION
PHB MACHINING DIVISION  •  PHB MOLDING DIVISION
PHB # 01-980-0218

**PHB INC.**

7900 WEST RIDGE ROAD
FAIRVIEW, PENNSYLVANIA 16415
Phone: 814/474-5511
Fax: 814/474-2063
website: www.phbcorp.com

20

TO:

RE:

On Wed 3-5-03, 9:20 A.M.
I went in to main office and
asked for Dodge Truck Keys,
Foremans said, Lou had the
Dodge and he would be Back
in 15-20 mins., as I was
at th door way, Scott Fiedler
came out of his office and asked
if Butch Smith was here. Bill
Donnell said, what. Scott said
is Butch Smith was here. Bill
Donnell while sitting in his chair
turned to me, look into my face
and said, Ya he's here, wipe
your face off, and took his finger,
and wiped his mouth, and then

PHB DIE CASTING  •  PHB TOOL & DIE DIVISION
PHB MACHINING DIVISION  •  PHB MOLDING DIVISION

**PHB INC.**

PHB # 01-980-0218

**PHB INC.**

7900 WEST RIDGE ROAD
FAIRVIEW, PENNSYLVANIA 16415
Phone: 814/474-5511
Fax: 814/474-2063
website: www.phbcorp.com

....................................... 20 .......................

TO: ..................................................................................

RE: ..................................................................................

*laughed, and I said looks like*
*I wasn't the one is anything*
*during shutdown. he told me*
*you won't be working any more*
*shutdown. I walked out of office*

Witness
Jess Fellows

PHB DIE CASTING  •  PHB TOOL & DIE DIVISION
PHB MACHINING DIVISION  •  PHB MOLDING DIVISION
PHB # 01-980-0218





7900 WEST RIDGE ROAD
FAIRVIEW, PENNSYLVANIA 16415
Phone: 814/474-5511
Fax: 814/474-2063
website: www.phbcorp.com

........ ........ 20 ........ ........

TO:

RE: FRIDAY 5-28 04

8:12 AM

MIKE THORR

BILL DONNELL IS

TRIN TO CONDER

UP SOMETHING TO

FIRE YOU

PHB DIE CASTING  •  PHB TOOL & DIE DIVISION
PHB MACHINING DIVISION  •  PHB MOLDING DIVISION
PHB # 01-960-0218





7900 WEST RIDGE ROAD
FAIRVIEW, PENNSYLVANIA 16415
Phone: 814/474-5511
Fax: 814/474-2063
website: www.phbcorp.com

20

TO: MIKE THORR LIST
RE: Wed 5-7-03 2:10 PM,

Mike & Mike Black when at the
north wall of Plant talking and
mike Black wa smokeing with him,

—

Thursday 5-22-03 10:40
Mike sprayed Kerosene on my Back
with Spray gun from PP. Jim &
Mike Black laughed about it.
Chet Butch Terry Jordy

PHB DIE CASTING  •  PHB TOOL & DIE DIVISION
PHB MACHINING DIVISION  •  PHB MOLDING DIVISION
PHB # 01-960-0218





7900 WEST RIDGE ROAD
FAIRVIEW, PENNSYLVANIA 16415
Phone: 814/474-5511
Fax: 814/474-2063
website: www.phbcorp.com

20

TO:

RE: WEDNESDAY 6-2-04
10:15 AM

TERRY THROOP

YOU GET YOUR SELF
INTO MORE SHIT AROUND
HERE. YOU BETTER BE
CAREFUL!!

PHB DIE CASTING • PHB TOOL & DIE DIVISION
PHB MACHINING DIVISION • PHB MOLDING DIVISION
PHB # 01-980-0218





7900 WEST RIDGE ROAD
FAIRVIEW, PENNSYLVANIA 16415
Phone: 814/474-5511
Fax: 814/474-2063
website: www.phbcorp.com

20

TO:

RE: SUN DAY 6-6-04 9:05AM

GORDY PHILLPS

DO YOU KNOW WHY NIGGERS
DONT HAVE NIGHTMARES?

THE LAST ONE THAT DID
GOT SHOT !!!

PHB DIE CASTING  •  PHB TOOL & DIE DIVISION
PHB MACHINING DIVISION  •  PHB MOLDING DIVISION
PHB # 01-980-0218

