

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Pittsburgh Area Office**

Liberty Center
1001 Liberty Avenue, Suite 300
Pittsburgh, PA 15222-4187
(412) 644-3444
TTY (412) 644-2720
FAX (412) 644-2664

Mr. Cari M. Goodwine
2905 Pennsylvania Avenue
Erie, PA 16504

      Charging Party,

                      CHARGE NO.:172A300962

PHB Die Casting
7900 West Ridge Road
Fairview, PA 16415-1899

      Respondent

## DETERMINATION

Under the authority vested in me by the Commission, I issue the following determination as to the merits of the above cited charge.

All requirements for coverage have been met. Charging Party alleged that Respondent discriminated against him, because of his race black and in retaliation for complaining of harassment in violation of Title VII of the Civil Rights Act of 1964, as amended. He contends that he was harassed by the Respondent and subjected to different terms and conditions of employment than his white coworkers. He believes that he is assigned to the more difficult machines more often than his white coworkers. Charging Party was placed on the "bad boy" list for attendance reasons in January 2003. In February 2003, supervisor Gary Gebhart, attempted to have him do work that he was not trained to do. When a white coworker came to the Charging Party's defense, Gebhart rebuked the white employee stating that "we have to make it harder on them." A supervisor, Gordy Phillips, did not follow safety procedures and attempted a joke that could have injured the Charging Party. That same supervisor is slow to answer Charging Party's pages for relief. Finally, the Charging Party alleges that Supervisor, Gary Gebhart, continues to scrutinize the Charging Party's work even though the Charging Party no longer works in his area.

Respondent denies that the Charging Party has been harassed at any time by any supervisor or manager or by any other employee. Respondent denies that the Charging Party has been subjected to different terms and conditions of employment. Respondent asserts that the Charging Party was placed on an attendance improvement plan like 14 other white employees and 2 other black employees because of a poor attendance record. Respondent denies that the Charging Party was assigned to more difficult assignments than white employees. Respondent denies that Gary Gebhart made a discriminatory comment about the Charging Party

and/or black people in general. Respondent states the incident during which the comment was made was misunderstood by the Charging Party. Supervisor Gordy Phillips did not try to play a joke on the Charging Party, rather Mr. Phillips got sprayed when a machine was started up. Supervisor Phillips does not ignore or delay in answering pages for relief from the Charging Party. Finally, Mr. Gebhart is a supervisor who shares supervisory duty with Mr. Phillips and as such is responsible for supervising the Charging Party's work and being in that area.

EEOC interviews with a Respondent employee who was present when Gary Gebhart said "we have to make it harder on them" attested to the fact that he construed this to be a racial remark. Charging Party complained about this remark to Human Resources and a meeting was held with witnesses, union representation, Mr. Gebhart, and the Director of Human Resources. After this meeting Respondent scheduled Gebhart for diversity training at a local University because it was not satisfied that Mr. Gebhart's general attitude was appropriate or consistent with company expectations of its supervisors. However, the class was cancelled and no alternative training was ever provided to him. 

Witnesses corroborated that Mr. Gebhart has made several offensive comments about black employees in recent years, calling them "fuckers" and stating he did not want to associate with "them." No effective action by the Respondent was taken to eliminate this harassment. Other employees have complained to Respondent officials of offensive racial slurs and comments made by supervisors and coworkers. The comments were offensive to both black and white employees. EEOC's investigation found witness corroboration of offensive racial graffiti in the form of a KKK and burning cross written on the rest room walls.

Based on this analysis, I have determined that the evidence obtained during the investigation establishes a violation of Title VII with respect to hostile environment.

Investigation did not establish a violation of Title VII with respect to the other issues cited by the Charging Party. Charging Party was placed on the "bad boy" list with 14 other white employees. Many of them had similar attendance records. A review of the Charging Party's attendance record shows that he had missed many days of work in the year prior to January 2003. His record was as bad or worse than many similarly situated employees who were also placed on the list.

Since Charging Party did not complain about Mr. Gebhart until approximately February 2003 and was placed on the bad boy list in January 2003 it is chronologically impossible to show that placement on the list was retaliatory. Evidence did not establish that the Charging Party was assigned to work differently than white employees. Many factors are considered when making assignments. In addition, there is no universal opinion as to what is a difficult assignment. In many cases the difficulty of a particular job is related to individual preferences.

Evidence did not establish that a joke or trick was played on the Charging Party because of his race. Finally, investigation did not support that delays in responding to the Charging Party's pages by Supervisors occurred because of the Charging Party's race or in retaliation for complaining of matters protected by statutes enforced by the EEOC.

Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in reaching a just resolution of this matter.

The confidentiality provisions of Title VII and Commission Regulations apply to information obtained during conciliation.

If the Respondent declines to discuss settlement or when, for any other reason, a settlement acceptable to the office Director is not obtained, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission.

A Commission representative will contact each party in the near future to begin conciliation.

The Commission is seeking an amount inclusive of the applicable cap to your organization for compensatory and punitive damages; appropriate lost wages and actual monetary costs incurred by the Charging Party. In this regard, a Commission representative will prepare and monitor an actual dollar amount to include accruing lost wages, if any, and attendant benefits, with interest to date; any appropriate attorney fees and costs which have accrued to date. Again, the Commission is postured to consider any reasonable offer during this period.

Respondent may contact investigator, Susan M. Kelly at 412-644-2921, if there are any questions or concerns about conciliation.

On Behalf of the Commission,

_____  12/18/03

Date

Eugene M. Reid for

Marie M. Tomasso
Philadelphia District Director